THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

BRADY EDMONDS, on behalf of himself and
those similarly situated,

                    Plaintiff,

        vs.

AMAZON.COM, INC., a Foreign for Profit
Corporation; AMAZON LOGISTICS, INC., a
Foreign for Profit Corporation; AMAZON.COM
SERVICES, INC., a Foreign for Profit Corporation,

                    Defendants.

NO. 2:19-cv-01613-JLR

**PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY
SITUATED INDIVIDUALS UNDER 29 U.S.C.
§ 216(b)**

**NOTED ON HEARING CALENDAR:
MAY 15, 2020**
  Without Oral Argument

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## <u>TABLE OF CONTENTS</u>

2
**Page**

3
I.      INTRODUCTION ........................................................................................1

4
II.     RELEVANT FACTUAL BACKGROUND .........................................................3

5
        A.      Amazon and its DSP Model .........................................................3

6
        B.      Amazon's Attempt at Avoiding FLSA Liability ..............................5

7
III.    LEGAL STANDARD ...................................................................................13

8
IV.     ARGUMENT ............................................................................................16

9
        A.      Plaintiff Has Made a Sufficient Showing that Proposed Opt-ins

10
                Are Similarly Situated ................................................................16

11
        B.      Plaintiff's Proposed Notice is Proper .........................................18

12
V.      CONCLUSION .........................................................................................21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - i
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**TABLE OF AUTHORITIES**

Page

*Adams v. Inter-Con Sec. Sys., Inc.,*
    242 F.R.D. 530 (N.D. Cal. 2007) ..................................................................20

*Alequin v. Darden Rests., Inc.,*
    2013 WL 3945919 (S.D. Fla. July 31, 2013)....................................................18

*Anglada v. Linens 'N Things, Inc.,*
    2007 WL 1552511 (S.D.N.Y. May 29, 2007)...................................................20

*Ballew v. Lennar Corp.,*
     2008 WL 4218137 (M.D. Fla. Sept. 11, 2008) ...............................................20

*Benion v. Lecom, Inc.,*
    2016 WL 2801562 (E.D. Mich. May 13, 2016) ...............................................17

*Bhumithanarn v. 22 Noodle Mkt. Corp.,*
    2015 WL 4240985 (S.D.N.Y. July 13, 2015)...................................................18

*Bollinger v. Residential Capital, LLC,*
    761 F. Supp. 2d 1114 (W.D. Wash. 2011)......................................................15

*Boucher v. Shaw,*
    572 F.3d 1087 (9th Cir. 2009)........................................................................2

*Bradley et al. v. Silverstar Ltd. et al.,*
    Case No. 1:16-cv-10259 (N.D. Ill. Nov. 11, 2016) .........................................13

*Bravo v. On Delivery Services, LLC et al.,*
    Case No. 3:18-cv-01913 (N.D. Cal. March 28, 2018) ....................................13

*Butler v. Direct SAT USA, LLC,*
    876 F. Supp.2d 560 (D. Md. 2012)................................................................18

*Calderon v. Geico Gen. Ins. Co.,*
    2011 WL 98197 (D. Md. Jan.12, 2011) .........................................................20

*Campbell v. City of Los Angeles,*
    903 F.3d 1090 (9th Cir. 2018).................................................................14, 15

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Campion v. Amazon.com, LLC., et al.*,
   Case No. 3:18-cv-05222 (N.D. Cal. Aug. 24, 2018) ....................................................13

*Castillo v. P & R Enters., Inc.*,
   517 F.Supp.2d 440 (D.D.C.2007) ..................................................................................19

*Christeson v. Amazon.com.ksdc*, LLC,
   Case No. 2:18-cv-02043 (D. Kan. Jan. 25, 2018) ........................................................13

*Collado v. J. & G. Transport, Inc.*,
   2014 WL 5390569 (S.D. Fla. Oct. 2014) ......................................................................19

*Colson v. Avnet, Inc.*,
   687 F.Supp.2d 914 (D.Ariz.2010) ................................................................................15

*Compagnone v. DL Pool Service, LLC*
   Case No. 2:15-cv-647-Ftm-99MRM, Docket Entry 48 (M.D. Fla. Nov. 11, 2016) .........19

*Cuevas v. ConAm Mgmt. Corp.*,
   2019 WL 5320544, (S.D. Cal. Oct. 21, 2019) ..............................................................15

*Curry et al. v. Amazon.com, Inc., et al.*,
   Case No. 2:16-cv-000007 (D. Ariz. Jan. 5, 2016) ........................................................14

*Dietrich v. Liberty Square*,
   230 F.R.D. 574 (N.D. Iowa 2005) ................................................................................20

*Denney v. Lester's, LLC*,
   2012 WL 3854466 (E.D. Mo. Sept. 5, 2012)................................................................18

*Disimone v. Atlas Service, Inc.*,
   2009 WL 5166262 (S.D. Fla. 2009) ..............................................................................20

*Dualan v. Jacob Transportation Servs., LLC*,
   172 F. Supp. 3d 1138 (D. Nev. 2016) ..........................................................................19

*Douglas v. Xerox Bus. Servs., LLC*,
   2015 WL 12930486 (W.D. Wash. Feb. 9, 2015)...............................................15, 16, 17

*Dyson v. Stuart Petroleum Testers, Inc.*,
   308 F.R.D. 510 (W.D. Tex. 2015) ................................................................................19

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Edwards v. Multiband Corp.*,
  2011 WL 117232 (D. Minn. Jan. 13, 2011) ............................................... 17

*Fiore v. Goodyear Tire & Rubber Co.*,
  2011 WL 867043 (M.D. Fla. March 10, 2011) .......................................... 20

*Franco v. Bank of America Corp.*,
  691 F.Supp.2d 1324 (M.D. Fla. 2010) ...................................................... 20

*Gandhi v. Dell, Inc.*,
  2009 WL 3427218 (W.D. Tex. Oct. 20, 2009) ........................................... 20

*Gee v. Suntrust Mortg., Inc.*,
  2011 WL 722111 (N.D. Cal. Feb. 18, 2011) .............................................. 21

*Gieseke v. First Horizon Home Loan Corp.*,
  408 F. Supp. 2d 1164 (D. Kan. Jan. 10, 2006) .......................................... 20

*Graham v. Overland Solutions, Inc.*,
  2011 WL 1769737 (S.D. Cal. May 9, 2011) ............................................... 21

*Guy v. Casal Inst. of Nevada, LLC*,
  2014 WL 1899006 (D. Nev. May 12, 2014) ............................................... 20

*Harris v. Vector Marketing Corp.*,
  716 F.Supp.2d 835 (N.D. Cal. 2010) ......................................................... 21

*Hegedus et al. v. Nexen Corporation et al.*,
  Case No. 2:18-cv-10798 ........................................................................... 13

*Hernandez v. Two Bros. Farm, LLC*,
  2008 WL 4613069 (S.D. Fla. Oct. 15, 2008) ............................................. 20

*Henry v. Quicken Loans, Inc.*,
  2006 WL 2811291 (E.D. Mich. Sept. 28, 2006); ...................................... 20

*Hickman et al. v. TL Transportation, LLC, et al.*,
  Case No. 2:17-cv-01038 (E.D. Pa. March 8, 2017) ................................... 13

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ........................................................................... 18, 20

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*In re Deloitte & Touche, LLP Overtime Litig.,*
    2012 WL 340114(S.D.N.Y. Jan. 17, 2012) ...................................................................18

*In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III),*
    2012 WL 3308880 (S.D. Tex. Aug. 10, 2012................................................................20

*Johnson v. INTU Corp.,*
    2020 WL 977788 (D. Nev. Feb. 28, 2020) ............................................................14, 15

*Jones v. JGC Dallas LLC,*
    2012 WL 6928101 (N.D. Tex. Nov. 29, 2012)..............................................................19

*King v. Amazon.com, LLC,*
    Case No. 1:18-cv-21464 (S.D. Fla. April 13, 2018) .....................................................13

*Lambert v. Ackerley,*
    180 F.3d 997 (9th Cir.1999)...................................................................................2, 14

*Landry v. Swire Oilfield Servs., L.L.C.,*
    252 F. Supp. 3d 1079 (D.N.M. 2017) ....................................................................18, 19

*Landsberg v. Acton Enterprises, Inc.,*
    2008 WL 2468868 (S.D. Ohio June 16, 2008) .............................................................20

*Lewis v. Nevada Prop. 1, LLC,*
    2013 WL 237098 (D. Nev. Jan. 22, 2013)...................................................................20

*Lima v. Int'l Catastrophe Sols., Inc.,*
    493 F. Supp. 2d 793 (E.D. La. 2007) ...........................................................................17

*Lines v. Amazon.com Inc., et al.,*
    Case No. 1:17-cv-00072 (W.D. Tex. Feb. 2, 2017) ......................................................13

*Mraz v. Aetna Life Ins. Co.,*
    2014 WL 5018862 (M.D. Pa. Oct. 7, 2014); ...............................................................19

*Morales v. Amazon.com, LLC et al.,*
    Case No. 2:17-cv-01981 (C.D. Cal. Nov. 4, 2016).......................................................13

*Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon,*
    2013 WL 5593040 (D. Or. Oct. 10, 2013) ..................................................................19

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Morden v. T-Mobile USA, Inc.,*
  2006 WL 1727987 (W.D. Wash. June 22, 2006) ........................................................19

*O'Donnell v. Sw. Bell Yellow Pages, Inc.,*
  2012 WL 1802336 (E.D. Mo. May 17, 2012);..............................................................18

*Perez v. Lantern Light Corp.,*
  2015 WL 3451268 (W.D. Wash. May 29, 2015).............................................................2

*Pereira v. Foot Locker, Inc.,*
  261 F.R.D. 60 (E.D. Pa. 2009)......................................................................................20

*Randolph v. Centene Mgmt. Co,*
  2015 WL 2062609 (W.D. Wash. May 4, 2015)...........................................................15

*Ramirez v. Ghilotti Bros. Inc.,*
  941 F. Supp. 2d 1197 (N.D. Cal. 2013) ......................................................................19

*Rivenbark v. JPMorgan Chase & Co.,*
  340 F. Supp. 3d 619 (S.D. Tex. 2018);........................................................................19

*Rozeboom v. Dietz & Watson, Inc.,*
  2018 WL 2266692 (W.D. Wash. May 17, 2018)...........................................................18

*Rottmann et al. v. Amazon.com, Inc. et al.,*
  Case No. 2:16-cv-01554 (W.D. Wash. Oct. 4, 2016) ..................................................14

*Senne v. Kansas City Royals Baseball Corp.,*
  934 F.3d 918, 950 (9th Cir. 2019)...............................................................................14

*Shipes v. Amurcon Corp.,*
  2012 WL 1720615 (E.D. Mich. May 16, 2012) ...........................................................20

*Smith v. Silverstar Delivery, Ltd., et al.,*
  Case No. 2:18-cv-10501 (E.D. Mich. Feb. 12, 2018) ..................................................13

*Sullivan-Blake v. FedEx Ground Package System, Inc.,*
  2019 WL 4750141 (W.D. Pa. Sept. 30, 2019) ......................................................16, 17

*Tatum v. B.B.W. Holdings, Inc. et al.,*
  Case No. 2:18-cv-11661 (E.D. Mich. 2018) ...............................................................13

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Thomas v. Kellogg Co.,*
    2014 WL 716152 (W.D. Wash. Jan. 9, 2014) ............................................................15

*Wass v. NPC Intern., Inc.,*
    2011 WL 1118774 (D. Kan. March 28, 2011) ............................................................20

*Wasilewski v. Silverstar Delivery LTD, et al.,*
    2:18-cv-12167 ............................................................................................................13

*White v. Integrated Elec. Techs., Inc.,*
    2013 WL 2903070 (E.D. La. June 13, 2013) ..............................................................19

*Wu v. Amazon.com, Inc., et al.,*
    Case No. 2:17-cv-2759 (E.D.N.Y. May 7, 2017) ......................................................13

*Vasquez v. Coast Valley Roofing, Inc.,*
    670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) ..............................................................21

*Vasto v. Credico (USA) LLC,*
    2016 WL 2658172 (S.D.N.Y. May 5, 2016) ..............................................................18

*Villalta v. Breakaway Courier Corp., et al.,*
    Case No. 2:17-cv-01780 (E.D.N.Y. March 30, 2017) ................................................13

*Ziglar v. Express Messenger Sys. Inc.,*
    2017 WL 6539020 (D. Ariz. Aug. 31, 2017) ..............................................................18

**FEDERAL STATUTES**

29 U.S.C. § 216(b) ....................................................................................................................14

29 C.F.R. § 791.2(a) ..................................................................................................................2

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I.  INTRODUCTION

Plaintiff, Brady Edmonds, brings this action against Defendants, Amazon.com, Inc., Amazon Logistics, Inc., and Amazon.com Services, Inc. (collectively "Defendants" or "Amazon") on behalf of himself and all other similarly situated individuals.  Those similarly situated individuals are workers who have delivered packages for Amazon through intermediary Delivery Service Partners ("DSPs"), who were paid on a day-rate basis, and who worked more than forty hours in most, if not all, workweeks and were eligible to receive overtime pay but were not compensated at the federally mandated time and a half rate for the hours they worked over forty in violation of the Fair Standards Act ("FLSA").

Plaintiff is challenging Amazon's efforts to disclaim any employment relationship with, or wage-related obligations to, local delivery drivers—referred to by Amazon as Delivery Associates—through the implementation of the company's DSP business model.  Under that model, Amazon maintains full control of its deliveries and nearly every aspect of the drivers' employment but utilizes DSPs as the W-2 employers in an attempt to insulate itself from liability under the FLSA.  Amazon's drivers typically work full-time, exclusively delivering Amazon packages in vans displaying Amazon's logo and while wearing Amazon uniforms, and are directed and supervised by Amazon managers in a similar, if not identical, fashion in their daily duties, regardless of which DSP they have worked under or been paid by.

As explained in Plaintiff's complaint and more fully set forth below, Amazon micromanages nearly every aspect of the hiring, training, and daily job duties of drivers while perpetrating the fiction that it does not employ such drivers within the meaning of the FLSA. Indeed, Amazon solicits prospective drivers to apply to work for Amazon on its own website without identifying the name of any DSP through whom the work will be performed.  Amazon lists the location where there are open driver positions and indicates "Various DSPs Hiring." *See* Excerpts from Amazon's Website, https://dspdrivers.jobs.net/search?idpartenaire=10125,

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 1
Case No.: 2:19-cv-01613-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   attached to the Declaration of Paul Botros as **Exhibit A**.  A potential driver simply applies

2   through Amazon's website and is placed with whichever DSP has an open van.

3        Despite Amazon's attempted end-run around FLSA liability, the FLSA's definition of

4   "employer" is "not limited by the common law concept of 'employer,' but 'is to be given an

5   expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'"

6   *Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009) (quoting *Lambert v. Ackerley*, 180 F.3d

7   997, 1011–12 (9th Cir.1999)).  Therefore, an "employee may work for two employers

8   simultaneously," with each employer considered "responsible, both individually and jointly,

9   for compliance with all of the applicable provisions of the act, including the overtime

10  provisions." *Perez v. Lantern Light Corp.*, 2015 WL 3451268, at *2 (W.D. Wash. May 29, 2015)

11  (quoting 29 C.F.R. § 791.2(a)).

12       Plaintiff respectfully moves for an order permitting notice to be sent to the following

13  similarly situated drivers:

> All individuals employed as Amazon local delivery drivers or Delivery
> Associates (outside the state of Washington)—through a third-party
> delivery company or Delivery Service Partner ("DSP")—who were paid a
> day rate since October 9, 2017 and were not paid overtime premiums
> when they worked over forty hours in one or more workweeks.

17  Additionally, Plaintiff respectfully asks the Court to:

18

19            a.       Require Defendants to identify all members of the proposed

20  class by providing a list of their names, last known mailing addresses, dates of

21  employment, DSPs through which they worked, cell phone numbers, Social Security

22  numbers (last four digits only), and personal email addresses in electronic and

23  importable format, *e.g.* a Microsoft Excel spreadsheet, within fourteen days of an

24  entry of an order granting this motion;

25            b.       Permit Plaintiff's counsel to send Court-approved notice of this

26  action to the proposed class members via U.S. Mail, email, and text message as well as

27  post such notice on a website and at Amazon fulfillment centers nationwide.  Plaintiff's

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 2
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   proposed Class Notice and the Consent to Become an Opt-In Plaintiff are attached to

2   the Botros Declaration as **Exhibits B and C**, respectively;

3           c.     Approve a ninety-day opt-in period from the date the Court-

4   approved notice is sent, during which the proposed class members may join this case

5   by submitting their written consents through the website, U.S. Mail, email, fax, or

6   Adobe Sign;

7           d.     Permit Plaintiff's counsel to send a reminder notice via email

8   and text message to the proposed class members at the half-way point of the notice

9   period; and

10          e.     Allow the proposed class members to electronically sign and

11  return the Consent to Become an Opt-In Plaintiff form.

12       At this early stage in the proceeding, Plaintiff has met the lenient burden of

13  demonstrating that he and the proposed class members are similarly situated drivers such

14  that notice is due to issue.  As further set forth below, Plaintiff has submitted declarations

15  from six individuals who worked as Amazon drivers out of Amazon fulfillment centers—also

16  known as Delivery Stations—in four states.  He has also submitted a substantial amount of

17  documentation.  Taken together, this evidence show s that Plaintiff is similarly situated to the

18  proposed class members because they all share similar issues of law and fact material to the

19  disposition of their FLSA claims.

20       Amazon's clandestine attempt to disclaim FLSA liability to its drivers, nationwide,

21  cannot be tolerated.  Therefore, Plaintiff respectfully requests that this Court grant his motion

22  in its entirety and permit notice to issue to the proposed class members as described herein.

23               **II.  RELEVANT FACTUAL BACKGROUND**

24  **A.**     **Amazon and Its DSP Model**

25       Defendant Amazon.com, Inc. is the parent corporation of Defendants Amazon

26  Logistics, Inc. ("ALI") and Amazon.com Services, Inc. ("ACS") (collectively referred to as

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 3
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  "Amazon"). ACS and ALI are shipping service providers created solely to deliver merchandise

2  purchased by consumers via Amazon.com.

3  Amazon is the largest digital retailer in the United States, recently becoming only the

4  second company in world history to reach $1 trillion in value.  Botros Decl., **Ex. D**.  In the third

5  quarter of 2019 alone, Amazon's net sales were $70 billion, compared with $56.6 billion in the

6  third quarter of 2018.  *Id*., **Ex. E**. Naturally, "the number of packages that Amazon needs to . . .

7  handle has doubled in the past five years to about 1.2 billion" packages per year.  *Id*., **Ex. F**.  In

8  order to house and process the merchandise that is sold on its website, Amazon owns and

9  operates more than 175 fulfillment centers (or warehouses) globally, with more than 110 in

10 North America alone.  *Id*., **Ex. G**.  Amazon divides its fulfillment centers into six categories—

11 sortable, non-sortable, sortation centers, receive centers, specialty, and delivery stations.  *Id*.,

12 **Ex. H**.

13 Amazon prides itself in being a company that is "customer obsessed."  For that reason,

14 Amazon has taken control over every aspect of its deliveries in order to ensure customer

15 satisfaction—control that it previously lacked when utilizing traditional delivery channels such

16 as FedEx and UPS.  In order to take greater control over its delivery processes while

17 simultaneously attempting to shield itself from an employment relationship and wage

18 obligations, Amazon created its own delivery channel.  Amazon now staffs its logistics chain

19 through "third-party" package delivery companies—referred to by Amazon as Delivery Service

20 Partners or "DSPs"—all of whom operate out of Amazon's Delivery Stations and delivery

21 stations, nationwide, who provide the necessary employees to handle the influx of customer

22 orders, and to retain control over every aspect of the delivery process.[1] The named Plaintiff,

23 _____

24 [1] Prior to the formal launch of the Delivery Service *Partner* program in June 2018, the small delivery companies
were referred to as Delivery Service *Providers*. *Compare* Botros Decl., **Ex. I** (Amazon Delivery Service Partner

25 Brochure), *with* **Ex. J** (Delivery Service Provider/Delivery Associate Uniform Requirements and Guidelines).  For all
intents and purposes, Amazon exercises the same level of control over its Delivery Service Partners as it has over

26 its Delivery Service Providers, and there is no difference between a Delivery Service Provider and a Delivery
Service Partner.  *See id.*  In fact, Amazon often still refers to Delivery Service Partners as Delivery Service

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 4
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   Opt-In Plaintiffs, and the proposed opt-in plaintiffs in this case are the drivers employed by

2   Amazon, through the DSPs, to deliver Amazon merchandise and are referred to by Amazon as

3   Delivery Associates ("DAs").  *See* Botros Decl., **Exs. J & L**.

4   To be clear, the DSPs are formed with the exclusive purpose to deliver Amazon

5   packages and do not deliver packages for any other company.  Amazon attracts potential DSPs

6   with its low start-up costs—as low as $10,000—and its promises to provide the potential

7   "business owner" with all of the tools, technology, and support that a DSP might need to

8   effectively operate the delivery route. *See* Botros Decl., **Ex. M**.  The potential DSP does not

9   even need to have logistics experience; all the DSP needs to do is incorporate.  *See id*.  Once a

10   DSP has been retained by Amazon, Amazon uses the DSP as a flow-through and provides all

11   necessary training materials, uniforms, and tools that the drivers need to successfully

12   complete their Amazon delivery routes each day.  *See* Botros Decl., **Ex. I**.

13   Amazon freely admits that it's "delivery service providers are an *essential* part of the

14   brand and delivery experience for Amazon customers."  Botros Decl., **Ex. N**. In other words,

15   Amazon depends on the Plaintiffs and similarly situated individuals to deliver its packages

16   from Amazon's fulfillment centers across the country.

17   **B.     Amazon's Attempt at Avoiding FLSA Liability**

18   Armed with the knowledge that its delivery drivers need to work excessive hours in

19   order to complete the deliveries by the times Amazon promises to its customers, Amazon

20   created its DSP model to add a layer of separation between its drivers and the company.

21   Through its DSP model, Amazon seeks to avoid its obligation of paying potentially hundreds of

22   thousands, or even millions, of dollars in overtime wages to its drivers each week and seeks to

23   avoid FLSA liability to its drivers.   But by design, Amazon controls nearly every aspect of the

24   drivers' employment, their duties, and the delivery process from start to finish, nationwide.

25   Providers, and the terms are used interchangeably. *See* Botros Decl., **Ex. K** (Job Descriptions for Driver Trainer

26   and Learning Coordinator Positions, which explains that Amazon partners with Delivery Service Providers in order
     to achieve their goal of providing customers with "an incredible package delivery experience through the last

27   mile of the order").

1       Amazon's control over its drivers begins at the application process.  When applying for

2   a job as a driver with Amazon on Amazon's website, a potential driver can either select

3   "search driver jobs with Amazon" or "search driver jobs with delivery service providers."

4   Botros Decl., **Ex. O**.[2]  If the applicant were to choose former, no open positions would

5   populate.[3]  If the applicant were to choose the latter, more than 130 open positions would

6   populate for drivers across the United States.  *See* Botros Decl., **Ex. A**.  After the applicant

7   applies to be a delivery driver through Amazon's website, passes a background check

8   conducted by Amazon, and upon Amazon's approval, the driver is onboarded as a delivery

9   driver, through one of the many DSPs, and begins working for Amazon.[4]

10      A driver's day-to-day delivery work, Amazon's control over him or her, and the driver's

11  reliance on Amazon for work is the same regardless of which DSP the driver is employed

12  through.  *See* Brown Decl. ¶¶ 9-11; Coleman Decl. ¶¶ 9-11; Danielson Decl. ¶¶ 9-12; Edmonds

13  Decl. ¶¶ 9-11; Garcia Decl. ¶¶ 9-11; Gordon Decl. ¶¶ 9-11. Amazon implements and enforces

14  "DSP Service Quality Management Policies" that mandate uniform training guidelines, which

15  are applicable to all DSPs and drivers.  *See* Botros Decl., **Ex. R**.  These policies state that

16  "[e]very new DA must complete and pass the required training before he can provide delivery

17  services **to Amazon**," and "[e]xisiting DAs must complete and pass on-going required training

18  within the required time period **published by Amazon** in order to be eligible to continue

19  providing delivery service."  *See id*. (emphasis added).  Additionally, Amazon requires all

20  drivers, regardless of the DSP through whom they work, to complete extensive onboarding

21

22  [2] Amazon has since changed their website and omitted the option that states "search driver jobs with Amazon." The website that is attached as Exhibit O is an archived version.

23  [3] Based on information and belief, at one point, Amazon directly hired drivers on a seasonal basis in order to handle holiday deliveries.  *See* Botros Decl., **Ex. P**.  Otherwise, the DSPs would not have been able to provide the

24  manpower necessary to make all holiday deliveries.

    [4] *See* Declaration of Brittney Brown ("Brown Decl.") at ¶¶ 7, 38-39; Declaration of Timothy Coleman ("Coleman

25  Decl.") at ¶¶ 7, 38-40; Declaration of Vivek Danielson ("Danielson Decl.") at ¶¶ 7, 39-41; Brady Edmonds ("Edmonds Decl.") at ¶¶ 7, 39-41; Declaration of Roberto Garcia ("Garcia Decl.") at ¶¶ 7, 38-40; Declaration of

26  Cornelious Gordon ("Gordon Decl.") at ¶¶ 7, 38-40.  These declarations are attached to the Botros Declaration as **Exhibit Q**.  Due to COVID-19, Opt-In Plaintiff Brittney Brown had difficulty finding a location where she could

27  physically print and sign her declaration.  Therefore, Ms. Brown electronically signed her declaration.

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 6
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   once hired, which includes a training video and other materials, all of which are created by

2   Amazon.  *See* Brown Decl. ¶ 12; Coleman Decl. ¶ 12; Danielson Decl. ¶ 13; Edmonds Decl. ¶

3   12; Garcia Decl. ¶ 12; Gordon Decl. ¶ 12.  These Amazon company policies, procedures, and

4   training guidelines are uniformly applied to all DSPs and drivers nationwide.

5        Amazon also uniformly tracks all of its drivers' performance, and—using a single set of

6   criteria applicable to all its drivers nationwide—sets productivity goals for all of its drivers.

7   Pursuant to Amazon's DSP Service Quality Management Policies, Amazon sends driver

8   performance data to every DSP on a weekly basis.  *See* Botros Decl., **Ex. R**.  Depending on

9   each driver's individual performance each week, Amazon dictates, through specific guidelines,

10  when a driver needs to be retrained and under what circumstances a driver is to be

11  terminated and removed from employment with Amazon.  *See id*.  Amazon uniformly tracks

12  its drivers' performance using these identical processes nationwide.

13       Amazon also implements and enforces a "Zero Tolerance Policy" ("ZTP") nationwide

14  and can terminate any driver that does not meet its qualifications at any time.  *See* Botros

15  Decl., **Ex N**.  Amazon acknowledges that "we have implemented a field audit process along

16  with a zero tolerance policy that defines conditions for coaching or immediate off-boarding of

17  DAs who do not maintain the minimum service standards for Amazon deliveries to

18  customers."  *See id*.  The ZTP goes on to list various infringements—classified as either Tier 1

19  or Tier 2.  *See id*.  Depending on the infringement, Amazon retains the authority to

20  immediately suspend or terminate the Driver.  *See id*.  Amazon further acknowledges that

21  "[a]ll DSPs that have DAs with Tier 1 infringements will be subject to a wage audit."  *See id.*[5]

22  Moreover, Amazon's managers freely admit that "they ha[ve] the power to indirectly fire

23  drivers by barring them from their deliver stations."  Botros Decl., **Ex. S**.[6]

24

25  _____

[5] Amazon failed to ensure that its drivers were paid in compliance with the FLSA, despite these repeated wage
26  audits.

[6] "These bans typically happened at weekly meetings between Amazon manages and courier-company
27  managers, according to people who attended these meetings."  Botros Decl., **Ex. S**.

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 7
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Further, Amazon provides "Uniform Requirements and Guidelines" that state "Delivery

2  Associates are required to wear the Amazon uniform," which consists of an Amazon Logistics

3  polo. Botros Decl., **Ex. J**.  Plaintiff avers that "[e]ven though many of the drivers were paid by

4  different DSPs than the one I was paid by, we all reported to the same fulfillment

5  center/delivery station everyday, we all wore the same uniform, and we all delivered Amazon

6  packages the same way, as required by Amazon."  Edmonds Decl. ¶¶ 8, 30; *see also* Brown

7  Decl. ¶¶ 8; 30; Coleman Decl. ¶¶ 8, 30; Danielson Decl. ¶¶ 8, 31; Garcia Decl. ¶¶ 8, 30;

8  Gordon Decl. ¶¶ 8, 30.  Moreover, most of the delivery vans that the drivers use to deliver

9  packages on a daily basis to Amazon customers are adorned with the Amazon logo.  *See*

10  Brown Decl. ¶¶ 34-35; Coleman Decl. ¶ 34; Garcia Decl. ¶ 34.  Amazon has relationships with

11  car manufacturers to build and customize delivery vans for Amazon that are provided to DSPs.

12  Specifically, in September 2018, a few months after the formal launch of its DSP program,

13  Amazon partnered with Mercedes-Benz, ordering 20,000 Amazon branded vans to supply to

14  its DSPs.  *See* Botros Decl., **Ex. T**.

15    In order to ensure uniform implementation of its policies, procedures, and training

16  companywide, Amazon directly employs Operations Managers of Delivery Operations, Area

17  Managers of Delivery Operations, Driver Trainers, and Learning Coordinators, all of whom are

18  dedicated to, and responsible for, managing and training drivers.  *See* Botros Decl., **Exs. K, U,**

19  **& V**.  Through these positions, Amazon ensures strict adherence to its policies and

20  procedures, maintains control of the drivers and the deliver process, and guarantees

21  uniformity in driver training.

22    For instance, Operations Managers of Delivery Operations are "responsible for driver

23  success at one or multiple Amazon Delivery Stations (24/7 last-mile carrier site)" and for

24  "ensure[ing] the diverse set of partners in Amazon's final mile delights tens of thousands of

25  customers every day."  *See* Botros Decl., **Ex. U**.  Some of the duties of an Operations Manager

26  include, but are not limited to: "**plan, direct, supervise and control the execution of all**

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 8
Case No.: 2:19-cv-01613-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   **business, technical, and fiscal functions of the delivery station On-road operations**”;

2   “[c]hampion excellent driver and customer experience while continuously improving

3   Amazon's last mile on road performance”; “[b]e a subject matter expert for all Delivery

4   Associates and Delivery Service Partners process Areas”; and “[m]anage Driver and DSP

5   relationships and measure and evaluate those partnerships on a regular basis,” including

6   “[r]egular meetings with DSPs to resolve their barriers and to develop and ensure adherence

7   to action plans that meet business objectives.” *See id*. (emphasis added).  On its jobs website,

8   Amazon recent posted openings for Operations Managers, Delivery Operations in California,

9   Connecticut, Massachusetts, Maryland, and New York. *See* Botros Decl., **Ex. W**.

10   Additionally, Area Managers of Delivery Operations are “responsible for driver success

11   and maintaining a positive driver experience.” *See* Botros Decl., **Ex. V**.  Like Operations

12   Managers, Area Managers are required to champion driver experience and be subject matter

13   experts for Delivery Associates and DSPs. *See id*.  An Area Manager's key job duties include,

14   but are not limited to: “**manage associate training processes and on road audit mechanisms**

15   **for Delivery Associates**”; “**lead daily SUMs** with the [Delivery Associate] population to drive

16   quality and engagement”; “**execute [Delivery Associate] scheduling strategy through**

17   **optimization of delivery route assignment**”; and “**monitor driver staffing and fleet pipeline**

18   **to ensure sufficient capacity**.” *See id*. (emphasis added).  Amazon's website recently had job

19   openings for Area Managers, Delivery Operations in California, Connecticut, Florida, Georgia,

20   Illinois, Iowa, Kentucky, Massachusetts, Maryland, Michigan, New Jersey, New York, Ohio,

21   Texas, and Wisconsin. *See* Botros Decl., **Ex. W**.

22   Likewise, Amazon directly employs driver trainers who are responsible for tracking

23   “performance and provid[ing] identified retraining and process improvement opportunities to

24   further develop [drivers]”; “educat[ing] and audit[ing] driver safety and compliance standards

25   such as driver vehicle inspection reports, hours of service, trip planning and safe road driving

26   practices”; and “track[ing] and monitor[ing] performance including on road ride behinds to

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 9
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  reassure on-road quality, adherence to standards and identify re-training and process

2  improvement opportunities." *See* Botros Decl., **Ex. K**.  The responsibilities listed are consistent

3  with Amazon's Quality Management Policies, which indicate that Amazon can require drivers

4  to be re-trained if they are not meeting Amazon's quality standards.  *See* Botros Decl., **Ex. R**.

5  Further confirming these facts, Plaintiff Brady Edmonds states that delivery drivers are

6  required to abide by all Amazon safety directives communicated to them by Amazon

7  employees and that he recalls attending at least 10 safety meetings conducted by Amazon

8  managers.  Edmonds Decl. ¶¶ 37-38; *see also* Brown Decl. ¶¶ 37; Coleman Decl. ¶ 37;

9  Danielson Decl. ¶ 38; Garcia Decl. ¶ 37; Gordon Decl. ¶ 37.

10        Furthermore, Amazon directly employs Learning Coordinators who work with "DSP

11  Managers . . . [and] Drivers . . . to coordinate all training related activities for the site.  *See*

12  Botros Decl., **Ex. K**.  Amazon's website recently had job openings for Driver Trainers or

13  Learning Coordinators in California, Iowa, Massachusetts, Michigan, New York, and Texas.  *See*

14  Botros Decl., **Ex. X**.  The Learning Coordinators further ensure uniformity in the training of

15  drivers through materials like the training video Amazon created, which every driver is

16  required to watch at the inception of his or her employment.  *See* Brown Decl. ¶ 12; Coleman

17  Decl. ¶ 12; Danielson Decl. ¶ 13; Edmonds Decl. ¶ 12; Garcia Decl. ¶ 12; Gordon Decl. ¶ 12.

18        By design, Amazon controls the entire delivery process from start to finish nationwide.

19  At the beginning of each workday, the drivers report to an Amazon Delivery Station where the

20  Amazon merchandise is delivered, stored, and processed.  *See* Brown Decl. ¶ 13; Coleman

21  Decl. ¶ 13; Danielson Decl. ¶ 14; Edmonds Decl. ¶ 13; Garcia Decl. ¶ 13; Gordon Decl. ¶ 13.

22  These Delivery Stations are often owned and operated by Amazon, and the vast majority of

23  the personnel who work inside are Amazon employees.  *See* Brown Decl. ¶ 6; Coleman Decl. ¶

24  6; Danielson Decl. ¶ 6; Edmonds Decl. ¶ 6; Garcia Decl. ¶ 6; Gordon Decl. ¶ 6; Exhibit I.

25        Each morning, regardless of the DSP through which they are paid, Amazon's drivers

26  receive a work schedule created by Amazon that lists all of the packages each driver is

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 10
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    required to deliver on that day and the order in which the driver is required to make the

2    deliveries.  *See* Brown Decl. ¶¶ 14-17; Coleman Decl. ¶¶ 14-17; Danielson Decl. ¶¶ 14-17;

3    Edmonds Decl. ¶¶ 14-17; Garcia Decl. ¶¶ 14-17; Gordon Decl. ¶¶ 14-17.  No driver has the

4    discretion to pick and choose the specific packages that must be delivered or the overall

5    number.  *See id.*  All of the details with regard to the delivery route are determined by

6    Amazon.  *See id.*  This fact is further bolstered by the key job duties listed for the Area

7    Manager of Delivery Operations job openings, which state that Area Managers "[e]xecute

8    [Delivery Associate] scheduling strategy through optimization of delivery route assignment."

9    *See* Botros Decl., **Ex. V**.

10          Following the distribution of the daily route schedules, all drivers nationwide are

11   issued a communications device from Amazon called a "Rabbit."  *See* Brown Decl. ¶ 18;

12   Coleman ¶ 18; Danielson Decl. ¶ 19; Edmonds Decl. ¶ 18; Garcia Decl. ¶ 18; Gordon Decl. ¶

13   24.  Amazon provides this device so that it can monitor its drivers' progress each day and

14   communicate with them while they are out in the field making deliveries.  *See* Brown Decl. ¶¶

15   22-23; Coleman Decl. ¶¶ 22-23; Danielson Decl. ¶¶ 23-24; Edmonds Decl. ¶¶ 22-23; Garcia

16   Decl. ¶¶ 22-23; Gordon Decl. ¶¶ 22-23.  In addition, and in part because there are sometimes

17   not enough Rabbits for every driver, Amazon requires drivers to download and sign into an

18   application called "Amazon Flex," which serves the same purpose as the Rabbit, using

19   personal email credentials.  *See* Brown Decl. ¶¶ 19-22; Coleman Decl. ¶¶ 19-22; Danielson

20   Decl. ¶¶ 20-23; Edmonds Decl. ¶¶ 19-22; Garcia Decl. ¶¶ 19-22; Gordon Decl. ¶¶ 19-22.

21          Drivers are required to use the Rabbit and Amazon Flex application to scan packages,

22   navigate through their Amazon-assigned delivery routes, and track and report their progress

23   to Amazon.  *See* Brown Decl. ¶¶ 18-27; Coleman Decl. ¶¶ 18-27; Danielson Decl. ¶¶ 19-28;

24   Edmonds Decl. ¶¶ 18-27; Garcia Decl. ¶¶ 18-27; Gordon Decl. ¶¶ 18-27.  To the extent a

25   driver has an issue with a delivery, the driver must use a button located on the Rabbit or in

26   the Amazon Flex application that connects the driver directly to an Amazon dispatcher, who

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 11
Case No.: 2:19-cv-01613-JLR

1    then assists the driver in making the delivery and directs the driver on what to do in order to

2    successfully perform the duties required of a delivery driver.  *See* Brown Decl. ¶ 26; Coleman

3    Decl. ¶ 26; Danielson Decl. ¶ 27; Edmonds Decl. ¶ 26; Garcia Decl. ¶ 26; Gordon Decl. ¶ 26.

4    When a driver completes a delivery, the Rabbit's GPS navigation directs the driver where to go

5    next on the assigned route.  *See* Brown Decl. ¶¶ 24-25; Coleman Decl. ¶¶ 24-25; Danielson

6    Decl. ¶¶ 25-26; Edmonds Decl. ¶¶ 24-25; Garcia Decl. ¶¶ 24-25; Gordon Decl. ¶¶ 24-25.  In

7    other words, Amazon dictates where all drivers are to be, and when, at all times.  *See* Brown

8    Decl. ¶¶ 27-29; Coleman Decl. ¶¶ 27-29; Danielson Decl. ¶¶ 28-30; Edmonds Decl. ¶¶ 27-29;

9    Garcia Decl. ¶¶ 27-29; Gordon Decl. ¶¶ 27-29.

10        Irrespective of the DSP through whom Amazon employs them, Plaintiff and those

11   similarly situated are local delivery drivers whose primary duty is to deliver Amazon packages

12   to Amazon's customers.  *See* Brown Decl. ¶¶ ¶¶ 5, 31-32; Coleman Decl. ¶¶ 5, 31-32;

13   Danielson Decl. ¶¶ 5, 32-33; Edmonds Decl. ¶¶ 5, 31-32; Garcia Decl. ¶¶ 5, 31-32; Gordon

14   Decl. ¶¶ 5, 31-32.  Moreover, Plaintiffs and the drivers within the proposed class are all

15   compensated on a day-rate basis.  *See* Brown Decl. ¶ 44; Coleman Decl. ¶ 44; Danielson at ¶

16   45; Edmonds Decl. ¶ 44; Garcia Decl. ¶ 44; Gordon Decl. ¶ 44.  All drivers within the defined

17   class, regardless of the facility at which they worked, are required to work over forty hours

18   per week in at least some workweeks.  *See* Brown Decl. ¶ 42; Coleman Decl. ¶ 42; Danielson

19   at ¶ 46; Edmonds Decl. ¶ 42; Garcia Decl. ¶ 42; Gordon Decl. ¶ 42.  Indeed, drivers routinely

20   work hours far in excess of this. *See id*.  But the drivers are not compensated at a rate that is

21   one and one-half times their regular rates of pay for hours worked over forty each week.  *See*

22   Brown Decl. ¶¶ 43-44; Coleman Decl. ¶¶ 43-44; Danielson at ¶¶ 44-45; Edmonds Decl. ¶¶ 43-

23   44; Garcia Decl. ¶¶ 43-44; Gordon Decl. ¶¶ 43-44.

24        These illegal pay practices are applicable to all drivers in the proposed class, as

25   evidenced by the declarations of the named Plaintiff and Opt-in Plaintiffs in this case.  To date

26   eleven similarly situated employees have opted into this case even though court-approved

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 12
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  notice has not yet been sent.  *See* Dkt. Nos. 6, 28, 29, 30, 31, 32.   The Plaintiffs who have

2  provided declarations in support of this motion and have opted into this action have worked

3  for Amazon in four states at locations in Jacksonville, Florida; Gainesville, Florida; Saint

4  Petersburg, Florida; Smyrna, Georgia; Baton Rouge, Louisiana; Eagan, Minnesota; and

5  Memphis, Tennessee. *See* Botros Decl., **Ex. Q**.  This demonstrates that Amazon drivers across

6  the country were not paid overtime compensation for hours worked over forty each week,

7  regardless of which Delivery Station they worked out of and regardless of which DSP paid or

8  directly hired them.  *See id*.

9       The widespread nature of the FLSA violations at issue is further demonstrated by the

10  multitude of similar cases filed against Amazon throughout the country.  Indeed, at least

11  *sixteen* other lawsuits have been filed in federal court against Amazon and various DSPs

12  alleging similar violations of the FLSA's overtime provision.[7]  This further supports Plaintiff's

13  allegation of widespread violations affecting similarly situated individuals nationwide.

14  ───────────────

15  [7]  *See Campion v. Amazon.com, LLC., et al.*, Case No. 3:18-cv-05222 (N.D. Cal. Aug. 24, 2018) (California class and FLSA collective action alleging local Amazon delivery drivers were misclassified as independent contractors and

16  not compensated properly for overtime); *Wasilewski v. Silverstar Delivery LTD, et al.*, 2:18-cv-12167; *Tatum v. B.B.W. Holdings, Inc. et al.*, Case No. 2:18-cv-11661 (E.D. Mich. 2018) (collective action alleging B.B.W. Holdings

17  and Amazon are joint employers whom paid plaintiff and those similarly situated on a day-rate basis but failed to pay proposed class members any overtime compensation for the hours that they worked over forty each week);

18  *King v. Amazon.com, LLC*, Case No. 1:18-cv-21464 (S.D. Fla. April 13, 2018) (collective action brought by warehouse associate who was not compensated properly for overtime in accordance with the FLSA; case settled

19  and dismissed with prejudice); *Bravo v. On Delivery Services, LLC et al.*, Case No. 3:18-cv-01913 (N.D. Cal. March 28, 2018) (alleging plaintiff, a driver's helper, was compensated on a day-rate basis and that Amazon and other

20  defendants failed to compensate him properly for overtime hours); *Hegedus et al. v. Nexen Corporation et al.*, Case No. 2:18-cv-10798; *Smith v. Silverstar Delivery, Ltd., et al.*, Case No. 2:18-cv-10501 (E.D. Mich. Feb. 12, 2018)

21  (collective action alleging that Amazon failed to properly compensate proposed class of local delivery drivers for overtime hours); *Christeson v. Amazon.com.ksdc*, LLC, Case No. 2:18-cv-02043 (D. Kan. Jan. 25, 2018) (plaintiff, a,

22  IT Support Engineer for Amazon, filed collective action complaint alleging Amazon failed to pay him properly for overtime hours; case settled and parties are currently working on reducing settlement to comprehensive written

23  agreement); *Wu v. Amazon.com, Inc., et al.*, Case No. 2:17-cv-2759 (E.D.N.Y. May 7, 2017) (class and collective action brought by couriers who were paid on a day-rate basis but were not compensated properly for overtime

24  hours); *Villalta v. Breakaway Courier Corp., et al.*, Case No. 2:17-cv-01780 (E.D.N.Y. March 30, 2017) (New York class and collective action alleging Amazon failed to properly pay overtime compensation to local delivery

25  drivers; complaint voluntarily dismissed); *Hickman et al. v. TL Transportation, LLC, et al.*, Case No. 2:17-cv-01038 (E.D. Pa. March 8, 2017) (collective action alleging Amazon failed to pay proper overtime compensation to class

26  of delivery drivers); *Morales v. Amazon, LLC et al.*, Case No. 2:17-cv-01981 (C.D. Cal. Nov. 4, 2016) (alleging drivers paid on day rate failed  to receive proper overtime compensation); *Lines v. Amazon.com Inc., et al.*, Case

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 13
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

### III.  LEGAL STANDARD

2   The FLSA authorizes employees to bring an action on behalf of themselves and others

3   similarly situated. *See* 29 U.S.C. § 216(b).  The FLSA provides, in pertinent part, that:

4   An action to recover the liability [for unpaid overtime] may be
5   maintained against any employer . . . . in any Federal or State court of
    competent jurisdiction by any one or more employees for and in behalf
6   of them self or themselves and other employees similarly situated.  ***No
    employee shall be a party plaintiff to any such action unless he gives his
7   consent in writing to become such a party and such consent is filed in
    the court in which such action is brought.***

8

9   *See id.* (emphasis added).  The Ninth Circuit has repeatedly recognized that the FLSA is a

10  remedial statute that ***must*** be interpreted broadly.  *See Senne v. Kansas City Royals Baseball*

11  *Corp.*, 934 F.3d 918, 950 (9th Cir. 2019); *Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir.

12  1999).  Recently, in *Campbell v. City of Los Angeles*, the Ninth Circuit clarified the low burden

13  applicable at this stage and held that "[p]arty plaintiffs are similarly situated, and may proceed

14  in a collective, to the extent they share a similar issue of law or fact material to the disposition

15  of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018); *see*

16  *also Senne*, 934 F.3d at 948.  Specifically, the Ninth Circuit held that "[i]f the party plaintiffs'

17  factual or legal similarities are material to the resolution of their case, *dissimilarities in other*

18  *respects should not defeat collective treatment*."  *Campbell*, 903 F.3d at 1114 (emphasis

19  added); *see also Senne*, 934 F.3d at 948; *Johnson v. INTU Corp.*, 2020 WL 977788, at *1 (D.

20  Nev. Feb. 28, 2020).  "[W]hat matters is not just any similarity between party plaintiffs, but a

21  legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense

22  of having the potential to advance these claims, collectively, to some resolution." *Campbell*,

23  ───────────────

No. 1:17-cv-00072 (W.D. Tex. Feb. 2, 2017) (collective and class action on behalf of delivery drivers); *Bradley et*
24  *al. v. Silverstar Ltd. et al.*, Case No. 1:16-cv-10259 (N.D. Ill. Nov. 11, 2016) (Illinois class and collective action
alleging Amazon failed to properly compensate delivery drivers overtime hours; class action settlement
25  approved); *Rottmann et al. v. Amazon.com, Inc. et al.*, Case No. 2:16-cv-01554 (W.D. Wash. Oct. 4, 2016)
(Washington class and collective action alleging Amazon misclassified delivery drivers as independent contractors
26  and failed to pay proper overtime wages); *Curry et al. v. Amazon.com, Inc., et al.*, Case No. 2:16-cv-000007 (D.
Ariz. Jan. 5, 2016) (Washington class and collective action alleging Amazon misclassified delivery drivers as
27  independent contractors and failed to pay them proper overtime wages).

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 14
Case No.: 2:19-cv-01613-JLR

1   903 F.3d at 1115; *see also Cuevas v. ConAm Mgmt. Corp*., 2019 WL 5320544, at *3 (S.D. Cal.

2   Oct. 21, 2019).

3        FLSA collective actions generally proceed in two phases. *See Campbell*, 903 F.3d at

4   1100. Earlier in the litigation, as here, plaintiffs move for preliminary or conditional

5   certification of the collective action by arguing they have at least facially satisfied the

6   "similarly situated" requirement.  *See id*.  "At this early stage of the litigation, the district

7   court's analysis is typically focused on a review of the pleadings but may *sometimes* be

8   supplemented by declarations or limited other evidence." *Id*. at 1109 (emphasis added).  At

9   the first stage, "[t]he Court's job is merely to confirm the plaintiffs' allegations are plausible—

10  supported by the limited evidence the plaintiffs provide. *Johnson*, 2020 WL 977788, at *2;

11  *Campbell*, 903 F.3d at 1100.  "[T]his standard is lenient and usually results in certification."

12  *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011); *see also*

13  *Douglas v. Xerox Bus. Servs., LLC*, 2015 WL 12930486, at *1 (W.D. Wash. Feb. 9, 2015) ("the

14  court reviews, from a lenient standard, whether proposed class members should be

15  conditionally certified and given notice of the action.").  Then, later in the litigation, and after

16  the necessary discovery is complete, defendants will typically move for "decertification,"

17  arguing that discovery established the plaintiffs were not similarly situated after all.  *Campbell*,

18  903 F.3d at 1110.

19       At the first stage, "[t]he Court does not resolve factual disputes or decide substantive

20  issues going to the merits." *Randolph v. Centene Mgmt. Co.*, 2015 WL 2062609, at *2 (W.D.

21  Wash. May 4, 2015) (citing *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 926 (D.Ariz.2010)).

22  Moreover, "[i]n deciding whether potential plaintiffs should receive notice, courts do not

23  consider individual differences between putative class members."  *Randolph*, 2015 WL

24  2062609, at *2.  "Fact-specific differences between putative class members go to the merits

25  and are properly addressed at the decertification stage."  *Id*.; *see also Thomas v. Kellogg Co.*,

26  2014 WL 716152, at *2 (W.D. Wash. Jan. 9, 2014) (granting conditional certification of class of

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 15
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   sales representatives and holding defendant's factual arguments regarding whether proposed

2   class was similarly situated would be fleshed out later in discovery); *Douglas*, 2015 WL

3   12930486, at *1-*2 (granting nationwide certification for class of employees who had similar

4   job duties and were subject to Xerox's employment policies regardless of who paid employees

5   because joint employer issue was for step two).

6          Here, Plaintiff has easily exceeded this low burden, and notice is due to issue.

7                                   **IV.  ARGUMENT**

8   **A.      Plaintiff Has Made a Sufficient Showing that Proposed Opt-ins Are Similarly Situated.**

9          Plaintiff has satisfied his lenient burden of demonstrating that the proposed class is

10   similarly situated.  Plaintiff has submitted declarations from six drivers who have worked at a

11   total of seven Amazon Delivery Stations in four states.  These declarations, together with

12   voluminous evidence of Amazon's own policies and job descriptions for direct employees as

13   well as other documents discussing Amazon's nationwide DSP business model, demonstrate

14   that all local delivery drivers under Amazon's DSP model perform the same job duties and are

15   subject to the same working conditions in Amazon Delivery Stations across the United States.

16          This is far from an issue of first impression.  Rather, courts routinely grant nationwide

17   conditional certification under similar circumstances.  For example, in a virtually identical case

18   against an Amazon logistics competitor, *Sullivan-Blake v. FedEx Ground Package System, Inc.*,

19   another court recently permitted nationwide notice to issue to all FedEx delivery drivers

20   employed through Independent Service Providers or "ISPs."  *See* 2019 WL 4750141, at *1, 5

21   (W.D. Pa. Sept. 30, 2019).  Similar to Amazon's DSP model, FedEx contracts with ISPs

22   (independent corporations with vehicles, drivers, and other employed personnel) that provide

23   pickup and delivery services for FedEx.  *Id.*  The court held the proposed class was similarly

24   situated because plaintiffs presented evidence of FedEx's shift to the ISP model nationwide

25   and presented affidavits demonstrating that FedEx required drivers to be paid through the

26   ISPs, that drivers worked exclusively delivering FedEx packages using trucks bearing FedEx

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 16
Case No.: 2:19-cv-01613-JLR

1  logos, that aspects of the drivers' work was managed and directed by FedEx, and that the

2  drivers were not paid overtime for their work delivering FedEx packages.  *Id.* at *4.

3       In its opposition, FedEx had argued plaintiffs were unable to show that all drivers

4  employed by all ISPs were subjected to the same compensation policy and that its ISP model

5  does not qualify as a common policy supporting conditional certification.  *Id.* at *4.  The court

6  disagreed, stating: "these contentions focus either on [the] merits . . . of Plaintiffs' claims, or

7  on whether the potential opt-ins are in fact similarly situated to Plaintiffs.  This is an inquiry

8  that will be undertaken at step two of the certification process with a more developed

9  record."  *Id.*  FedEx also argued that it had no obligation to pay overtime because it expected

10  the ISPs to do so, but the court held this issue need not be entertained at conditional

11  certification.[8]  *Id.*; *see also Douglas*, 2015 WL 12930486, at *2 (granting nationwide

12  conditional certification of all employees, even if not directly paid by defendant, holding that

13  the notice stage was "not the appropriate time to resolve the merits of the disputed 'joint-

14  employer' issue"); *Benion v. Lecom, Inc.*, 2016 WL 2801562, at *10 (E.D. Mich. May 13, 2016)

15  (granting conditional certification where plaintiffs "each applied to LeCom to work as

16  installation and repair technicians, were directed to subcontracting agencies, but were

17  eventually approved by LeCom directly to work, and they allege nearly identical work

18  responsibilities."); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 800 (E.D. La. 2007)

19  (granting conditional certification where putative class members performed worked for

20  defendants through different subcontractors because plaintiffs presented sufficient evidence

21  that the putative class performed similar duties and were not paid overtime); *Edwards v.*

22  *Multiband Corp.*, 2011 WL 117232, at *4 (D. Minn. Jan. 13, 2011) (granting conditional

23  certification where defendant argued plaintiffs were employees of subcontractors whom

24  defendant contracted with where plaintiff presented evidence that work was dictated by

25  defendant, defendant monitored their work, defendant established time frames in which to

26  ────────────────

[8] The court in *Sullivan-Blake* also noted that FLSA obligations cannot be modified by contract.  2019 WL 4750141,

27  at *4 n.3.

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 17
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

complete work, and plaintiffs were required to complete work to defendants specifications); *Ziglar v. Express Messenger Sys. Inc.*, 2017 WL 6539020, at *5 (D. Ariz. Aug. 31, 2017), *vacated and remanded on other grounds*, 739 F. App'x 444 (9th Cir. 2018) ("The Court concludes that Plaintiffs' evidence is sufficient as a threshold matter to show that Defendant has established a common policy or plan of fissured employment whereby drivers are required to contract with RSPs as independent contractors even though Defendant maintains control over their work. The Court also finds that the putative class members are similarly situated with respect to this policy or plan.").

**B.     Plaintiff's Proposed Notice Is Proper.**

Plaintiff's proposed judicial notice is "timely, accurate, and informative."  *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 172 (1989).  As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted.  To that end, Plaintiff asks permission to notify members of the proposed class of the pendency of this collective action through first-class mail, email,[9] text message,[10] and allowing Plaintiff to post the notice in a

---

[9] Email notice is the new norm of communication, serves to further the broad remedial purpose of the FLSA, and has widely been adopted by courts throughout the country. *See Rozeboom v. Dietz & Watson, Inc.,* 2018 WL 2266692, at *4 (W.D. Wash. May 17, 2018); *Alequin v. Darden Rests., Inc.,* 2013 WL 3945919 (S.D. Fla. July 31, 2013) (noting that the Southern District of Florida commonly approves email notice to potential opt-in class members in FLSA cases); *Butler v. Direct SAT USA, LLC,* 876 F. Supp.2d 560, 575 (D. Md. 2012) (allowing email notice to putative class members because communication through email is now the "norm."); *Denney v. Lester's, LLC,* 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.,* 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012); *In re Deloitte & Touche, LLP Overtime Litig.,* 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)(noting that "communication through email is [now] the norm.").

[10] Courts have authorized notice via text message and email in FLSA cases, given the statute's remedial purpose and the goal of transmitting the notice to as many potential class members as possible. *Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"); *Ziglar,* 2017 WL 6539020, at *7 (authorizing notice to be sent via mail, email and text message); *Vasto v. Credico (USA) LLC,* 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (authorizing notice via text message where there is high turnover rate among employees); *Bhumithanarn v. 22 Noodle Mkt. Corp.,* 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (Court finding that "notice via text message is likely to be a viable and

---

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

conspicuous location at the Amazon fulfillment centers nationwide.[11]  Additionally, Plaintiff requests that the proposed class members who desire to opt-in be permitted to electronically execute their consent forms via "Adobe Sign."[12]  Giving the proposed class members this option is in line with the FLSA's remedial purposes and would ensure that the proposed class members have the ability to submit their consent forms without additional obstacles standing in their way.

In order to disseminate notice, Plaintiff requests that the Court order Amazon to produce the names, last known addresses, telephone numbers, email addresses, and last four digits of social security numbers[13] for all proposed class members.  The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling defendant to produce the names and addresses of potentially similarly situated employees

---

efficient means of communicating with many prospective members of [the] collective action" where it was shown text messaging was defendants' preferred method of employee communication.).

[11] *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1212 (N.D. Cal. 2013) (requiring defendants to post notice in English and Spanish); *Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 2013 WL 5593040, at *21 (D. Or. Oct. 10, 2013); *Compagnone v. DL Pool Service, LLC* Case No. 2:15-cv-647-Ftm-99MRM, Docket Entry 48 (M.D. Fla. Nov. 11, 2016); *Dualan v. Jacob Transportation Servs., LLC*, 172 F. Supp. 3d 1138, 1152 (D. Nev. 2016); *Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569, at *6 (S.D. Fla. Oct. 2014) ("the Court orders Defendants to post a copy of the notice (both English and Spanish versions) as approved in this Order, along with the Consent to Become Party Plaintiff attached to the notice, at each of Defendants' locations at which such potential class members are employed"); *Castillo v. P & R Enters., Inc.*, 517 F.Supp.2d 440, 449 (D.D.C.2007) (ordering notices to be posted in Defendant's offices).

[12] "When courts allow notice to be distributed via email, they regularly allow opt-in plaintiffs to execute consent forms electronically." *Rivenbark v. JPMorgan Chase & Co.*, 340 F. Supp. 3d 619, 627 (S.D. Tex. 2018). Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms."  *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *see also Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 518 (W.D. Tex. 2015) (allowing plaintiff to employ its proposed electronic signature method for execution of consent forms); *White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service).

[13]  Plaintiffs seek only the last 4 digits of putative opt-ins social security numbers so that class members' names can be processed through the national change of address ("NCOA") database to ensure the most up to date physical addresses to effectuate notice.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  despite the fact that no conditional class certification motion was pending before the court).

2  "The first step is to identify those employees who may be similarly situated and who may

3  therefore ultimately seek to opt in to the action."  *Id.*  As such, early discovery of a mailing list

4  is routinely ordered in FLSA collective actions because lists are necessary to facilitate notice.

5  *See Hoffmann-La Roche,* 493 U.S. at 165; *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511,

6  at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D.

7  Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169

8  (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005).[14]

9          Once Amazon has produced a list of the proposed class members and the notices and

10  consent to join forms have been disseminated, class members should have 90-days to return

11  their executed consent forms.  Courts have routinely held that a ninety-day notice period is

12  appropriate in FLSA cases.  *See, e.g., Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542

13  (N.D. Cal. 2007); *Lewis v. Nevada Prop. 1, LLC*, 2013 WL 237098, at *17 (D. Nev. Jan. 22, 2013);

14  *Guy v. Casal Inst. of Nevada, LLC*, 2014 WL 1899006, at *6 (D. Nev. May 12, 2014).[15]

15

_____

16  [14]  The names, phone numbers, emails, and addresses of potential class members are discoverable during the

17  regular course of discovery even absent judicial notice because current and former delivery drivers are critical fact witnesses to this lawsuit.  *Hoffmann-La Roche* acknowledged the existence of "alternative bases for the

18  discovery, for instance that the employees might have knowledge of other discoverable matter."  493 U.S. at 160; *see also Franco v. Bank of America Corp.*, 691 F.Supp.2d 1324 (M.D. Fla. 2010) (granting plaintiff's motion to compel discovery of names of potential similarly situated employees); *Disimone v. Atlas Service, Inc.*, 2009 WL

19  5166262 (S.D. Fla. 2009) (ordering defendant to produce list of plaintiffs' co-workers prior to conditional certification).

20  [15] *Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Ballew v. Lennar Corp.,* 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) (finding "90 day period to

21  be reasonable"); *Gandhi v. Dell, Inc.,* 2009 WL 3427218, at *2 (W.D. Tex. Oct. 20, 2009) ("Ample authority suggests that 90 days is a reasonable amount of time to allow potential plaintiffs to opt in."); *Wass v. NPC Intern.,*

22  *Inc.,* 2011 WL 1118774, *5 (D. Kan. March 28, 2011) (denying defendant's request to shorten opt-in period to fewer than ninety days); *Calderon v. Geico Gen. Ins. Co.,* 2011 WL 98197, at *2, 8–9 (D. Md. Jan.12, 2011)

23  (authorizing ninety-day notice period); *Pereira v. Foot Locker, Inc.,* 261 F.R.D. 60, 68–69 (E.D. Pa. 2009) (finding ninety-day opt-in period to be reasonable); *Shipes v. Amurcon Corp.*, 2012 WL 1720615, at *4 (E.D. Mich. May 16,

24  2012) (overruling defendant's objections to 90-day opt-in period); *In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III),* 2012 WL 3308880, at *29 (S.D. Tex. Aug. 10, 2012) (approving 90-day opt-in period);

25  *Landsberg v. Acton Enterprises, Inc.,* 2008 WL 2468868, at *1 (S.D. Ohio June 16, 2008) (approving 90-day opt-in

26  period); *Hernandez v. Two Bros. Farm, LLC,* 2008 WL 4613069, at *2 (S.D. Fla. Oct. 15, 2008) (approving 90-day opt-in period).

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Furthermore, Plaintiff proposes that he be permitted to send a reminder notice to the

2    proposed class members via first-class mail, email, and text message at the half-way point

3    through the notice period.  *See Graham v. Overland Solutions, Inc.*, 2011 WL 1769737, at *4

4    (S.D. Cal. May 9, 2011) (approving reminder postcard to individuals who have not returned

5    the opt-in forms); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011)

6    ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first

7    notice."); *Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 835, 847(N.D. Cal. 2010)

8    ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder]

9    postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126

10   (E.D. Cal. 2009) (ordering third-party administrator to send reminder notice because "[t]hese

11   procedures provide the best possible notice to the Class Members").[16]

12                                  **V.  CONCLUSION**

13    Plaintiff has exceeded the low burden of demonstrating that Amazon delivery drivers

14   who were compensated on a day-rate basis are similarly situated.  The proposed opt-ins have

15   similar issues of law and fact that are material to the disposition of their FLSA claims.  This is

16   all that is required.  Thus, Plaintiff's motion should be granted, and the Court should permit

17   notice to issue to the similarly situated employees nationwide.

18    RESPECTFULLY SUBMITTED AND DATED this 26th day of March, 2020.

19                                  TERRELL MARSHALL LAW GROUP PLLC

20

21                         By:    /s/ Toby J. Marshall, WSBA #32726

22                                Beth E. Terrell, WSBA #26759
                                  Email: bterrell@terrellmarshall.com
23                                Toby J. Marshall, WSBA #32726
                                  Email: tmarshall@terrellmarshall.com
24

25   _____

26   [16] *Martinez v. DHL Express (USA) Inc.*, 2016 U.S. Dist. LEXIS 14304 (S.D. Fla. Feb. 5, 2016); *Hargrove v. Ryla Teleservices, Inc.*, 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send reminder letter to putative class members if responses were not received by plaintiffs within thirty days from issuance of original notice.); *Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (same).

27

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 21
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Andrew R. Frisch, *Admitted Pro Hac Vic*
Email: afrisch@forthepeople.com
Paul M. Botros, *Admitted Pro Hac Vice*
Email: pbotros@forthepeople.com
MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) Workers
Facsimile: (954) 327-3013

*Attorneys for Plaintiff*

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 22
Case No.: 2:19-cv-01613-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

<u>CERTIFICATE OF SERVICE</u>

I, Toby J. Marshall, hereby certify that on March 26, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan D. Redekopp, WSBA #36853
Email: ryan.redekopp@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: (206) 623-7580
Facsimile: (206) 623-7022

Richard Rosenblatt, *Admitted Pro Hac Vice*
Email: richard.rosenblatt@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey 08540-6241
Telephone: (609) 919-6600
Facsimile: (609) 919-6701

Christopher K. Ramsey, *Admitted Pro Hac Vice*
Email: christopher.ramsey@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, Pennsylvania 15219-6401
Telephone: (412) 560-3300
Facsimile: (412) 560-7001

*Attorneys for Defendants*

PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO
SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 23
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   DATED this 26th day of March, 2020.

2                           TERRELL MARSHALL LAW GROUP PLLC

3

4                           By:   /s/ Toby J. Marshall, WSBA #32726
                                  Toby J. Marshall, WSBA #32726
5                                 Email: tmarshall@terrellmarshall.com
6                                 936 North 34th Street, Suite 300
                                  Seattle, Washington 98103-8869
7                                 Telephone: (206) 816-6603
                                  Facsimile: (206) 319-5450
8

9                           *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com