UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRADY EDMONDS,<br><br>                      Plaintiff,<br><br>        v.<br><br>AMAZON.COM, INC., et al.,<br><br>                      Defendants. | CASE NO. C19-1613JLR<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

## I.  INTRODUCTION

Before the court is Amazon.com, Inc., Amazon Logistics, Inc., and Amazon.com Services, Inc.'s (collectively, "Amazon") motion to dismiss Plaintiff Brady Edmonds' first amended complaint (2d MTD (Dkt. # 26); *see also* FAC (Dkt. # 24)). Plaintiff Brady Edmonds filed a response. (Resp. (Dkt. # 34).) The court has considered the motion, the parties' submissions in support of and in opposition to the motion, the

//

//

ORDER - 1

relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES Amazon's motion to dismiss.

## II. BACKGROUND

### A. Procedural Background

Mr. Edmonds filed this action as a putative nationwide collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et, seq. ("FLSA") on October 9, 2019. (*See* Compl. (Dkt. # 1).) Amazon filed a motion to dismiss Mr. Edmonds' complaint on December 9, 2019, on the grounds that Mr. Edmonds did not identify a specific week in which he worked more than forty hours but was not paid overtime wages and did not identify the specific delivery service provider ("DSP") that directly employed him. (*See* 1st MTD (Dkt. # 21) at 1-2.) Instead of responding to that motion, Mr. Edmonds filed his first amended complaint on December 30, 2019. (*See* FAC.)[2] The amended complaint identifies a specific work week in which Mr. Edmonds alleges he worked over forty hours but was not paid overtime (*see id.* ¶ 20) but does not identify the DSP for which Mr. Edmonds worked (*see generally id.*). Amazon then filed the present motion to dismiss the first amended complaint on January 13, 2020. (*See* 2d MTD.)

//

//

---

[1] Neither party requested oral argument (*see* 2d MTD at 1; Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Because Amazon's first motion to dismiss seeks to dismiss a complaint that is no longer operative, the court STRIKES Amazon's first motion to dismiss and DIRECTS the Clerk to remove it from the court's calendar.

**B.     Factual Background**

Mr. Edmonds was directly employed by one of Amazon's DSPs as a delivery driver in the greater Jacksonville, Florida area from June 2018 through February 2019. (*See* FAC ¶¶ 21, 26, 28.) DSPs "provide a delivery driver labor force to Amazon to further Amazon's core business objective of providing delivery service to Amazon customers. (*Id.* ¶ 50.) Mr. Edmonds alleges that he worked 10-15 hours per day between 4-5 days per week and was paid a flat rate. (*Id.* ¶¶ 22, 80.) Although he worked over 40 hours per week and over 50 hours "virtually every workweek," Mr. Edmonds alleges that "[n]either Amazon nor the DSP through whom Mr. Edmonds was paid" ever provided Mr. Edmonds with overtime compensation. (*See id.* ¶¶ 23, 26.)

Mr. Edmonds did not name the DSP that employed him in either his original complaint or his first amended complaint, and that DSP is not a party in this case. (*See generally* Compl.; FAC.) Nevertheless, Mr. Edmonds makes several allegations to substantiate his claim that Amazon was his joint employer while Mr. Edmonds delivered Amazon packages through the DSP. For example, Mr. Edmonds alleges that "Amazon dictates and directly manage[d]" his employment and that of other similarly situated delivery drivers by, among other things:

- requiring all drivers to submit to an Amazon background check;
- participating in the decision to hire delivery drivers;
- providing training materials and training all drivers;
- requiring all drivers wear Amazon-branded clothing;
- dictating the manner and type of clothing drivers wear;

- determining the make, model, and style of delivery van to be used while delivering packages;
- requiring delivery vans contain Amazon insignia and logos (except when extra trucks are rented due to volume exceeding capacity during the busy season);
- requiring drivers to arrive at and load and unload Amazon packages from Amazon-owned fulfillment and warehouse centers for delivery;
- monitoring the performance of pre-trip and post-trip delivery van inspections;
- requiring packages to be delivered to Amazon customers according to an exact schedule that dictates the order of delivery and provides the exact route to utilize;
- requiring drivers to report problems delivering packages directly to Amazon;
- controlling the method and manner of troubleshooting delivery issues;
- tracking delivery performance including but not limited to the number of packages delivered each day, the location of the driver at any given time, and the efficiency of the deliveries as reported through Amazon handheld devices or the Amazon Flex application for smart phones;
- supervising the work of each driver on a daily basis;
- evaluating the performance of each driver on a periodic basis in accordance with Amazon specific policies and procedures; and
- disciplining drivers up to and including termination.

(*Id.* ¶ 48.)

//

Mr. Edmonds also alleges that "the DSPs are directly and solely independent on their delivery contracts with Amazon" and "most if not all of the DSPs are solely dependent on payments made by Amazon to make regularly scheduled payroll" to Mr. Edmonds and other delivery drivers. (*Id.* ¶¶ 51, 53.) Mr. Edmonds alleges that Amazon required each DSP to execute a standard Amazon contract that required the DSP to hire drivers as W-2 employees in order to shift wage and hour compliance from Amazon to the DSPs. (*Id.* ¶¶ 54-55.) Therefore, Mr. Edmonds alleges, "the DSPs are little more than an administrator or employee leasing company for Amazon and an independent contractor in name only, dictating to driver[s] the policies and directives of Amazon in accord with" Amazon's contract. (*Id.* ¶ 56.)

Mr. Edmonds alleges that delivery services are a "core business objective" of Amazon and that Amazon cannot operate its business without delivery drivers. (*Id.* ¶ 58.) Nevertheless, Mr. Edmonds alleges that delivery drivers are not required to have any special skills beyond the delivery of Amazon packages. (*Id.* ¶ 59.)

Mr. Edmonds alleges that he and similarly situated drivers are dependent on Amazon because Amazon provides:

> (i) all of the packages to deliver as part of its core business; (ii) delivery instructions including when, where, how and in what order to deliver the packages; (iii) delivery support in the event there is an issue delivering a particular package; and (iv) payment of wages through Amazon's payments under the delivery contracts with the DSPs.

(*Id.*) Mr. Edmonds further alleges that "Amazon keeps an employee file for each driver that includes contact information, employment information, history of complaints/issues for that driver, training records of the driver, on and off duty time, and information on the

vehicle each driver operated in order to make deliveries." (*Id.* ¶ 60.)  Mr. Edmonds alleges that Amazon failed to keep accurate records of the hours that he and similarly situated drivers worked each week.  (*Id.* ¶ 85.)

Based on the above allegations, Mr. Edmonds brings a single claim against Amazon for violation of the FLSA for failure to pay overtime wages.  (*See id.* ¶¶ 114-22.)

### III.   ANALYSIS

**A.   Legal Standards**

  1. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

2.  The FLSA

The FLSA requires employers to compensate non-exempt employees for hours worked beyond 40 hours per work week "at a rate not less than one and one-half times the regular rate at which he is employed." 28 U.S.C. § 207(1). Alleging facts sufficient to raise a plausible inference that a plaintiff was asked to work more than 40 hours in one work week and that the plaintiff's employer did not compensate the plaintiff for those overtime hours is sufficient to plead an FLSA overtime violation. *See Mukai v. Fuhr*, No. C04-1446RSM, 2006 WL 8454750, at *2 (W.D. Wash. Jan. 3, 2006).

"Employer" is defined under the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employer" under the FLSA is not limited by the common law concept of "employer" and "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *see also Torres-Lopez v. May*, 111 F.3d 633, 641 (9th Cir. 1997) ("[T]he FLSA definition of employment is broad."). "Two or more employers may jointly employ someone for purposes of the FLSA." *Id.* (citing *Falk v. Brennan*, 414 U.S. 190,

195, (1973)). Joint employers are jointly and severally liable for FLSA violations with respect to their employees. *See* 29 C.F.R. § 791.2(f);[3] *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003); *Boucher v. Shaw*, 572 F.3d 1087, 1094 (9th Cir. 2009). The question of whether an entity is a joint employer is a legal question for the court to resolve. *Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004) (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*)).

The Ninth Circuit applies the *Bonnette* economic reality test to determine whether an entity is an employer under the FLSA. *See Bonnette*, 704 F.2d at 1470; *see also Perez v. Lantern Light Corp.*, *No.* C12-01406 RSM, 2015 WL 3451268, at *3 (W.D. Wash. May 29, 2015). That test looks to "the circumstances of the whole activity," and considers four factors. *See Bonnette*, 704 F.2d at 1470. Those factors are whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotation and citation omitted). Courts refer to the four *Bonnette* factors as "regulatory factors." *See Perez*, 2015 WL 3451268, at *3.

//

//

---

[3] The United States Department of Labor published a final rule that amended 29 C.F.R. § 791.2 effective March 16, 2020. *See* 84 Fed. Reg. 21,301 (May 14, 2019). The cited provision refers to the amended regulation, which does not meaningfully alter the regulation with respect to joint employers' joint and several liability as it applies here. Under the pre-amendment regulation, the language regarding joint and several liability was found in Section 791(e)(2). *See* 26 Fed. Reg. 7,732 (Aug. 18, 1961) (stating that joint employers "are responsible, both individually and jointly, for compliance with all of the applicable provisions" of the FLSA").

Additionally, where "a company has contracted for workers who are directly employed by an intermediary company," the Ninth Circuit also considers the eight-factor economic reality test as set forth in *Torres-Lopez*. *See Chao.*, 346 F.3d at 917; *Perez*, 2015 WL 3451268, at *3. The *Torres-Lopez* factors are also referred to as "non-regulatory" factors and consist of the following:

> (1) whether the work was a specialty job on the production line;
>
> (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;
>
> (3) whether the premises and equipment of the employer are used for the work;
>
> (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another;
>
> (5) whether the work was "piece work" and not work that required initiative, judgment or foresight;
>
> (6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;
>
> (7) whether there was permanence in the working relationship; and,
>
> (8) whether the service rendered is an integral part of the alleged employer's business.

*Torres-Lopez*, 111 F.3d at 640 (citations and quotations omitted). Although the *Bonnette* and *Torres-Lopez* factors are important, the determination of whether an employer-employee relationship exists depends on "the circumstances of the whole activity." *Bonnette*, 704 F.2d at 1469.

With the above standards in mind, the court now considers Amazon's motion.

//

**B.    Amazon's Motion**

Amazon argues that the failure to identify the DSP that hired Mr. Edmonds is fatal to his complaint.  (*See* 2d MTD at 9.)  The court disagrees that the failure to plead the identity of the DSP that hired Mr. Edmonds is per se grounds for dismissal.  *See infra* § III.B.4.  Instead, dismissal is only required if failure to identify the DSP means that Mr. Edmonds fails to plausibly plead a FLSA claim against Amazon under the economic reality test, informed by the *Bonnette* and *Torres Lopez* factors.  Accordingly, the court addresses whether Mr. Edmonds satisfies those standards and whether his failure to identify his DSP impacts those standards.

At the motion to dismiss stage, a plaintiff need only allege facts demonstrating some of the *Bonnette* or *Torres-Lopez* factors to survive.  *See, e.g.*, *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 990 (N.D. Cal. 2015); *Guitierrez v. Carter Bros. Sec. Servs., LLC*, No. 2:14-CV-00351-MCE, 2014 WL 5487793, at *5-6 (E.D. Cal. Oct. 29, 2014).  Mr. Edmonds clears this bar.

    1.  The <u>*Bonnette*</u> Factors

        *a.  Power to Hire and Fire*

Mr. Edmonds alleges that DSPs "hire drivers like [Mr. Edmonds] to deliver the Amazon packages within the DSP's service areas."  (FAC ¶ 4.)  He further alleges that Amazon "participat[es] in the decision to hire delivery drivers," but alleges no further factual detail regarding the nature or extent of Amazon's "participation."  (*See id.* ¶ 48.)  These allegations are insufficient for to draw a plausible inference that Amazon has the power to hire drivers like Mr. Edmonds.  However, Mr. Edmonds alleges that Amazon

1  "disciplin[es] drivers up to and including termination." (*See id.*)  This allegation is

2  sufficient to raise a reasonable inference that Amazon has the power to terminate drivers

3  hired directly by DSPs.  Because Mr. Edmonds alleges facts sufficient to infer that

4  Amazon has the power to fire, but not to hire, drivers, this factor is either neutral or

5  weighs in favor of finding that Amazon is a joint employer.

6          *b.  Supervision and Control of Work Schedules or Conditions of Employment*

7          This factor weighs in favor of joint employment.  Mr. Edmonds alleges that

8  Amazon requires packages to be delivered to Amazon customers "according to an exact

9  schedule that dictates the order of delivery and provides the exact route to utilize," trains

10 drivers, requires drivers to wear Amazon-branded clothing, determines the make, model,

11 and style of delivery vans that drivers are required to use, requires drivers to report

12 problems directly to Amazon, and supervises the work of each driver on a daily basis.

13 (*See id.*)

14         *c.  Determination of the Rate and Method of Payment*

15         This factor weighs against an inference that Amazon was Mr. Edmonds'

16 joint employer.  Mr. Edmonds makes no allegation that Amazon determined his rate and

17 method of payment.  Mr. Edmonds alleges that the DSPs are "solely dependent on

18 payments made by Amazon to make regularly scheduled payroll" to Mr. Edmonds and

19 other drivers.  (*See id.* ¶ 52.)  However, this allegation supports only the inference that

20 Amazon pays DSPs, not that Amazon directly paid Mr. Edmonds, let alone determined

21 his rate and method of payment.

22 //

### d. Maintenance of Employment Records

Mr. Edmonds alleges that Amazon "keeps an employee file for each driver that includes contact information, employment information, history of complaints/issues for that driver, training records of the driver, on and off duty time, and information on the vehicle each driver operated in order to make deliveries." (*See* FAC ¶ 60.) Therefore, this factor weighs in favor of a reasonable inference that Amazon is Mr. Edmonds' joint employer.

## 2. The *Torres-Lopez* Factors

In addition to the *Bonnette* factors, the court considers the *Torres-Lopez* factors because Mr. Edmonds alleges that Amazon is "a company [that] has contracted for workers who are directly employed by an intermediary company." *Chao*, 346 F.3d at 917.

### a. Whether the Work Was A Specialty Job on The Production Line

This factor goes to whether the employee's work constituted "one small step in the sequence of steps" necessary to achieve the alleged employers "deliverable." *See Torres-Lopez*, 111 F.3d at 643; *see also Perez*, 2015 WL 3451268 at *12 (finding that this factor weighed in favor of finding that the defendant, DirecTV, was a joint employer of plaintiff electronics installers because installation is "part of the integrated unit of production"). This factor weighs in favor of joint employment because Mr. Edmonds' work—delivering packages—is a necessary component of Amazon's "deliverable" of selling and delivering products to its customers.

//

> b. *Whether Responsibility Under the Contracts Between A Labor Contractor and An Employer Pass from One Labor Contractor to Another Without Material Changes*

Courts applying this factor look to the degree of material changes, if any, which occurred with regard to worker responsibility in the alleged joint defendants' contracts if and when they pass from one contractor to another. *See Perez*, 2015 WL 3451268 at *13. This factor arises from *Rutherford Food Corp. v. McComb*, in which the employer frequently changed the subcontractor responsible for hiring employees, but the same terms applied to the same employees who performed the same jobs in the same location. *See* 331 U.S. 722, 730 (1947). Mr. Edmonds alleges that "each DSP was required to execute a standard Amazon agreement that required the DSP to hire drivers as W-2 employees." (FAC ¶ 54.) However, Mr. Edmonds does not allege that his DSP changed at any point throughout his period of employment as a delivery driver. Accordingly, this factor neither ways in favor or against joint employment.

> c. *Whether the Premises and Equipment of The Employer Are Used for The Work*

Mr. Edmonds alleges that Amazon requires drivers to arrive at and load and unload Amazon packages "from Amazon[-]owned fulfillment and warehouse centers for delivery." (FAC ¶ 48.) Therefore, this factor weighs in favor of finding joint employment.

> d. *Whether the Employees Had A Business Organization That Could or Did Shift as A Unit from One Worksite to Another*

This factor weighs against joint employment where the alleged joint employer of a significant number of employees performs services for companies other than the alleged

joint employer.  *See Moreau*, 356 F.3d at 951; *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1159-60 (C.D. Cal. 2003).  For example, an airline is not the joint employer of luggage handlers who shift as a unit from one carrier to another.  *See Moreau*, 356 F.3d at 951.  Here, Mr. Edmonds alleges that "most if not all of the DSPs exclusively service Amazon full time and have no other clients."  (FAC ¶ 52.)  Mr. Edmonds further alleges that at all times relevant to this lawsuit he delivered packages to Amazon customers in connection with their purchases from Amazon.com.  (*Id.* ¶ 30.)

Therefore, this factor weighs in favor of joint employment.

   e. *Whether the Work Was "Piece Work" And Not Work That Required Initiative, Judgment or Foresight*

Although Mr. Edmonds was paid a flat rate, and not a piece rate, this factor also "speaks to the limited value of qualities otherwise essential under independent contract work."  *Perez*, 2015 WL 3451268, at *15; *see also Rutherford*, 331 U.S. at 730.  Mr. Edmonds alleges that delivery drivers "are not required to have any special skills; the delivery of Amazon packages is the only service provided by drivers."  (FAC ¶ 57.)  Accordingly, this factor weighs in favor of joint employment.

   f. *Whether the Employee Had an Opportunity for Profit or Loss Depending Upon the Alleged Employee's Managerial Skill*

Mr. Edmonds alleges that he was paid a flat rate.  (*Id.* ¶ 80.)  There is no indication at this stage that Mr. Edmonds' compensation was dependent on his managerial skill.  Therefore, this factor weighs in favor of joint employment.

//

//

*g. Whether There Was Permanence in The Working Relationship*

Permanence in the working relationship between the contracting company and the laborer suggests joint employment. *See Torres-Lopez*, 111 F.3d at 644. Mr. Edmonds delivered packages for Amazon through a DSP from June 2018 through July 2019. (FAC ¶ 21.) Mr. Edmonds does not allege that his DSP changed during his time delivering Amazon packages, or that if it did, his work delivering Amazon packages did not continue. Therefore, this factor weighs in favor of joint employment.

*h. Whether the Service Rendered Is an Integral Part of The Alleged Employer's Business.*

Mr. Edmonds alleges that Amazon is the largest digital retailer in the United States and handles roughly 1.2 billion packages per year. (*See id.* ¶ 1.) This allegation raises the plausible inference that the service Mr. Edmonds provided for his DSP—delivering packages—is integral to Amazon's business. Therefore, this factor weighs in favor of finding joint employment.

3. Summary of *Bonnette* and *Torres-Lopez* Analysis

In sum, the court finds that Mr. Edmonds alleges sufficient facts to create a plausible inference that Amazon was Mr. Edmonds' joint employer during his time as a delivery driver. At the motion to dismiss stage, a plaintiff need only allege facts demonstrating some of the *Bonnette* or *Torres-Lopez* factors to survive. *See, e.g.*, *Johnson*, 141 F. Supp. 3d at 990; *Guitierrez*, 2014 WL 5487793, at *5–6. Moreover, in the Ninth Circuit, "the concept of joint employment should be defined expansively under the FLSA." *Chao*, 346 F.3d at 917 (9th Cir.2003) (*quoting Torres-Lopez*, 111 F.3d

at 639).  Accepting Mr. Edmonds' well-pleaded allegations as true, several *Bonnette* and *Torres-Lopez* factors weigh in favor of a reasonable inference that Amazon was Mr. Edmonds' joint employer.

       4.      <u>Whether Failure to Identify Mr. Edmonds' DSP Dooms Mr. Edmonds' Claim at the Pleading Stage</u>

Apart from the *Bonnette* and *Torres-Lopez* factors, Amazon argues that Mr. Edmonds fails to state a claim against Amazon as an "employer" under the FLSA because Mr. Edmonds fails to identify his direct employer—the DSP that hired him.  (*See* 2d MTD at 10.)  Neither Mr. Edmonds nor Amazon cites controlling Ninth Circuit authority regarding whether pleading the identity of a plaintiff's direct employer is necessary to sufficiently state a FLSA claim against a joint employer.  (*See generally* 2d MTD; Resp.; Reply (Dkt. # 36).)

In support of its argument, Amazon relies on *Johnson* for the proposition that "a plaintiff seeking to hold multiple entities liable as joint employers must plead specific facts that explain how the defendants are related and how the conduct underlying the claims is attributable to each defendant."  141 F. Supp. 3d at 990 (citing *Freeney v. Bank of Am. Corp.*, No. CV 15–02376 MMM (PJWx), 2015 WL 4366439, at *18 (C.D. Cal. July 16, 2015); (*see also* 2d MTD at 10.)  However, *Johnson* stands only for the principle that when a plaintiff names several defendants in a complaint, the complaint must follow Rule 8's pleading requirements with respect to each defendant.  In *Johnson*, the plaintiff named as defendants several different entities and alleged that they were all joint employers.  *See Johnson*, F. Supp. 3d at 979-980.  Naturally, to survive a motion to

dismiss, the plaintiff was required to allege facts sufficient to allow the court to find, by application of the *Bonnette* and *Torres-Lopez* factors, that each of those separate entities met the test for joint employers under the FLSA. Ultimately, after applying those factors, the *Johnson* court granted in part the motion to dismiss because the plaintiff's operative complaint did not adequately allege that any of the defendants at issue functioned as joint employers of the plaintiffs. *See id.* Here, in contrast, Mr. Edmonds names only Amazon, not the DSPs, as Defendants. (*See* FAC ¶¶ 31-39.) Therefore, *Johnson* is inapposite. Here, Mr. Edmonds need only allege facts sufficient to state a claim against Amazon.

A number of Amazon's other cited authorities are similarly based on pleading deficiencies that are not present here. Amazon relies on *Cavallaro v. UMass Mem'l Healthcare, Inc.*, in which a First Circuit panel stated that "some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible." 678 F.3d 1, 9 (1st Cir. 2012). That opinion affirmed a district court order granting the defendants' motion for judgment on the pleadings. *See id.* The district court applied the economic reality test and determined that the complaint at issue did "not contain a single factual allegation connecting plaintiffs with any of the corporate defendants" and that the plaintiffs failed to allege "when they began working, what position they hold . . . which defendants supervise their daily work schedules . . . the location at which they work, what they do at work, or what tasks they perform." *See Cavallaro v. UMass Mem'l Health Care Inc.*, No. CIV.A. 09-40152-FDS, 2011 WL 2295023, at *4 (D. Mass. June 8, 2011), *vacated sub nom. Cavallaro*, 678 F.3d 1.

//

1 Similarly, *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.* involved a complaint that failed to allege that the plaintiffs were scheduled to work forty hours in a week, the fundamental component of a FLSA overtime claim. 723 F.3d 192, 200-01 (2d Cir. 2013); *see also Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 563 (E.D. Pa. 2011) (granting the defendants' motion to dismiss where the plaintiffs alleged that up to 218 separate entities were all "employers" under the FLSA, but failed to allege "to which of these 86 entities they reported each day; from whom they received their paycheck; information about who, specifically, set their rate of pay and other conditions of their employment; or who directly supervised their employment"). Mr. Edmonds' complaint does not share these deficiencies.

Amazon further relies on *Gibbs v. MLK Express Servs., LLC*, a case with similar facts to this case, in which the Middle District of Florida adopted in part a magistrate judge's report and recommendation declining to certify the plaintiffs' proposed nationwide collective because the evidence showed "broad discrepancies in how DSPs pay DAs, which weighs against a finding of Amazon's common policy violating the FLSA." No. 218CV434FTM38MRM, 2019 WL 2635746, at *7 (M.D. Fla. June 27, 2019). However, the specific order on which Amazon relies addressed collective action certification, not a motion to dismiss. *See id.* Moreover, the district court in the same case had previously denied Amazon's motion to dismiss, finding that "the fact that [the p]laintiffs have not identified the nationwide delivery companies does not bar their collective claims" at the pleading stage. *See id.* at *4.

//

1    The above authorities do not persuade the court that identification of Mr.
2  Edmonds' DSP is necessary to survive Amazon's motion to dismiss provided that Mr.
3  Edmonds alleges facts sufficient to plead his FLSA claim against Amazon.  As discussed
4  above, Mr. Edmonds adequately alleges that Amazon was his direct employer, that he
5  worked over forty hours a week, and that he was not compensated as the FLSA requires
6  for that overtime work.  *See supra* § II.B.  Therefore, Mr. Edmonds' omission of his
7  DSP's identity is not grounds to dismiss his amended complaint under Rule 12(b)(6).

8        5.   Sufficiency of Mr. Edmonds' Allegations Against Amazon

9    Amazon also argues that Mr. Edmonds' complaint should be dismissed for the
10 distinct reason that Mr. Edmonds pleads no facts to infer "that Amazon set Plaintiff's pay
11 or directed the DSP who directly employed Plaintiff to pay DAs in any particular
12 manner." (*See* 2d MTD at 15.)  Therefore, Amazon contends, Plaintiff fails to state a
13 claim against Amazon for failure to pay for Mr. Edmonds' overtime hours.  (*See id.*)
14 However, Amazon neglects to acknowledge FLSA regulations and case authority
15 providing that joint employers are jointly and severally liable for FLSA violations.  *See*
16 29 C.F.R. § 791.2(f); *Chao*, 346 F.3d at 91; *Boucher*; 572 F.3d at 1094.

17    Amazon's argument also conflates the standards for certification of a collective
18 action with Mr. Edmonds' Rule 8 pleading requirements.  Different pay practices among
19 DSPs may prevent certification of a collective action under some circumstances.  *See*
20 *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018) (noting that a
21 collective action may only be maintained "to the extent party plaintiffs are alike in ways
22 that matter to the disposition of their FLSA claims").  However, that analysis is

premature and inapplicable at the motion to dismiss stage.  Here, as set forth above, Mr. Edmonds pleads sufficient facts to plausibly infer that Amazon is Mr. Edmonds' joint employer and that Mr. Edmonds was not paid for his overtime work in violation of the FLSA.  That is enough for Mr. Edmonds to state a claim against Amazon for FLSA overtime violations.  Whether Mr. Edmonds must ultimately submit evidence that identifies the DSP that directly employed Mr. Edmonds or other delivery drivers in order to achieve certification or succeed on the merits are questions for another day.

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES Amazon's motion to dismiss (Dkt. # 26); STRIKES Amazon's first motion to dismiss (Dkt. # 21); and DIRECTS the Clerk to remove Amazon's first motion to dismiss from the court's calendar.

Dated this 15th day of April, 2020.

JAMES L. ROBART
United States District Judge