THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRADY EDMONDS, on behalf of himself
and those similarly situated,

                               Plaintiff,

    v.

AMAZON.COM, INC., a Foreign for Profit
Corporation; AMAZON LOGISTICS, INC.,
a Foreign for Profit Corporation;
AMAZON.COM SERVICES, INC., a
Foreign for Profit Corporation;

                             Defendants.

No. 2:19-cv-01613-JLR

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S PREDISCOVERY
MOTION FOR ISSUANCE OF
NOTICE TO SIMILARLY SITUATED
INDIVIDUALS UNDER 29 U.S.C.
§ 216(b)

NOTED FOR: MAY 15, 2020

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE -
Case No. 2:19-cv-01613-JLR

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...............................................................................1

II.   PRIOR AND PENDING LITIGATION ..................................................................3

III.  FACTUAL BACKGROUND ...................................................................................5

IV.   ARGUMENT ...........................................................................................................7

    A.   The Court Should Deny Conditional Certification..........................................7

        1.   Conditional Certification Would Unnecessarily Burden The Federal
            Judicial System – The Exact Opposite Of What The Supreme Court
            Intended In *Hoffman-LaRoche v. Sperling* ...............................................7

            a.   Nationwide Conditional Certification Is Not An Efficient Way To
                Adjudicate The Claims In This Case.................................................7

            b.   Amazon Cannot Identify Putative Collective Members....................9

        2.   The Putative Members Of The Proposed Collective Are Not Similarly
            Situated ...................................................................................................11

            a.   Plaintiff Fails To Establish A Common, Unlawful Pay Policy Or
                Practice ...........................................................................................12

            b.   Plaintiff Fails To Provide Sufficient Evidence To Demonstrate That
                Putative Collective Members Are Similarly Situated Nationwide.... 16

        3.   Individualized Threshold Inquiries Also Preclude Conditional
            Certification ............................................................................................ 17

    B.   Alternatively, If The Court Certifies A Collective Action, It Should Limit
        It To DAs Who Worked For DSPs About Whom There Is Evidence........... 19

    C.   Plaintiff's Proposed Notice Is Improper......................................................... 19

        1.   Plaintiff's Proposed Notice Fails To Fully Apprise Putative
            Collective Members Of The Ramifications Of Joining The Lawsuit...... 20

        2.   Plaintiff's Proposed Notice Appears To Give Judicial Endorsement ..... 20

        3.   Plaintiff's Proposed Notice Is One-Sided.............................................. 21

        4.   Plaintiff's Proposed Modes Of Delivery Of Notice Are
            Improper And Excessive ........................................................................ 21

        5.   Plaintiff's Request For A Reminder Notice Is Improper........................ 22

        6.   A Third-Party Administrator Should Administer Any Notice ................ 22

        7.   Plaintiff's Proposed Notice Is Otherwise Improper .............................. 23

V.    CONCLUSION ...................................................................................................... 24

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - i
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Anderson v. Minacs Grp. (USA) Inc.*,

5
No. 16-13942, 2017 WL 1856276 (E.D. Mich. May 9, 2017) ........................................... 22

6
*Apodaca v. Costco Wholesale Corp.*,
No. 12-5664, 2013 WL 12172178 (C.D. Cal. June 26, 2013) ........................................... 17

7

8
*Bakhtiar v. Info. Res., Inc.*,
No. 17-4559, 2018 WL 3585057 (N.D. Cal. July 26, 2018) ............................................. 22

9
*Bazzell v. Body Contour Ctrs., LLC*,

10
No. 16-0202JLR, 2016 WL 3655274 (W.D. Wash. July 8, 2016) ............................*passim*

11
*Benedict v. Hewlett-Packard Co.*,
No. 13-0119, 2014 WL 587135 (N.D. Cal. Feb. 13, 2014) ............................................... 20

12
*Benion v. Lecom, Inc.*,

13
No. 15-14367, 2016 WL 2801562 (E.D. Mich. May 13, 2016) ........................................ 16

14
*Bigger v. Facebook, Inc.*,

15
947 F.3d 1043 (7th Cir. 2020) ........................................................................ 8, 9, 19

16
*Bollinger v. Residential Capital, LLC*,
761 F. Supp. 2d 1114 (W.D. Wash. 2011) ..................................................... 20, 21

17
*Bonilla v. Las Vegas Cigar Co.*,

18
61 F. Supp. 2d 1129 (D. Nev. 1999) .............................................................. 11

19
*Bouthner v. Cleveland Constr., Inc.*,

20
No. 11-0244, 2012 WL 738578 (D. Md. Mar. 5, 2012) ............................................. 17, 18

21
*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ...................................................................... 11, 14

22

23
*Castle v. Wells Fargo Fin., Inc.*,
No. 06-4347, 2008 WL 495705 (N.D. Cal. Feb. 20, 2008) .............................................. 13

24
*Chalker v. Burlington Coat Factory of Fla.*,

25
LLC, No. 12-2755, 2013 WL 5954783 (M.D. Fla. Nov. 7, 2013) ............................... 12, 17

26
*Champion v. Amazon.com*,
No. 18-5222 (N.D. Cal.) ................................................................................ 18

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - ii
Case No. 2:19-cv-01613-JLR

*Chetwood v. T-Mobile USA, Inc.*,
  No. 19-458-RSL, 2020 WL 1689730 (W.D. Wash. Apr. 7, 2020) .............................. 20, 22

*Colson v. Avnet, Inc.*,
  687 F. Supp. 2d 914 (D. Ariz. 2010) ............................................................................. 11, 17

*Daniels v. Aeropostale W., Inc.*,
  No. 12–5755, 2013 WL 1758891 (N.D. Cal. Apr. 24, 2013)............................................ 20

*Dean v. W. Aviation, LLC*,
  No. 17-62282, 2018 WL 1083497 (S.D. Fla. Feb. 28, 2018)............................................ 23

*Douglas v. Xerox Bus. Servs. LLC*,
  No. 12-1798, 2015 WL 12930486 (W.D. Wash. Feb. 9, 2015) ........................................ 16

*Edwards v. Multiband Corp.*,
  No. 10-2826, 2011 WL 117232 (D. Minn. Jan. 13, 2011) ................................................ 16

*Fenn v. Hewlett-Packard Co.*,
  No. 11-0244, 2011 WL 6150642 (D. Idaho Dec. 12, 2011)............................................. 19

*Fernandez v. Bank of Am.*,
  No. 17-6104, 2019 WL 3059150 (C.D. Cal. Mar. 8, 2019) ............................................. 14

*Fichtner v. Am. Family Mut. Ins. Co.*,
  No. 02-6284, 2004 WL 3106753 (D. Or. Mar. 1, 2004) .................................................. 19

*Gibbs v. MLK Express Services, LLC*,
  No. 18-0434, 2019 WL 2635746 (M.D. Fla. June 27, 2019) ..................................... *passim*

*Gibbs v. MLK Express Servs., LLC*,
  No. 18-0434, 2019 WL 1980123 (M.D. Fla. Mar. 28, 2019)..................................... *passim*

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ........................................................................................................ 7, 9

*In re JPMorgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) ............................................................................................. 9

*Lewis v. Wells Fargo & Co.*,
  669 F. Supp. 2d 1124 (N.D. Cal. 2009)...................................................................... 22, 23

*Lima v. Int'l Catastrophe Sols., Inc.*,
  493 F. Supp. 2d 793 (E.D. La. 2007) ............................................................................... 16

*Martin v. Sprint/United Mgmt. Co.*,
  No. 15-5237, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)................................................... 14

K&L GATES LLP
925 FOURTH AVENUE SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Misra v. Decision One Mortg. Co.*,
  673 F. Supp. 2d 987 (C.D. Cal. 2008) ........................................................ 11, 12

*Morden v. T-Mobile USA, Inc.*,
  No. 05-2112-RSM, 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006) ............................ 23

*Ortiz v. Amazon.com, Inc.*,
  No. 17-2-25002-3 JLG (Super. Ct. King County) ................................................ 8

*Russell v. Wells Fargo & Co.*,
  No. 07-3993, 2008 WL 4104212 (N.D. Cal. Sept. 3, 2008) .................................... 21, 23

*Saleh v. Valbin Corp.*,
  297 F. Supp. 3d 1025, 1037 (N.D. Cal. 2017) .................................................. 24

*Schiller v. Rite of Passage, Inc.*,
  No. 13-0576, 2014 WL 644565 (D. Ariz. Feb. 19, 2014) ........................................ 20

*Shaw v. Wizards of Coast, LLC*,
  No. 16-1924, 2018 WL 276966 (N.D. Cal. Jan. 3, 2018) .................................... 11, 12, 13

*Slaughter v. Caidan Mgmt. Co.*,
  317 F. Supp. 3d 981, 994 (N.D. Ill. 2018) .................................................... 22

*Smith v. Cable Wiring Specialist, Inc.*,
  No. 14-0277, 2014 WL 4795160 (M.D. Fla. Sept. 25, 2014) ...................................... 22

*Sullivan-Blake v. FedEx Ground Package Sys., Inc.*,
  No. 18-1698, 2019 WL 4750141 (W.D. Pa. Sept. 30, 2019) ...................................... 15

*Tonsmeire v. Am S. Bank*,
  No. 12-288, 2013 WL 618138 (D. Idaho Feb. 19, 2013) ........................................ 7, 8

*United States v. Rylander*,
  460 U.S. 752 (1983) ........................................................................ 11

*Velasquez v. HSBC Fin. Corp.*,
  266 F.R.D. 424 (N.D. Cal. 2010) .......................................................... 13, 17

*Villarreal v. Caremark, LLC*,
  66 F. Supp. 3d 1184, 1196 (D. Ariz. 2014) *abrogated on other grounds by*
  *Campbell*, 903 F.3d 1090 (9th Cir. 2018) .................................................... 22

*Wu v. Amazon.com, Inc.*,
  No. 17-2759 (E.D.N.Y.) .................................................................... 18, 19

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - iv
Case No. 2:19-cv-01613-JLR

*Xavier v. Belfor USA Grp., Inc.*,
 585 F. Supp. 2d 873 (E.D. La. 2008) .......................................................................... 14, 15

*Ziglar v. Express Messenger Sys. Inc.*,
 No. 16-02726, 2017 WL 6539020 (D. Ariz. Aug. 31, 2017) *vacated and
 remanded by* 739 F. App'x 444 (9th Cir. 2018) ................................................................. 16

**Statutes**

28 U.S.C. § 1391(b)......................................................................................................................... 2

29 U.S.C § 216(b)...................................................................................................................*passim*

Fair Labor Standards Act ("FLSA") ..................................................................................*passim*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - v
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# I.   PRELIMINARY STATEMENT

Plaintiff and his counsel hope that the second time is the charm.  They seek here conditional certification of a nationwide collective action of delivery drivers after a sister federal court rejected the same motion in a nearly identical case just last year.  But Plaintiff's Prediscovery Motion for Issuance of Notice to Similarly Situated Individuals Under 29 U.S.C § 216(b) (Dkt. 40) ("Plaintiff's Motion") suffers from the same flaws that led to the denial of certification in *Gibbs v. MLK Express Services, LLC*, No. 18-0434, 2019 WL 2635746 (M.D. Fla. June 27, 2019).  Plaintiff's evidence, which is materially the same as in *Gibbs*, still does not demonstrate that delivery drivers ("Delivery Associates" or "DAs") who delivered to Amazon customers were similarly situated through a common unlawful policy to underpay them.

Here too the Court should deny Plaintiff's Motion.  Conditional certification would create a procedural morass that contravenes the primary purpose of the collective action mechanism: judicial efficiency.  Putting aside the inefficiency of allowing the same Plaintiff's counsel to get a "do over" until they find a judge who rules their way, certification would conflict with and undermine the numerous "day rate" cases by DAs against their employers ("Delivery Services Providers or "DSPs") and/or Amazon in other jurisdictions.  These cases are pending, have been resolved following litigation or arbitration, or are in pre-litigation discussions between attorneys for the DAs and the DSPs and/or Amazon.  Other DSPs have been investigated by the United States Department of Labor ("DOL") and either been exonerated or agreed to settlements.  While Plaintiff's counsel carve out their own Washington state court case, they make no similar concession to the many DAs already represented by other counsel—counsel who actually have invested time and effort into investigating their actual and threatened claims.[1]

Plaintiff and his counsel are trying to leapfrog the many other cases and counsel already involved without determining if and where any new claims might actually be viable under the Fair Labor Standards Act ("FLSA") (let alone Fed. R. Civ. P. 11).  The result sought by Plaintiff

---

[1]  Amazon by no means suggests that those claims have merit as against it, or against any particular DSP, but it is nonetheless addressing them already.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 1
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  would be an unwieldy, unmanageable and unascertainable nationwide collective that would be

2  nothing more than a collection of up to hundreds of mini-cases.  And, quite predictably, if this

3  case proceeds as a nationwide collective, it will create a feeding frenzy where the other

4  plaintiffs' counsel who are representing DAs around the country will flood the courts with their

5  own claims to avoid getting bumped behind Plaintiff and his counsel in this case.

6    Plaintiff's decision to bypass the DSPs to sue only Defendants Amazon.com, Inc.,

7  Amazon Logistics, Inc., and Amazon.com Services LLC (formerly Amazon.com Services, Inc.)

8  (collectively, "Amazon") is another fatal flaw in the efficient and feasible management of his

9  collective claims.  The DSPs, not Amazon, possess the information about their pay practices.

10  Plaintiff cannot identify those DSPs that paid a sum certain for all hours worked in a day (or a

11  "day rate") without overtime and, if so, when and to whom.  Nor can Amazon.  Amazon does not

12  have records showing all of the DSPs that may have paid their DAs under a day rate method,

13  when that method was used, and whether they paid overtime.  The parties would have to take

14  extensive discovery of DSPs and their subcontractors, many of whom no longer have or never

15  had contractual relationships with Amazon, just to develop a list of putative collective members

16  to whom Plaintiff seeks to send notice.  Not only does this fact demonstrate that there is no

17  common, unlawful pay policy among all of Amazon's DSPs, but also it shows the inefficiencies

18  and unfairness of proceeding with a nationwide case that Plaintiff seeks.  Amazon cannot

19  identify which DAs of which DSPs even would belong on a class list.  The Court should not

20  enter an Order with which Amazon could not possibly comply.

21    This collective action is nothing but an end-run to avoid having to sue DSPs in their

22  home jurisdictions.  Plaintiff would only be able to lay venue over a DSP where the DSP resides

23  or where the allegedly unlawful acts or omissions occurred.  *See* 28 U.S.C. § 1391(b).  Ironically,

24  however, the only jurisdiction in which that could not occur for any DSP is Washington State

25  because Plaintiff carved out any Washington-based DAs from this case.  Because this Court

26  would not be the proper venue for any such DSPs, Plaintiff can sue only Amazon here, where it

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 2
Case No. 2:19-cv-01613-JLR

1   resides.  But that procedural maneuver should fail.

2   　　　In the end, Plaintiff throws all of his eggs in the joint employer basket.  But if being an

3   employer were enough, then courts would certify just about any case because it is the rare case

4   where the employer is not known—and conceded.  There must be more.  And here Plaintiff

5   cannot show that putative collective action members are connected by a common unlawful pay

6   policy because being a joint employer, without more, is not unlawful.  Plaintiff cannot establish

7   that the putative members are similarly situated as to issues that matter to their FLSA claims

8   because Plaintiff's Motion and the meager evidence that accompanies it shows that hundreds of

9   DSPs—not Amazon—paid the DAs and established myriad wage payment practices and other

10  individualized terms and conditions of employment.  The individual threshold issues necessary

11  to adjudicate claims of the collective members is another reason to deny Plaintiff's Motion.

12  　　　Amazon respectfully requests that the Court deny Plaintiff's Motion to avoid a

13  profoundly inefficient and improper collective action.

14  　　　　　**II.   PRIOR AND PENDING LITIGATION**

15  　　　In *Gibbs*, the court denied certification of a nationwide collective, holding that the

16  plaintiffs had failed to demonstrate that Amazon exercised control over the same alleged day rate

17  policies of which Plaintiff complains here.  *Gibbs*, 2019 WL 2635746, at *5, *7 ("*Gibbs* Order")

18  (adopting Report and Recommendation ("R&R") in relevant part).  The *Gibbs* plaintiffs sought

19  to certify a collective of "All Amazon local delivery drivers or driver associates who were solely

20  paid a purported 'day rate' and who worked for any company that contracted with Amazon.com

21  to provide local delivery services at any location within the United States . . . ."  *See id.* at *2.

22  The plaintiffs submitted 11 declarations in support of their motion, as well as numerous DSPs'

23  job postings for DA jobs throughout the United States which "describe[d] a DA's pay rate

24  potential."  *See Gibbs v. MLK Express Servs., LLC*, No. 18-0434, 2019 WL 1980123, at *9-10

25  (M.D. Fla. Mar. 28, 2019) ("*Gibbs* R&R") (citing Dkts. 40-31, 83-1).  The job postings

26  contradicted the plaintiffs' assertion that DAs were uniformly paid a flat rate.  In fact, they

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 3
Case No. 2:19-cv-01613-JLR

1   showed that DSPs utilize different payment methods, including hourly rates and overtime.  *See*

2   *Id.* at *12 n.11 ("In fact, in numerous job postings filed by Plaintiff, it is not clear how DAs are

3   paid.  For example, some postings state that DAs are paid a day rate, while also stating DAs are

4   paid an hourly rate.").  The Magistrate Judge found that certification was not proper, because

5   "[w]hile Plaintiffs have established that DAs share similar duties and that many are paid a day

6   rate, this case is complicated by the fact that Amazon contracts with individual DSPs nationwide

7   who in turn hire DAs."  *Id.* at *10.

8          "Plaintiffs have made only vague allegations regarding 'Amazon's common illegal

9   payment scheme[,]" according to the Magistrate Judge, and therefore they failed to establish a

10  common, unlawful pay practice.  *Id.* at *14.  In adopting the R&R, the District Judge observed

11  that while the plaintiffs argued that Amazon had implemented an illegal payment scheme, "[t]he

12  evidence shows the opposite: DSPs, not Amazon, control DA pay and use many different pay

13  schemes that Amazon cannot control."  *See Gibbs* Order, 2019 WL 2635746, at *6.

14         The *Gibbs* court held that the only appropriate collective based on the evidence was one

15  in which all of the DAs were employed and paid by the same DSP—***which was a named***

16  ***defendant in the case***.  *Id.* at *3-4.  That case is pending as a local, not nationwide, collective

17  action against the DSP and Amazon.  As Plaintiff asserts in his Motion, 16 other cases—not

18  including *Gibbs*—against DSPs and Amazon "alleging similar violations of the FLSA's overtime

19  provision" have been filed.  Plaintiff's Motion, at 13, n.7.  What Plaintiff does not state,

20  however, is that many day rate cases have already settled or have a settlement pending.

21  Declaration of Christopher K. Ramsey ("Ramsey Decl."), ¶ 2, filed with this Opposition.

22  Further, many DSPs and Amazon have entered into confidential pre-litigation discussions with

23  counsel for numerous DAs who have threatened collective action claims alleging that they were

24  paid a day rate without overtime.  *Id*. at ¶ 3.  Also, without any judicial intervention whatsoever,

25  the DOL investigated numerous DSPs and former DSPs for alleged wage violations and either

26  found no violations or entered settlements and releases that resulted in payments to the DAs of

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 4
Case No. 2:19-cv-01613-JLR

these DSPs.  *Id.* at ¶ 4.  Other putative members of the collective, including at least two Opt-In Plaintiffs, are subject to arbitration agreements with respect to their claims.  *Id.* at ¶¶ 5-6.

Accordingly, the interests of affected DAs are already protected, yet Plaintiff and his counsel seek to swallow up their claims.  Amazon raises these points not to suggest that Plaintiff's claims here have any merit—they do not—but rather to underscore that Plaintiff's proposed nationwide collective (minus Washington) is an inefficient and ineffective way of resolving these issues, which, to this point, have proceeded efficiently through appropriately localized classes, collectives, individual actions, arbitrations, and negotiations.

### III.    FACTUAL BACKGROUND

Plaintiff's description of the factual background is incomplete, misleading and frequently unsupported.  It is true that Amazon contracts with local and regional delivery companies (or DSPs) to make deliveries to customers of Amazon and third-party sellers who offer products on Amazon's online marketplace and that the DSPs directly employ Delivery Associates.  From that alone, Plaintiff attempts to tie together a putative nationwide collective almost entirely based on the argument that Amazon was a joint employer of all DSPs' respective DAs all over the country.  Putting aside the fact that Plaintiff's underlying premise is wrong, Plaintiff cites not a stitch of evidence that Amazon—or anyone else for that matter—imposed an unlawful day rate pay practice across the entire nation.  Rather, in his Complaint, Plaintiff uses the passive voice in alleging that DAs "were only paid a flat rate" (Dkt. 24, at ¶ 80) because he cannot truthfully allege that Amazon paid the DAs or set the payment method.  In fact, Plaintiff acknowledges that "DSPs . . . make regularly scheduled payroll to the [DAs]."  *Id.* at ¶ 53.[2]

Plaintiff lacks evidence of a common unlawful policy to pay DAs through daily flat rates.  So Plaintiff addresses everything but the pay practices at issue in this case.  For example, Plaintiff claims that Exhibits U and V show that Amazon employs managers responsible for,

---

[2]  In addition, Plaintiff's seven cookie-cutter declarations—submitted by DAs who worked in only six locations and four states—each state that "payroll ran through the DSP[.]"  *See* Dkt. 41-17, Ex. Q, and 45-1, ¶ 10 or 11 of the Brown, Coleman, Danielson, Edmonds, Garcia, Gordon and Carnegie declarations.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 5
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   *inter alia*, ensuring DAs' success, measuring and evaluating DSP performance, and optimizing

2   delivery route assignment.  *See* Plaintiff's Motion at 8, 9-10, and Exs. U and V.  But how does

3   that establish a uniformly unlawful pay policy that can undergird a collective action?  It does not.

4   The same is true for Exhibit I, a program brochure that Plaintiff claims is evidence that Amazon

5   "provides all necessary training materials, uniforms and tools" (*see* Plaintiff's Motion at 5).

6         Much of Plaintiff's remaining evidence in this matter that purports to bear on Amazon's

7   level of control over DAs was rejected in *Gibbs*.  For example, the *Gibbs* plaintiffs submitted the

8   same documents as Plaintiff's Exhibit D (*Gibbs* Ex. D at Dkt. 40-04); Exhibit F (*Gibbs* Ex. F);

9   Exhibit I (*Gibbs* Ex. O); Exhibit J (*Gibbs* Ex. Q); Exhibit L (*Gibbs* Ex. P); Exhibit N (*Gibbs* Ex.

10  R); and Exhibit R (*Gibbs* Ex. CC).  Other documents were substantially similar.  *Compare*

11  Exhibit E *with Gibbs* Exhibit E (press releases regarding sales); Exhibit K *with Gibbs* Exhibit

12  DD (Learning Coordinator, Driver Trainer, and On Road Driver Assistant job postings with

13  responsibilities including coordinating and assisting with training).  As the *Gibbs* court found,

14  "[w]hile Plaintiffs have established that DAs share similar duties and that many are paid a day

15  rate," the failure to tie any illegal payment scheme to Amazon's status as an alleged joint

16  employer doomed their bid for certification.  *See Gibbs* R&R, 2019 WL 1980123, at *10.  The

17  same failure remains here.  Whether employees have a common employer (primary or joint) and

18  perform many similar job duties is not the basis for certification.  While proof that the employer

19  implemented an unlawful pay practice might be common proof, there is no such proof here.

20        In addition, Plaintiff fails to acknowledge that DSPs contract with Amazon under a

21  variety of arrangements.  Some operate under individually negotiated agreements with Amazon

22  that include no requirement that DSPs pay their DAs in any particular manner and those DSPs

23  retain discretion to set payment practices, while others operate under agreements that require

24  DSPs to pay DAs an hourly rate and overtime as required by law.  Declaration of William M.

25  Seliger ("Seliger Decl."), ¶¶ 2-4, attached to Ramsey Decl., as Ex. 3.  In some instances DSPs

26  have operated under both types of arrangements.  *Id.* at ¶ 5.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 6
Case No. 2:19-cv-01613-JLR

## IV.   ARGUMENT

**A.   The Court Should Deny Conditional Certification.**

    1.   <u>Conditional Certification Would Unnecessarily Burden The Federal Judicial System – The Exact Opposite Of What The Supreme Court Intended In *Hoffman-LaRoche v. Sperling*.</u>

        a.   <u>Nationwide Conditional Certification Is Not An Efficient Way To Adjudicate The Claims In This Case.</u>

Certification of a nationwide collective here would not serve the primary purpose of the collective action mechanism: judicial efficiency. *See Bazzell v. Body Contour Ctrs., LLC*, No. 16-0202JLR, 2016 WL 3655274, at *4 (W.D. Wash. July 8, 2016) ("The FLSA's collective action procedure seeks *efficient adjudication* of similar claims . . . .") (emphasis added); *see also Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."). Certification here would burden this Court with potentially hundreds of mini-matters that otherwise could not be venued here. These mini-matters will drag in litigants from across the country (indeed, from everywhere but Washington) and involve DSPs with myriad practices and myriad sources of relevant information and/or documentation that make the collective sought unmanageable and inefficient.

The *Gibbs* court recognized that the differences between DAs employed by different DSPs rendered a nationwide collective inefficient and untenable. *Gibbs* Order, 2019 WL 2635746, at *6. Instead, the *Gibbs* court conditionally certified a local collective action involving a single DSP (over which it had personal jurisdiction and proper venue) whose pay practices were at the heart of the plaintiffs' claims. *Id.* at *3-4. Rather than accept that result—and limit new claims to employers about whom they had evidence of unlawful pay practices—Plaintiff's counsel seeks a more friendly reception here. But such serial litigation until Plaintiff's counsel can find a judge who will accept their arguments is hardly reflective of the type of judicial economy intended by FLSA Section 216(b). *Cf. Tonsmeire v. Am S. Bank*, No. 12-288,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 7
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

2013 WL 618138, at *1 (D. Idaho Feb. 19, 2013) ("The judicial system is not set up to allow parties to re-litigate their claims in another jurisdiction if the outcome in the first jurisdiction is not to their liking.").

Furthermore, it is not as if the group of employees sought to be represented here are in desperate need for their voices to be heard.  Some of Plaintiff's counsel continue to represent DAs in *Gibbs*.  Plaintiff's other counsel have brought a case against Amazon and another DSP on behalf of all DAs in Washington State.  *See Ortiz v. Amazon.com, Inc.*, No. 17-2-25002-3 JLG (Super. Ct. King County).  That case is set for mediation in June 2020.

Plaintiff himself identifies 16 other lawsuits around the country filed by different attorneys that he claims have similar allegations against DSPs and Amazon for purportedly failing to pay overtime to DAs.  Plaintiff's Motion at 13, n.7.  There are other day rate cases that are pending that Plaintiff does not identify, such as *Gibbs*.  Moreover, a number of day rates cases have already settled or have a settlement pending.  Ramsey Decl. at ¶ 2.  Each of the DAs who are putative members of collectives or classes in the other day rate cases would be encompassed within the nationwide collective sought by Plaintiff here.  Many other DAs' interests also are represented by other counsel who are in confidential pre-litigation discussions (subject to tolling agreements) with DSPs across the country and Amazon regarding potential day rate collective and class action claims.  *Id.* at ¶ 3.

In those threatened claims, moreover, the counsel for the DAs already have conducted some level of investigation and at least profess to have a good faith belief that they have a viable claim.  Ramsey Decl. at ¶ 3.  Here, by contrast, Plaintiff's counsel has no idea what they might find, but are hoping this Court will allow the issuance of notice so that they can drum up potential DAs from whom they might find a claim.  But a Section 216(b) collective action is not, and has never been intended, to be a tool for plaintiffs' lawyers to solicit potential clients without even knowing if the potential clients have a viable or cognizable claim—let alone to jump to the front of the line ahead of other litigants.  *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 8
Case No. 2:19-cv-01613-JLR

Cir. 2020) (finding notice should not "expand[] the litigation with additional plaintiffs" and warning that "notice giving, in certain circumstances, may become indistinguishable from the solicitation of claims—which is a process distinguishable in form and function from court intervention in the notice process for case management purposes") (internal quotations and citations omitted); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019) (determining that district court erred in ordering that notice be given to employees with binding arbitration agreements, based, in part, on "*Hoffman-La Roche*'s stern command that 'courts must be scrupulous to respect judicial neutrality' and may not use their discretion to facilitate the notice process 'merely [to] stir[] up litigation'") (quoting *Hoffman-La Roche*, 493 U.S. at 174).

Each of the matters described above are limited to local facilities and local DAs who are affected by local pay practices of their respective DSP employers, and that is where such cases belong.  Plaintiff's Motion threatens to squander the progress that the parties in the ongoing and threatened litigations have made towards resolution of their cases and set off an intramural battle between various plaintiffs' counsel seeking lead roles over the DAs they mutually seek to represent.  In addition, notice here would create mass confusion for those other represented parties (who would receive multiple notices), not to mention other DAs around the country who already have obtained relief for alleged improper pay through the DOL or other settlements.

There should be no mistake what Plaintiff's counsel seek to do here.  They want to use the imprimatur of this Court to search for clients even though counsel have no idea if the employers of their target collective paid a day rate, let alone one that is unlawful under the FLSA.  But the Supreme Court in *Hoffman-LaRoche* made clear that "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."  493 U.S. at 174.  The Court should not allow Plaintiff's counsel here to invoke the power of the Court to seek clients, especially without having undertaken a reasoned investigation as to whether those DAs even might have a claim.

      b.    <u>Amazon Cannot Identify Putative Collective Members.</u>

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 9
Case No. 2:19-cv-01613-JLR

1    Even if Plaintiff could somehow establish that his Motion comports with the principles

2 behind Section 216(b), certification here would be futile.  Amazon simply does not possess the

3 information and data necessary to identify collective members.  Declaration of Dina Baker

4 ("Baker Decl."), ¶ 3, attached to Ramsey Decl. as Ex. 4.  If the Court were to order Amazon to

5 prepare and produce a list of members of the nationwide collective as Plaintiff demands,

6 Amazon would not be able to do so.  Rather, the parties would have to take full blown discovery

7 from every current and former DSP outside of Washington State who employed DAs at any time

8 during the relevant period to determine (i) whether they ever used a day rate, (ii) when they used

9 a day rate, (iii) whether they paid overtime on the day rate, and (iv) which of the DSPs'

10 employees were paid a day rate without receiving overtime.[3]

11    Because Plaintiff has not named DSPs and many of them do not have ongoing contractual

12 relationships with Amazon, Plaintiff would have to issue potentially hundreds of subpoenas

13 requesting voluminous information about pay and timekeeping practices and records for the DAs

14 of the DSPs.  The parties would likely even require discovery from companies that subcontracted

15 with its DSPs with whom Amazon has never had a contractual relationship.  For example,

16 Named Plaintiff Edmonds was employed in Jacksonville, FL by a company called JSTC, LLC.

17 Affidavit of JSTC, LLC, ¶ 4, attached to Ramsey Decl., as Ex. 5.  Amazon has no contractual

18 relationship JSTC, LLC.  Baker Decl., ¶ 8.

19    After taking such discovery, the parties would then need to examine thousands of records

20 to determine if the DSP or subcontractor paid DAs on a day rate basis, which DAs of a DSP, if

21 any, worked overtime, whether the DSP paid overtime to those DAs and, if not, for what time

22 period.  Based on experience, this information often is not easily searchable or usable—often

23 schedules and timekeeping data are handwritten, not in a database that can be easily manipulated

24

_____

25 [3]  Amazon's wage audits of DSPs did not include all DSPs and were only snapshots in time.  Therefore, those audits
do not tell Amazon all of the DSPs that paid a day rate and when.  Baker Decl., ¶ 4.  In many situations, Amazon's
26 first awareness that a DSP may have paid on a day rate basis without paying overtime was when a lawsuit was filed
or threatened against the DSP and Amazon.  *Id.* at ¶ 6.  Moreover, even if Amazon has audit-related information, it
cannot vouch for its accuracy as these audits are not done by lawyers, they are not done pursuant to any subpoena
power, and they are not done with the rigor of a litigation proceeding.  *Id.* at ¶ 7.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 10
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

or managed.  Ramsey Decl., ¶ 9.  The process could take months or even years to complete even assuming that all DSPs can and will cooperate.  *Id.*  Due to the massive amount of information needed just to determine who is in Plaintiff's collective, proceeding on a nationwide collective basis (without DSPs) is inefficient and infeasible.  *Cf. United States v. Rylander*, 460 U.S. 752, 757 (1983) (a court "will not be blind to evidence that compliance [with an order] is now factually impossible").

2. <u>The Putative Members Of The Proposed Collective Are Not Similarly Situated.</u>

"In addressing a request for court-authorized notice of a collective action, a court must consider whether plaintiffs have demonstrated the existence of a definable class of plaintiffs who are 'similarly situated.'"  *Bazzell*, 2016 WL 3655274, at *4 (citation omitted).  "[I]n the collective action context, what matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims . . . ."  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1115 (9th Cir. 2018).  In other words, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."  *Id.* at 1117.

"Although the burden for certifying a FLSA lawsuit for collective action notification is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute."  *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925, 929-30 (D. Ariz. 2010) (also noting that conditional certification "is by no means automatic").  Indeed, the proponents of issuance of notice must show "that the plaintiff is similarly situated to the potential class."  *Bazzell*, 2016 WL 3655274, at *4 (quoting *Misra v. Decision One Mortg. Co.*, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008)).  This showing must demonstrate that there is a "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."  *Bonilla v. Las Vegas Cigar Co.,* 61 F. Supp. 2d 1129, 1138, n.6 (D. Nev. 1999) (quotations and citation omitted).  "[U]nsupported allegations of FLSA violations are not sufficient to meet the plaintiffs' burden at the first stage."  *Shaw v.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 11
Case No. 2:19-cv-01613-JLR

*Wizards of Coast, LLC*, No. 16-1924, 2018 WL 276966, at *3 (N.D. Cal. Jan. 3, 2018).

Here, the Court should deny conditional certification and decline to issue notice to the proposed collective, as Plaintiff's Motion does not establish that there was a common policy or practice of unlawfully paying DAs a day rate without overtime on a nationwide basis, and fails to present sufficient evidence that the putative members of Plaintiff's proposed collective are similarly situated on a nationwide scale.

a.      Plaintiff Fails To Establish A Common, Unlawful Pay Policy Or Practice.

Denial of certification is appropriate where, as here, no evidence has been submitted to show that the putative members of the proposed collective were "victims of a common policy or plan that violated the law." *Misra*, 673 F. Supp. 2d at 993; *see also Chalker v. Burlington Coat Factory of Fla.*, *LLC*, No. 12-2755, 2013 WL 5954783, at *1, *2 (M.D. Fla. Nov. 7, 2013) ("To show that the potential plaintiffs are similarly situated, the plaintiff must demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law") (quotation marks and citation omitted).  Here, disposition of Plaintiff's FLSA claims depends on the development of evidence demonstrating that DAs were subject to a common unlawful practice across the country and that Amazon could be liable to all such DAs no matter who their actual employer was, where they worked, and what control Amazon had over the terms of their employment.  Plaintiff has not articulated any alleged facts—or presented any evidence—to plausibly suggest that putative collective members are connected by a common unlawful policy of paying DAs a day rate on a nationwide basis, let alone that all DAs paid on a day rate basis have claims for unpaid overtime.

Plaintiff presents no *evidence* beyond the conclusory allegations in declarations suggesting that a common unlawful pay policy or practice existed, or that Amazon promulgated such a policy or practice.  In fact, the only available evidence suggests that DSPs retained discretion to set payment practices and that the only method of payment that Amazon required under certain agreements with DSPs was to pay on an hourly basis in compliance with applicable

1   laws.  *See* Seliger Decl., ¶¶ 3-4; Baker Decl., ¶ 5; Ramsey Decl, ¶¶ 7-8, Exs. 1, 2 (job postings

2   showing that DSPs advertised a variety of payment practices).

3        Taken as a whole, this evidence is basically the same as the evidence offered by the

4   *Gibbs* plaintiffs.  The *Gibbs* court denied nationwide certification because "the evidence did not

5   suggest Amazon had a common policy of dictating how DSPs pay the DAs" and "[t]he evidence

6   shows the opposite: DSPs, not Amazon, control DA pay and many use different pay schemes

7   that Amazon cannot control."  *See Gibbs* Order, 2019 WL 2635746, at *6.  There, the court

8   correctly reasoned that a common illegal policy is of heightened importance in evaluating the

9   propriety of certifying a collective action on a nationwide joint employer theory.  It stated:

10              A common policy is particularly relevant here because Gibbs alleges a nationwide
               joint employer theory, seeking to hold Amazon liable for overtime violations at an
11              unknown number of DSPs.  As Amazon notes, there must be some 'glue' that holds
               the case together, and a common Amazon policy leading to nationwide FLSA
12              violations would help bind the claims.  Yet the Court cannot find anything here
               sticking Amazon to individual DSP pay policies or overtime violations.
13

14   *Id.* at *6 (internal citation omitted).  Nothing is different here.

15        Similarly, district courts within the Ninth Circuit regularly deny certification for failure to

16   identify a company-wide policy to show that a proposed nationwide collective is similarly

17   situated.  *See, e.g.*, *Castle v. Wells Fargo Fin., Inc.*, No. 06-4347, 2008 WL 495705, at *5 (N.D.

18   Cal. Feb. 20, 2008) (denying certification where "plaintiffs have not identified any company-

19   wide policy or practice to deny overtime [in declarations from 24 putative class members who

20   worked in only 28 of 1,000 nationwide branches in 8 states] and thus have failed to show that the

21   various . . . employees are similarly situated for purposes of class certification" and "[a]t the

22   most, plaintiffs' evidence suggests differing 'policies' or practices depending on the branch or

23   the district, rather than on a nationwide basis."); *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424,

24   429 (N.D. Cal. 2010) (denying certification where plaintiffs were unable to show nationwide

25   collective was similarly situated because there was "not enough evidence of a companywide

26   policy" that required off-the-clock work); *Shaw,* 2018 WL 276966, at *6 (denying certification

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 13
Case No. 2:19-cv-01613-JLR

1    where plaintiffs failed to show a single, common policy or plan governing engagement and

2    compensation because they worked "under a number of unique employment and/or independent

3    contractor arrangements" which would require an individualized analysis of the circumstances

4    under which each of the approximately 3,850 class members "worked").

5         Moreover, this conclusion accords with the Ninth Circuit's opinion in *Campbell*, which

6    emphasized that the existence of a common unlawful policy is central to the "similarly situated"

7    analysis rather than evidence from discrete locations. *See Campbell*, 903 F.3d at 1120 (affirming

8    decertification of collective of police officers who alleged a department-wide policy of

9    discouraging the reporting of small increments of overtime; "[t]hat the policy is Department-

10   wide is essential to the viability of the collective action, as it is the sole justification advanced for

11   a Department-wide collective.  Yet the evidence in the record is simply not probative of an

12   unwritten overtime policy of that breadth."); *see also Fernandez v. Bank of Am.*, No. 17-6104,

13   2019 WL 3059150, at *2 (C.D. Cal. Mar. 8, 2019) (applying *Campbell*'s rationale at the

14   conditional certification stage; "the Ninth Circuit's construction of the term 'similarly situated'

15   [is] applicable equally to both steps of the collective certification process.").

16        Likewise, district courts beyond the Ninth Circuit have rejected certification of

17   nationwide collective actions where there have not been plausible allegations and/or sufficient

18   evidentiary submissions regarding a common unlawful pay policy by an alleged joint employer.

19   *See, e.g.*, *Martin v. Sprint/United Mgmt. Co.*, No. 15-5237, 2016 WL 30334, at *2, *8, *10

20   (S.D.N.Y. Jan. 4, 2016) ("Courts have been especially hesitant to grant conditional certification

21   of a vast class where structural considerations—such as . . . the presence of intermediary entities

22   between the company and the members of the putative collective—cast doubt on the claim that

23   uniform company policies governed workers across a sprawling geographic area."  Indeed, "[t]he

24   need for some tangible proof of a nationwide practice is particularly acute here, in light of the

25   obvious alternative explanation, to wit, that the relevant employment practices were authorized

26   by intermediaries[.]"); *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 879 (E.D. La. 2008)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 14
Case No. 2:19-cv-01613-JLR

1  (rejecting certification of a nationwide collective where plaintiffs' failed to establish that alleged

2  joint employer was responsible for implementing a common unlawful pay plan).

3      Furthermore, the sparse legal argument advanced by Plaintiff's Motion does nothing to

4  alter the conclusion that the proposed collective must be the victim of a common unlawful

5  policy.  While wholly ignoring *Gibbs*—which essentially is this case—Plaintiff largely relies on

6  *Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, No. 18-1698, 2019 WL 4750141 (W.D. Pa.

7  Sept. 30, 2019).  But even if *Sullivan-Blake* were correctly decided (which is arguable), it

8  dispositively differs from this case.  There, the court described an independent contractor

9  business model by FedEx, which had been besieged with litigation challenges that independent

10  contractor drivers had been misclassified and should have been deemed employees and entitled

11  to overtime wages.  *Id.* at *1.  Thereafter, FedEx adopted a model through which FedEx only

12  contracted with "independent corporations with vehicles, drivers, and other employed personnel,

13  that provide pickup and delivery services for FedEx."  *Id.*  In practice, though, at least as alleged

14  by the plaintiffs, there was no change in the relationship between FedEx and the drivers who

15  converted to independent corporations, and nothing about the job changed.  *Id.* at *2.  Based on

16  the evidence of this practice, which is not present here, the court granted the plaintiffs' motion

17  for certification.  *Id.* at *7.  Moreover, the plaintiffs' claims for unpaid overtime did not depend

18  upon the method of payment of wages by the independent corporation.  In this case, in contrast,

19  there was no similar practice to that alleged in *Sullivan-Blake*.  Plaintiff does not allege that DAs

20  had any relationship with Amazon before they were hired by a DSP and paid by the DSP

21  pursuant to whatever pay practice it implemented.  There is no common thread between DSPs or

22  DAs and Amazon.  And the fact that some might have paid a day rate is no more a common

23  policy than if some paid an hourly rate, which they do.  The questions are how each of those

24  DSPs administered their pay policies, whether they paid overtime, who worked overtime, if

25  anyone, when anyone might not have been paid overtime, and whether, in that particular DSP's

26  situation, Amazon was a joint employer of the DAs at issue.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 15
Case No. 2:19-cv-01613-JLR

1    The other cases cited in Plaintiff's Motion are no more persuasive.  *See, e.g., Douglas v.*

2    *Xerox Bus. Servs. LLC*, No. 12-1798, 2015 WL 12930486, at *1-2 (W.D. Wash. Feb. 9, 2015)

3    (granting certification where, unlike here, the direct employers were subsidiaries of the disputed

4    joint employer and the noticed individuals were paid under a common plan and could be found in

5    the disputed joint employer's records); *Benion v. Lecom, Inc.*, No. 15-14367, 2016 WL 2801562,

6    at *12 (E.D. Mich. May 13, 2016) (granting certification where, in contrast to this case, the

7    defendant was alleged to have direct control—including the ability to deduct money for incorrect

8    work or lost equipment—over the payment of plaintiffs' wages); *Lima v. Int'l Catastrophe Sols.,*

9    *Inc.*, 493 F. Supp. 2d 793, 797-99 (E.D. La. 2007) (granting collective certification in case

10   alleging independent contractor misclassification where the challenged pay practice, unlike here,

11   "was uniform throughout [its subcontractor] operation due to a centralized payroll and

12   management system"); *Edwards v. Multiband Corp.*, No. 10-2826, 2011 WL 117232, at *2-4 (D.

13   Minn. Jan. 13, 2011) (granting certification under a more lenient "colorable basis" standard that

14   found plaintiffs' unsupported allegations sufficient without consideration of opposition evidence

15   submitted at notice stage); *Ziglar v. Express Messenger Sys. Inc.*, No. 16-02726, 2017 WL

16   6539020 (D. Ariz. Aug. 31, 2017) (finding showing of common pay policy sufficient for

17   certification for purposes of an Arizona-only, not a nationwide collective action) *vacated and*

18   *remanded by* 739 F. App'x 444 (9th Cir. 2018).

19       Plaintiff's Motion does not adequately establish—either through plausible allegations or

20   probative evidence—that DAs were paid pursuant to a common unlawful policy or practice of

21   day rates without overtime that Plaintiff alleges binds the collective, let alone that Amazon is a

22   joint employer as to all DAs of all DSPs who may have had such a policy.

23       b.    Plaintiff Fails To Provide Sufficient Evidence To Demonstrate That
            Putative Collective Members Are Similarly Situated Nationwide.

24

25       Likewise, Plaintiff seeks certification of a nationwide collective action that would

26   encompass thousands of DAs employed by hundreds of DSPs throughout the country (except

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 16
Case No. 2:19-cv-01613-JLR

1   Washington) over a three-year period, but only offers evidence regarding six locations in four

2   states and spanning little over a year-and-a-half (June 2018 to November 2019).  *See* Dkts. 41,

3   Ex. Q, and 45-1.  Plaintiff's scant, localized evidence, which addresses only a handful of actual

4   employers (DSPs) in a handful of cities does not satisfy this standard in the context of a proposed

5   nationwide collective action.  *See, e.g.*, *Velasquez*, 266 F.R.D. at 430-31 (denying certification of

6   nationwide collective because "evidence from eleven former [employees] indicates that they may

7   have individual FLSA claims against Defendants" but "[t]here is not enough evidence of a

8   companywide policy" "such that the Court should authorize that notice be sent to approximately

9   10,000 former AEs around the country."); *Colson*, 687 F. Supp. 2d 914 (denying nationwide

10  collective certification where plaintiff submitted evidence bearing on only one location out of

11  more than 40 nationwide); *see also Apodaca v. Costco Wholesale Corp.*, No. 12-5664, 2013 WL

12  12172178, at *3-4 (C.D. Cal. June 26, 2013) (noting idiosyncratic practices of one Costco

13  location provided limited applicability to other locations included in the plaintiff's proposed

14  class).  Rather, Plaintiff's jumbled mélange of inadmissible and irrelevant articles, out-of-context

15  job postings and program brochures, and cookie cutter declarations full of conclusory allegations

16  cries out for the Court to deny certification.

17       3.   Individualized Threshold Inquiries Also Preclude Conditional Certification.

18       The Court also should deny Plaintiff's Motion because of the individual inquiries it will

19  engender.  *See, e.g.*, *Chalker*, 2013 WL 5954783 at *2-3 (denying certification because

20  "individualized inquiries" necessary to resolve claims/defenses such as whether employees

21  worked without pay due to instructions from individual store managers, not company-wide

22  policy); *Bouthner v. Cleveland Constr., Inc.*, No. 11-0244, 2012 WL 738578, at *6, *7 (D. Md.

23  Mar. 5, 2012) ("the question of manageability at the notice stage is an appropriate inquiry, and

24  conditional certification of a collective action should not be granted if adjudication on a class-

25  wide basis would require a cumbersome, individualized analysis of each class member's

26  particular factual circumstances") (quotation marks and citation omitted).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 17
Case No. 2:19-cv-01613-JLR

After first taking discovery on the threshold questions of which DSPs paid a day rate, when they did so, and whether they also paid overtime, there still must be separate inquiries determining whether Amazon was a joint employer of the putative collective members.  This would require an analysis of joint employment factors with respect to each and every DA of each and every DSP in the country determined to have paid a day rate, but no overtime.  The DSPs implicated by Plaintiff's proposed collective were each owned and operated by different decision-makers who established their own policies, practices and requirements for DAs and whose contractual agreements with Amazon varied.  Seliger Decl., at ¶ 6.  These differences were manifest not just in the way that they chose to pay DAs, but also in fundamental issues such as hiring and firing and whether the DSP had contracts with companies other than Amazon.  *See Gibbs* Order, 2019 WL 2635746, at *10.  In addition, the determination of whether a DSP paid a "day rate" requires scrutiny of each DSP's pay method.  Plaintiff does not define that term, making it subject to interpretation.  For example, while a DSP that paid DAs a fixed amount per day, say $150, seems to fall within Plaintiff's class definition, it is not clear whether a DSP's pay method which guarantees pay for 10 hours per day at $15/hour regardless of the number of hours that the DA actually worked fits within the definition.  Given the mini-trials promised by the joint employment issue from one DSP to the next, which then need to be combined with the individual inquiries regarding whether the particular DSP paid a day rate and whether its use of the day rate might have been unlawful, the Court should deny Plaintiff's Motion.  *See Bouthner*, 2012 WL 738578, at *6-7 (denying certification in case that "involve[d] two separate construction sites, a general contractor, three subcontractors, and individual Plaintiffs that worked at different locations and for different combinations of employers" because "individualized questions [about who was an employer] would necessarily predominate").

Furthermore, some of the putative collective members are subject to arbitration agreements, such as at least two of the Opt-in Plaintiffs and the plaintiffs in at least two of the other lawsuits cited by Plaintiff (*Champion v. Amazon.com*, No. 18-5222 (N.D. Cal.), and *Wu v.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 18
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Amazon.com, Inc.*, No. 17-2759 (E.D.N.Y.)).  Ramsey Decl., ¶¶ 5-6.  Granting certification will require individualized inquiries to determine which other DAs have arbitration agreements, as those DAs should be excluded from participating in the collective action.  *See, e.g.*, *Gibbs* Order, 2019 WL 2635746, at *9 ("While not dispositive, the existence of arbitration agreements is among the many other reasons that conditional certification of the Nationwide Class is inappropriate here."); *Bigger*, 947 F.3d at 1049 (finding district court abused its discretion by authorizing notice to members of putative collective who signed arbitration agreements).

**B.   Alternatively, If The Court Certifies A Collective Action, It Should Limit It To DAs Who Worked For DSPs About Whom There Is Evidence.**

The Court should not certify any collective action here.  But if the Court disagrees, it should limit the resulting collective, if at all, to DAs who worked for the DSPs about whom Plaintiff submitted evidence.  Indeed, the declarations submitted by Plaintiff address only six locations in four states.  Even setting aside their numerous evidentiary shortcomings, the cookie-cutter declarations at most present evidence about an exceedingly small percentage of the DSPs throughout the nation—but not in Washington.  In such situations, courts in this Circuit routinely limit conditionally certified collectives to the scope of the available evidence.  *See, e.g.*, *Fenn v. Hewlett-Packard Co.*, No. 11-0244, 2011 WL 6150642, at *2-3 (D. Idaho Dec. 12, 2011) (denying nationwide certification where plaintiff presented only five declarations from employees in four states because "the Court cannot determine whether Plaintiff's position was similar to those of absent class members."); *Fichtner v. Am. Family Mut. Ins. Co.*, No. 02-6284, 2004 WL 3106753, at *10 (D. Or. Mar. 1, 2004) (denying nationwide certification and instead certifying geographically limited collective where plaintiff "provide[d] little to no evidence of his ability to represent, or his similarity to, [out of state] employees[.]").

**C.   Plaintiff's Proposed Notice Is Improper.**

If the Court holds that notice should issue in some form, Plaintiff should be directed to confer to develop an even-handed and fair notice—something Plaintiff has not done.  *See, e.g.*,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 19
Case No. 2:19-cv-01613-JLR

*Chetwood v. T-Mobile USA, Inc.*, No. 19-458-RSL, 2020 WL 1689730, at *4 (W.D. Wash. Apr. 7, 2020) (ordering the parties "to meet and confer regarding the language and form of the proposed notice"); *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011) (same).  As detailed below, Plaintiff's proposed notice is improper in myriad ways.

1.    Plaintiff's Proposed Notice Fails To Fully Apprise Putative Collective Members Of The Ramifications Of Joining The Lawsuit.

Plaintiff's notice fails to adequately advise the recipients of the full extent of their potential involvement, including the possibility that they may be required to respond to written discovery, produce documents, provide testimony, and travel to this district for deposition and/or trial.  *See, e.g.*, *Benedict v. Hewlett-Packard Co.*, No. 13-0119, 2014 WL 587135, at *14 (N.D. Cal. Feb. 13, 2014) ("It is appropriate to 'include language informing potential plaintiffs of possible obligations [to provide deposition or courtroom testimony] in the event they elect to opt-in.'") (quoting *Daniels v. Aeropostale W., Inc.,* No. 12–5755, 2013 WL 1758891, at *4 (N.D. Cal. Apr. 24, 2013)).  The notice also fails to inform recipients of their potential liability for costs and attorneys' fees.  *See, e.g., Schiller v. Rite of Passage, Inc.*, No. 13-0576, 2014 WL 644565, at *6 (D. Ariz. Feb. 19, 2014) ("potential class members should be made aware of the possibility of having to pay defendant's attorney's fees if plaintiffs do not prevail.").

2.    Plaintiff's Proposed Notice Appears To Give Judicial Endorsement.

Plaintiff's proposed notice improperly creates the impression of judicial endorsement such as by repeatedly using the term "Court-Authorized."  *See Bazzell*, 2016 WL 3655274, at *8 (approving removal of language that the "court authorized the notice").  Not only should all references to Court approval or authorization of the notice be omitted, but also any notice should prominently state the Court's neutrality on the first page, as well as advise that sending of notice does not mean that DAs have a right to overtime, and that one possible outcome is that the Court may decertify the action in the future.  *See, e.g.*, *Benedict*, 2014 WL 587135, at *13 (emphasizing "that the Court's neutrality is made explicitly clear to potential plaintiffs").

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 20
Case No. 2:19-cv-01613-JLR

3.   Plaintiff's Proposed Notice Is One-Sided.

Plaintiff's proposed notice robustly describes his allegations and the relief sought in this case, but it provides only a minimal, inadequate single sentence that Amazon denies the claims. This partisan description should be modified to include an equivalent statement of the positions and defenses of Amazon. *See, e.g.*, *Bollinger*, 761 F. Supp. 2d at 1121 (rejecting one-sided notice that contained no information about defendants' denials and defenses); *see also Gibbs* R&R, 2019 WL 1980123, at *20 (parties given 30 days to confer over the neutrality of the proposed notice's language and draft a mutually acceptable proposed notice).

4.   Plaintiff's Proposed Modes Of Delivery Of Notice Are Improper And Excessive.

Besides ignoring that Amazon will not be able to determine what DAs of what DSPs to whom it should send notice, Plaintiff overreaches by seeking to distribute notice over four media: workplace posting, first-class mail, email, and text message.  Amazon objects to notice by posting and text.  First, the Court should deny Plaintiff's request for posting (Plaintiff's Motion at 18-19) because posted notice is an inefficient mode of delivery, as it does nothing to reach putative collective members who no longer work for the employer.  *See, e.g.*, *Russell v. Wells Fargo & Co.*, No. 07-3993, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) (denying request to post notice in work locations, in part because it "will do nothing to notify those class members who are no longer employed").  Separately, such a posting would be unnecessary in this case, as putative collective members are drivers who do not spend significant time in delivery stations. *See, e.g.*, *Bazzell*, 2016 WL 3655274, at *8 (denying workplace posting of notice where it would do little to actually provide notice to the putative class members and the Court already approved of notice by mail and email).  Moreover, notice would confuse employees who actually work for Amazon in the delivery stations, and it would potentially lead to individuals who do not meet the class definition attempting to opt in.  *See generally Gibbs* R&R, 2019 WL 1980123, at *18 (rejecting plaintiffs' request for notice via workplace posting).

Second, Plaintiff's request to send notice via text message is inappropriate because "most

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  people do not expect to receive unsolicited business communications via text message," and

2  "[a]bsent some showing" that other forms of delivery "will not reach prospective class

3  members," this additional "form of notice is unnecessary and overly intrusive." *Slaughter v.*

4  *Caidan Mgmt. Co.*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018); *see also Gibbs* Order, 2019 WL

5  2635746, at *10 (denying notice by text message to local DAs); *Bakhtiar v. Info. Res., Inc.*, No.

6  17-4559, 2018 WL 3585057, at *4 (N.D. Cal. July 26, 2018) (rejecting notice by text because

7  "there has been no showing that such notice is necessary in light of the fact that class members

8  will be receiving two additional forms of notice"). In fact, "the transmission of notice by text

9  message could well be viewed by the recipients as harassing in nature, and . . . a significant

10  number of recipients are likely to disregard this notice as 'spam.'" *Anderson v. Minacs Grp.*

11  *(USA) Inc.*, No. 16-13942, 2017 WL 1856276, at *9 (E.D. Mich. May 9, 2017); *see also*

12  *Chetwood*, 2020 WL 1689730, at *5 (rejecting production of telephone numbers and notice by

13  text message out of concerns for privacy).

14       5.     <u>Plaintiff's Request For A Reminder Notice Is Improper.</u>

15       The Court should deny Plaintiff's proposal for a reminder notice. "Reminder notices are

16  unnecessary because they are redundant and could be interpreted as encouragement by the Court

17  to join the lawsuit." *Smith v. Cable Wiring Specialist, Inc.*, No. 14-0277, 2014 WL 4795160, at

18  *3 (M.D. Fla. Sept. 25, 2014); *see also Gibbs* R&R, 2019 WL 1980123, at *18 ("[S]ending a

19  reminder notice is unnecessary, redundant, and potentially could be interpreted as

20  encouragement by the Court to join the lawsuit.") (quotations and citation omitted); *Villarreal v.*

21  *Caremark, LLC*, 66 F. Supp. 3d 1184, 1196 (D. Ariz. 2014) (finding reminder postcards

22  "unnecessary") *abrogated on other grounds by Campbell*, 903 F.3d 1090 (9th Cir. 2018).

23       6.     <u>A Third-Party Administrator Should Administer Any Notice.</u>

24       Plaintiff is not entitled to putative collective members' names or private contact

25  information. It is well within the Court's discretion to require a third-party claims administrator

26  (not counsel) to send notice of a lawsuit after conditional certification. *See, e.g., Lewis v. Wells*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 22
Case No. 2:19-cv-01613-JLR

1   *Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (denying plaintiff's request for

2   contact information and appointing a claims administrator); *Russell*, 2008 WL 4104212, at *5

3   (same).  To protect individuals' privacy rights and ensure that contact information is not used for

4   solicitations beyond Court-approved notice, a claims administrator should provide notice, in

5   which case Plaintiff would have no need for the personal information requested.

6          7.   <u>Plaintiff's Proposed Notice Is Otherwise Improper.</u>

7         •   A 90-day opt-in period is unnecessarily long.  Any opt-in period in this action

8   should not exceed 60 days.  *See, e.g.*, *Bazzell*, 2016 WL 3655274, at *6, n.8 (approving 60-day

9   notice period and noting that "[c]ase law indicates that a 60-day notice period is appropriate");

10  *Morden v. T-Mobile USA, Inc.*, No. 05-2112-RSM, 2006 WL 2620320, at *4 (W.D. Wash. Sept.

11  12, 2006) (accepting proposed opt-in period of 60 days).

12        •   For the reasons stated above in Section IV(A)(3), notice should not be sent to

13  DAs who are parties to arbitration agreements with their employers.

14        •   Plaintiff improperly requests that the Court authorize notice to DAs who have

15  "worked for Amazon" at any time between October 9, 2016—three years prior to the filing of

16  Plaintiff's original Complaint—and the present.  Plaintiff has not advanced plausible allegations

17  or evidence of willfulness.  As such, the Court should only provide notice to potential collective

18  members who would be encompassed by the FLSA's default two-year limitations period, rather

19  than the three-year limitations period applicable to willful violations of the FLSA.  Also, any

20  notice should be limited to potential collective members who "worked for Amazon" up to two

21  years prior to *the date notice was sent*—not the date Plaintiff filed the original Complaint—

22  because the statute of limitations continues to run for opt-ins in FLSA collective actions until

23  they file a written consent to join the litigation.  *See Bazzell*, 2016 WL 3655274, at *9.

24        •   Plaintiff's proposed notice does not include contact information for Amazon's

25  counsel.  *See, e.g.*, *Dean v. W. Aviation, LLC*, No. 17-62282, 2018 WL 1083497, at *4 (S.D. Fla.

26  Feb. 28, 2018) ("courts often include the contact information for both plaintiff's counsel and

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 23
Case No. 2:19-cv-01613-JLR

1  defense counsel in the notice . . . in the interest of providing complete information").

2  •   There is no reason to permit Plaintiff's request for potential opt-ins to execute

3  their consents through an electronic signature service.  *See Gibbs* R&R, 2019 WL 1980123, at

4  *18-19 (recommending denial of plaintiffs' request for use of electronic signature).  Potential

5  opt-ins are party plaintiffs, 29 U.S.C. § 216(b), and their obligations will require far more effort

6  than merely clicking a few links and typing out an electronic signature.  It is not too much to

7  require that individuals who want to opt in to this litigation take rudimentary steps of signing a

8  consent form by hand and placing it into a self-addressed, stamped envelope.

9  •   Plaintiff's Consent Form should not authorize the reuse of any signed Consent

10  Form without the express written permission of any individuals who formerly signed such a

11  consent.  *See Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1037 (N.D. Cal. 2017) (finding

12  similar language "inappropriate" and removing it from proposed notice).

13  Amazon respectfully requests that, should the Court decide to certify any putative

14  collective—which it should not—the Court should limit and revise any notice in accordance with

15  the objections described above.

16  **V.   CONCLUSION**

17  For the foregoing reasons, the Court should deny Plaintiff's Motion in its entirety.

18  However, if the Court nonetheless conditionally certifies a collective action, Plaintiff's proposed

19  notice should be modified as described above.

20  DATED May 11, 2020.

21  Respectfully submitted,

22  By: s/Ryan D. Redekopp
    Ryan D. Redekopp, WSBA #36853

23

24  K&L GATES LLP
    925 Fourth Avenue, Suite 2900
25  Seattle, WA 98104
    Telephone: (206) 623-7580
    Fax: (206) 623-7022
26  Email: ryan.redekopp@klgates.com

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 24
Case No. 2:19-cv-01613-JLR

K&L GATES LLP
925 FOURTH AVENUE  SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

s/Christopher K. Ramsey
Christopher K. Ramsey (admitted *pro hac vice)*
MORGAN LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219-6401
Telephone: (412) 560-3300
Email: christopher.ramsey@morganlewis.com

Richard Rosenblatt (admitted *pro hac vice*)
MORGAN LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540-6241
Telephone: (609) 919-6600
Email: richard.rosenblatt@morganlewis.com

Attorneys for Defendants Amazon.com, Inc.,
Amazon Logistics, Inc., and Amazon.com
Services LLC (formerly Amazon.com Services,
Inc.)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 25
Case No. 2:19-cv-01613-JLR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2020, I caused to be electronically filed the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(b) with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

DATED May 11, 2020

By:  s/Christopher K. Ramsey
     Christopher K. Ramsey (admitted *pro hac vice*)
     MORGAN LEWIS & BOCKIUS LLP
     One Oxford Centre, 32nd Floor
     Pittsburgh, PA 15219-6401
     Telephone: (412) 560-3300
     christopher.ramsey@morganlewis.com

     Attorneys for Defendants Amazon.com, Inc.,
     Amazon Logistics, Inc., and Amazon
     Services LLC (formerly Amazon.com Services,
     Inc.)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF NOTICE - 26
Case No. 2:19-cv-01613-JLR