THE HONORABLE JAMES ROBART

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

8

BRADY EDMONDS, on behalf of himself and
those similarly situated,

NO. 2:19-cv-01613-JLR

9

Plaintiff,

10

vs.

**PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY
SITUATED INDIVIDUALS UNDER 29 U.S.C.
§ 216(b)**

11

AMAZON.COM, INC., a Foreign for Profit
Corporation; AMAZON LOGISTICS, INC., a
Foreign for Profit Corporation; AMAZON.COM
SERVICES, INC., a Foreign for Profit Corporation,

12

13

14

Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY
MOTION FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED
INDIVIDUALS UNDER 29 U.S.C. § 216(B)
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**TABLE OF CONTENTS**

**Page No.**

I.    INTRODUCTION ............................................................................................ 1

II.   ARGUMENT ................................................................................................. 2

    A.    At this Stage, Plaintiff Has Met His Low Burden, and Nationwide
       Notice Should Issue .......................................................................... 2

        1.    Plaintiff Has Demonstrated that He and the Proposed Class
            Members Are Similarly Situated ................................................ 2

        2.    Although Not Required, Plaintiff Did Present Plausible
            Evidence of A Common Unlawful Policy by Amazon ............................ 4

        3.    Courts Routinely Permit Nationwide Notice to Issue When
            Plaintiff's Preferred Evidence May Be Geographically Limited ............... 5

    B.    Amazon Made Its Bed and Now Must Lie in It ...................................................... 6

        1.    A Single Nationwide Collective Action Is Judicially Efficient ................... 7

        2.    Amazon's Alleged Inability to Identify Proposed Class
            Members is Both Disingenuous and Irrelevant ......................................... 8

        3.    The Middle District of Florida's Decision in the Gibbs Case
            Is Non-Binding and Does Not Preclude Nationwide
            Certification Here ................................................................. 10

III.  CONCLUSION ............................................................................................ 11

iPLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY
MOTION FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED
INDIVIDUALS UNDER 29 U.S.C. § 216(B) - i
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF AUTHORITIES

**Page No.**

### FEDERAL CASES

*Bittencourt v. Ferrara Bakery & Cafe Inc.*,
    310 F.R.D. 106 (S.D.N.Y. 2015) ................................................................. 9

*Bradford v. Bed Bath and Beyond*,
    F. Supp. 2d 1342 (N.D. Ga. 2002) ............................................................ 7

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018).............................................1, 2, 6, 10, 11

*Castle v. Wells Fargo Fin., Inc.*,
    No. C 06-4347SI, 2008 WL 495705 (N.D. Cal. Feb. 20, 2008)...................... 5

*Cuevas v. ConAm Mgmt. Corp.*,
    2019 WL 5320544 (S.D. Cal. Oct. 21, 2019) ............................................... 9

*Dozier v. DBI Servs., LLC*,
    2020 WL 881698, at *4 (M.D. Fla. Feb. 24, 2020) ...................................... 5

*Fairley v. Knights' Marine & Indus. Servs., Inc.*,
    2015 WL 3450797 (S.D. Miss. May 29, 2015) ............................................ 7

*Falcon v. Starbucks Corp.*,
    580 F. Supp. 2d 528 (S.D. Tex. 2008) ........................................................ 7

*Gibbs v. MLK Express Servs., LLC*,
    2019 WL 1980123 (M.D. Fla. Mar. 28, 2019), report and recommendation
    adopted in part, rejected in part, 2019 WL 2635746 (M.D. Fla. June 27, 2019)...... 10, 11

*Gordon v. TBC Retail Grp., Inc.*,
    134 F. Supp. 3d 1027 (D.S.C. 2015) .......................................................... 5

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)................................. 2

*Kucker v. Petco Animal Supplies Stores, Inc.*,
    2016 WL 237425 (S.D.N.Y. Jan. 19, 2016) ............................................... 10

iiPLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY
MOTION FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED
INDIVIDUALS UNDER 29 U.S.C. § 216(B) - ii
Case No.: 2:19-cv-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Kutzback v. LMS Intellibound*, LLC,
at *6 (W.D. Tenn. Dec. 16, 2014), report and recommendation adopted,
2015 WL 1393414 (W.D. Tenn. Mar. 25, 2015) ............................................................... 7

*Martin v. Sprint/united Mgmt. Co.*,
2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ........................................................................... 6

*Mowdy v. Beneto Bulk Transp.*,
2008 WL 901546 (N.D. Cal. Mar. 31, 2008) ................................................................... 10

*Otey v. CrowdFlower, Inc.*,
No. 12-CV-05524-JST, 2013 WL 4552493 (N.D. Cal. Aug. 27, 2013) ............................... 8

*Pendlebury v. Starbucks Coffee Co.*,
2005 WL 84500 (S.D. Fla. 2005) ...................................................................................... 5

*Putman v. Galaxy 1 Mktg., Inc.*,
276 F.R.D. 264 (S.D. Iowa 2011) ..................................................................................... 9

*Roy v. FedEx Ground Package Sys., Inc.*,
353 F. Supp. 3d 43 (D. Mass. 2018) ................................................................................ 5

*Simmons v. Enterprise Holdings, Inc.*,
2011 WL 855669 (E.D.Mo. Mar. 9, 2011) ........................................................................ 9

*Sullivan-Blake v. FedEx Ground Package Sys., Inc.*,
(W.D. Pa. Sept. 30, 2019) .......................................................................................... 4, 5

*Velasquez v. HSBC Fin. Corp.*,
266 F.R.D. 424 (N.D. Cal. 2010) ...................................................................................... 5

*Xavier v. Belfor USA Grp.*, Inc.,
585 F. Supp. 2d 873 (E.D. La. 2008) ................................................................................ 6

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I.  INTRODUCTION

The Court's inquiry at this stage is limited. The sole issue is whether Plaintiff has met his low burden of demonstrating that the employees to whom he seeks to send notice are similarly situated. Plaintiff has easily exceeded his low burden. Amazon's opposition is devoid of any argument otherwise. In apparent recognition that the facts and applicable law can lead to only one result here—issuance of notice—Amazon's opposition focuses entirely on policy arguments that have been rejected by other courts as misplaced in the context of conditional certification. Because Plaintiff has met his burden, notice is due to issue.

Plaintiff's motion demonstrates that Plaintiff and the proposed opt-in class members to whom notice should issue are similarly situated because "they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018). It is undisputed that all of the drivers: (1) share a common job title; (2) performed similar duties; (3) were paid in the same manner; (4) assert the same claims under the FLSA; and (5) all allege they were jointly employed by Amazon such that Amazon is jointly and severally liable for any violations of the FLSA. Amazon fails to present any evidence to the contrary. As such, Plaintiff's motion should be granted and notice should issue.

In tacit recognition that it cannot rebut Plaintiff's demonstration that he and the proposed class are similarly situated, Amazon attempts to divert the Court's attention to fairness and procedural considerations—considerations the Ninth Circuit repeatedly admonishes have no bearing on the similarly situated analysis. *Id.* at 1115. While these arguments may, at first blush, exhibit some degree of curbside appeal, they are nothing more than a series of red herrings. While it is unsurprising that Amazon would seek to reframe the simple issue before the Court and hide behind policy arguments, those arguments are devoid of merit.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Amazon seeks to recast itself as the victim, while the victims—those intended to be protected by the FLSA—are the low-wage workers whom Amazon takes advantage of through its DSP model. Amazon contends that permitting notice to issue to thousands of low-wage employees who were subjected to the same rampant wage theft scheme would be *unfair* and that it would be inconvenienced by having to defend itself against the allegations that it presided over a scheme which resulted in the theft of tens of millions of dollars in wages from its drivers—the very employees on whom its business relies. What would really be unfair would be to allow Amazon, a company worth *a trillion dollars*, to continue to escape FLSA liability by cloaking itself in its DSP model. Fortunately, the facts and law require the Court to disregard Amazon's improperly raised policy arguments. Plaintiff has met his burden, and thus, notice should issue.

## II. ARGUMENT

**A.    At this Stage, Plaintiff Has Met His Low Burden, and Nationwide Notice Should Issue.**

1.    <u>Plaintiff Has Demonstrated that He and the Proposed Class Members Are Similarly Situated.</u>

At the notice stage, Plaintiff bears the burden of demonstrating that he is similarly situated to the proposed class to whom he seeks to send notice, but Plaintiff's burden is lenient, and loosely akin to a plausibility standard, commensurate with the stage of the proceedings. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). In *Campbell v City of Los Angeles*, the Ninth Circuit articulated a definition for what is means to be similarly situated, stating "in light of the collective action's reason for being within the FLSA, that party plaintiffs must be alike with regard to some *material* aspect of their litigation. That is, the FLSA requires similarity of the kind that 'allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.'"  *Campbell*, 903 F.3d at 1114 (emphasis added), *citing Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). "That goal is only achieved—and, therefore, a collective can only be maintained—to the extent party plaintiffs are alike in ways that matter to the disposition of

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS
UNDER 29 U.S.C. § 216(B) - 2
CASE NO.: 2:19-CV-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  their FLSA claims. If the party plaintiffs' factual or legal similarities are material to the

2  resolution of their case, dissimilarities in other respects do not defeat collective treatment."

3  *Id*. Stated differently, if the pleadings, declarations, and other limited evidence at the first

4  stage demonstrate that the proposed class members are plausibly alike in ways that matter to

5  the disposition to their FLSA claims, then notice is due to issue in order to give the class

6  members the ability to collectively vindicate their rights against their employer's illegalities.

7        Plaintiff meets the lenient burden to disseminate notice to the proposed class he seeks

8  to represent. Plaintiff presented evidence that Amazon has a nationwide policy whereby it

9  requires all of its drivers ("DAs") to be "employed" and paid through a subcontracting

10 company, or a DSP, in order to shield itself from FLSA liability, while maintaining control over

11 every aspect of the DAs' employment and job duties. Plaintiff presented evidence—none of

12 which Amazon attempted to rebut—demonstrating that regardless of the DSP through which

13 a DA is paid, Amazon: (i)  uniformly controls every aspect of the DAs' employment and the

14 delivery process; (ii) tracks DA performance; (iii) has the ability to hire and fire DAs; and (iv)

15 has management level employees responsible for DA and DSP management. The evidence

16 demonstrates this is true for all of Amazon's DAs nationwide (*i.e.*, the proposed opt-in class).

17 Moreover, Plaintiff presented evidence that former DAs across the United States have been

18 subjected to the same FLSA violations regardless of the DSP that compensated them—

19 specifically, they were compensated a day rate without receiving any overtime compensation

20 for the hours they worked over forty each week.

21        The claims of every DA within the defined class rely on a common theory and common

22 facts, and all will require the resolution of the same two questions: (1) whether Amazon is

23 their employer under the FLSA, and thus liable for unpaid overtime; and (2) whether the day-

24 rate only scheme violated the FLSA's overtime provisions. The evidence necessary to prove

25 each of the proposed opt-in class members' claims will be the same in aspects that are

26 material to the disposition of the class' case as a whole. Furthermore, at this stage in the

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

litigation, Plaintiff needs only to demonstrate that similarity is plausible, not that the proposed class members are in fact similarly situated. Because Plaintiff has met his burden, notice should issue to all DAs within the proposed class nationwide.

       2.   <u>Although Not Required, Plaintiff Did Present Plausible Evidence of A Common Unlawful Policy by Amazon.</u>

In tacit recognition of Plaintiff's demonstration that he and the proposed class are alike in regard to the material aspects of the litigation—*i.e.*, that Plaintiff has exceeded the Ninth Circuit's burden regarding similarly situated analysis—Amazon argues that Plaintiff has not presented evidence of a common unlawful policy. *See* D.E. 50 at 12-16. Amazon's argument in this regard is both misplaced and factually inaccurate. A common unlawful policy is not required to demonstrate that the proposed class is similarly situated. Even assuming *arguendo* that such a demonstration were required however, Plaintiff *has* demonstrated it is plausible Amazon has a common unlawful policy that is applicable to all of its DAs nationwide whereby it requires them to be paid through a DSP in order to shield itself from FLSA liability.

Notably, Amazon's argument in this regard was recently rejected by the court in a nearly identical case against Amazon's competitor, FedEx. *See Sullivan-Blake v. FedEx Ground Package Sys., Inc.* , at *4 (W.D. Pa. Sept. 30, 2019). In *Sullivan-Blake*, FedEx argued plaintiffs failed to identify a uniform FedEx compensation policy that deprived them and the members of the proposed collective action of overtime pay because the ISPs (FedEx's equivalent of Amazon's DSPs) who paid the drivers had sole discretion over the drivers' pay. *Id.* The court rejected that notion and held that such an argument improperly focused on the merits of the case, was reserved for stage two, and was not properly considered in the context of a stage-one motion for notice. *Id.* Moreover, Despite Amazon's contentions to the contrary, *Sullivan-Blake* is "on all fours" with this case. In *Sullivan-Blake*, FedEx required their drivers to be paid through an ISP while FedEx maintained control of virtually every aspect of drivers' employment while avoiding FLSA liability for overtime compensation. *Id.* Notably, the court there permitted nationwide notice to issue based on affidavits from FedEx drivers in three

states. *Id*. at *5; *see also Roy v. FedEx Ground Package Sys., Inc*., 353 F. Supp. 3d 43, 74 (D. Mass. 2018) (certifying a collective action where "the significant commonality alleged by [p]laintiffs [was] FedEx Ground's policy of contracting with ISPs to provide delivery services while maintaining control of the delivery process such that the delivery drivers are, in effect, employed by FedEx Ground.").[1] [2] [3]

3.   <u>Courts Routinely Permit Nationwide Notice to Issue When Plaintiff's Preferred Evidence May Be Geographically Limited.</u>

District courts around the county routinely permit nationwide notice to issue where plaintiff's evidence is limited to a handful of defendant's overall locations. *See Sullivan-Blake* 2019 WL 4750141, at *5 (permitting nationwide notice where plaintiff presented declarations from plaintiffs in three states.); *Dozier v. DBI Servs*., *LLC*, 2020 WL 881698, at *4 (M.D. Fla. Feb. 24, 2020) (permitting nationwide notice where plaintiff presented declarations from plaintiffs who worked for defendant in <u>one location</u> in one state); *Kutzback v. LMS Intellibound*, *LLC*, at *6 (W.D. Tenn. Dec. 16, 2014), report and recommendation adopted, 2015 WL 1393414 (W.D. Tenn. Mar. 25, 2015) (certifying a nationwide collective action based on declarations from employees at two locations, in two states); *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500 (S.D. Fla. 2005) (store managers from *two* Starbucks' locations in Broward County,

---

[1] *Campbell* does not stand for the premise that the existence of a common unlawful policy is central to the similarly situated analysis. *Campbell*, 903 F.3d at 1114. In *Campbell*, the reason why a department-wide unlawful compensation policy was essential to the determination in that case was because it was the "*sole* justification advanced for a department-wide collective." *Id.* at 1120. That is not the situation here.

[2] The district court cases from within the Ninth Circuit that Amazon cites are distinguishable. For example, in *Castle*, a pre-*Campbell* case, the court found that plaintiffs had failed to identify a "common policy or practice" because they alleged they were denied overtime pay "under a variety of different circumstances." *Castle v. Wells Fargo Fin., Inc*., No. C 06-4347SI, 2008 WL 495705, at *2 (N.D. Cal. Feb. 20, 2008) (focusing on dissimilarities of the plaintiffs—directly at odds with the current Ninth Circuit standard.). Similarly, *Velasquez* was a misclassification case where the court stated "in misclassification cases, it is often easier to show the plaintiffs were the victims of a single decision, policy, or plan." *Velasquez v. HSBC Fin. Corp*., 266 F.R.D. 424, 428 (N.D. Cal. 2010).

[3] Amazon's argument regarding individualized inquiries is misplaced. Individualized defenses "do not preclude collective treatment for the purpose of resolving the common issue that *does* exist, and that must be answered in the first instance." *Campbell*, 903 F.3d at 1116. Likewise, the possibility that some class members may be subject to arbitration does not forestall a plaintiff's entitlement to conditional certification. *Gordon v. TBC Retail Grp., Inc*., 134 F. Supp. 3d 1027, 1039 (D.S.C. 2015).

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY MOTION FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS UNDER 29 U.S.C. § 216(B) - 5
CASE NO.: 2:19-CV-01613-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Florida established the right to send notice to all similarly situated store managers across the United States who may have been misclassified as "exempt"). Here, Plaintiff has presented evidence from six (6) DAs who have worked at seven (7) Amazon locations across four (4) states. This exceeds evidence that courts routinely hold is sufficient. At this stage, Plaintiff has met his burden for the Court to permit to notice to issue to similarly situated DAs nationwide.[4]

**B.    Amazon Made Its Bed and Now Must Lie in It.**

Amazon's opposition largely relies on arguments pertaining to judicial economy and manageability, things that are irrelevant to the limited issue at this stage. For example, Amazon complains that it lacks the ability to identify proposed class members.[5]   Amazon should not be heard to complain of the inconvenience or burden of a lawsuit which resulted from widespread wage theft of its own employees.

The FLSA is a remedial statute enacted to protect workers, and its collective action mechanism was put in place as a means of furthering that remedial goal. *Campbell*, 903 F.3d at 1113. It is the low-wage DAs illegally denied proper overtime pay, nationwide, who need to be protected, not Amazon. Amazon created this problem and cannot avoid responsibility simply because answering for its actions might be inconvenient. Plaintiff has met his burden to demonstrate that the proposed class is similarly situated. This is all that is required. Indeed, the Ninth Circuit squarely rejected Amazon's argument in this regard in *Campbell* and reasoned, "if the party plaintiffs' FLSA right to choose collective litigation has any force,

---

[4] The cases that Defendants cite in support of their position that nationwide notice should not issue are distinguishable. For example, in *Martin*, plaintiff only presented evidence from plaintiffs who worked for defendant through two intermediaries. *Martin v. Sprint/united Mgmt. Co.*, 2016 WL 30334, at *9 (S.D.N.Y. Jan. 4, 2016). Tellingly, the court in *Martin* noted that "plaintiffs are not required to submit evidence expressly implicating every Sprint Partner nationwide." *Id.* Moreover, conditional certification was denied in *Belfor* partially because the "plaintiffs provide[d] only conclusory allegations and submit[ted] no evidence demonstrating that Belfor controlled the work of the laborers such that it can be held to be the direct employer of the named plaintiffs or the potential opt-in plaintiffs." *Xavier v. Belfor USA Grp.*, Inc., 585 F. Supp. 2d 873, 879 (E.D. La. 2008).

[5] *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2013 WL 4552493, at *6 (N.D. Cal. Aug. 27, 2013) (requiring defendants to produce the names and contact information of all putative class members to plaintiff's counsel despite of defendants' argument that they were not in possession of that information.).

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS
UNDER 29 U.S.C. § 216(B) - 6
CASE NO.: 2:19-CV-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

'procedural considerations' must mean more than the inconvenience, from the court's or defendant's viewpoint, of the party plaintiffs' choice. Where Plaintiffs are otherwise similarly situated, certification must be permitted unless the collective action mechanism is truly infeasible." *Id.* at 1116.

      1.    <u>A Single Nationwide Collective Action Is Judicially Efficient.</u>

Citing other related lawsuits, Amazon contends that a single, nationwide collective action would be inefficient. But the fact that there are other day-rate cases pending only demonstrates the widespread nature of the FLSA violations at issue here. And a nationwide collective would likely prevent dozens of additional lawsuits and allow Amazon's liability to be adjudicated in a single forum, its home forum. Thus, a nationwide collective action in this case *would* promote judicial efficiency. *Kutzback*, 2014 WL 7187006, at *6 (certifying nationwide collective action, in part, based on evidence of other lawsuits against defendants for similar FLSA violations, and declarations from employees in two states); *Reese v. Kimberly Credit Counseling, Inc.*, 06-80505-CIV-PAINE/JOHNSON, DE 71 (S.D. Fla. Dec. 24, 2006) (relying in part on evidence of prior lawsuit against the same defendant for the same overtime violations and granting conditional certification), attached as <u>Appendix A</u>.

Moreover, the fact that there are other identical or virtually identical cases pending elsewhere does not preclude conditional certification.[6] Of course, Amazon would prefer small, localized lawsuits to surface from time to time as opposed to one large collective action that would expose it to larger liability. But it is the DAs who need to be protected and their rights vindicated, not Amazon.[78] While this case may be complicated (as are many

---

[6] *See Fairley v. Knights' Marine & Indus. Servs., Inc.*, 2015 WL 3450797, at *3 (S.D. Miss. May 29, 2015) (declining to withhold certification based on the earlier filed case because: 1) multiple lawsuits are permissible under the FLSA; 2) the court is not required to take any action simply because there are two lawsuits asserting the same FLSA rights; and 3) the statute of limitations for potential opt-ins was running).

[7] *See Bradford v. Bed Bath and Beyond*, F. Supp. 2d 1342, 1351 (N.D. Ga. 2002) (plaintiffs can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action."); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 541 (S.D. Tex. 2008) ("Although the remedial nature of the FLSA, standing alone, does not justify allowing a case to proceed collectively, it does at least suggest that a close call as to whether Plaintiffs are similarly situated should be resolved in favor of certification.").

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Tel. 206.816.6603 • Fax 206.319.5450
www.terrellmarshall.com

collective/class action cases), once a Plaintiff has met his burden to demonstrate that the proposed class is plausibly similarly situated, the collective action mechanism cannot be denied to him based on Amazon's perceived inconvenience.

    2.   <u>Amazon's Alleged Inability to Identify Proposed Class Members is Both Disingenuous and Irrelevant.</u>

Amazon also contends that it lacks the information necessary to identify the collective action members. *See* D.E. 50 at 9-11. Amazon's argument in this regard is both contrary to law[9] and disingenuous. This is not an issue of first impression. In *Otey v. CrowdFlower, Inc.*, for example, the defendants argued against notice, contending that that the information necessary to facilitate notice was in the hands of the 226 third-party companies the defendants did business with, not defendants themselves. 2013 WL 4552493, at *5 (N.D. Cal. Aug. 27, 2013). The *Otey* court rejected this argument and ordered defendants to produce the contact information because courts routinely require defendants to produce contact information concerning the proposed class, and defendants had a right and obligation to obtain the contact information from the third-party companies. *See id*.[10] As in *Otey*, Amazon represents that it is not in *possession* of the information necessary to identify the proposed class members. Based on Amazon's own representations, however, it is clear the company can obtain the necessary information.

For instance, Dina Baker avers in her declaration that Amazon periodically audits DSP compliance with contractual terms, including aspects of payments to their delivery associates. *See* Decl. of Dina Baker, D.E. 51-4, ¶4.[11]  In other words, even if Amazon currently does not

---

[8] Plaintiff concedes that if there are similarly situated individuals who have already settled claims against Amazon for the same violations that are complained of herein, those individuals should not be included as a putative class member.

[9] Amazon fails to cite a single case in support of this argument. *See* Defendants' Opposition, generally.

[10] *See also Otey v. CrowdFlower, Inc.*, Plaintiffs' Reply in Support of Motion for Conditional Certification, D.E. 143-2, No. 12-CV-05524-JST, attached hereto as <u>Appendix B</u>.

[11] Amazon maintains named Plaintiff Brady Edmonds was employed through a company called JSTC, LLC, a third party with which Amazon contends it has no contractual relationship. But while Mr. Edmonds was employed by Amazon, he received his pay through a DSP called COEI, LLC. Regardless of whether Mr. Edmonds was contracted through JSTI or COEI, Amazon does not deny that Mr. Edmonds logged into a Rabbit, DORA, or Amazon Flex application and was authorized and allowed to deliver Amazon packages, work for which Amazon benefitted

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS
UNDER 29 U.S.C. § 216(B) - 8
CASE NO.: 2:19-CV-01613-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

have the information necessary to effectuate notice in its possession, the company is able to obtain same by virtue of its contractual rights visa vis its DSPs. Additionally, as thoroughly explained in Plaintiff's motion, Amazon possesses a wealth of information regarding its DAs. Specifically, Amazon conducts background checks on its drivers, sends individualized driver performance data to its DSPs on a weekly basis, and requires drivers to log in to a Rabbit or Amazon Flex using their personal credentials so that Amazon track their progress and communicate with the drivers in real-time while out in the field. *See* D.E. 40 at 5-13.

Moreover, Amazon's contentions regarding its inability to identify every proposed opt-in class member further bolsters the necessity of posting notice in Amazon's warehouses where DAs work nationwide. The Court has authority and discretion to monitor the preparation and distribution of the notice to "ensure that it is timely, accurate, and informative." *Cuevas v. ConAm Mgmt. Corp.*, 2019 WL 5320544, at *6 (S.D. Cal. Oct. 21, 2019). Posting notice would maximize "potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in."[12]

Finally, Amazon represents that it would need to conduct full-blown discovery of all DSPs to determine, *inter alia*, which DAs were paid a day rate, at what period of time, and whether overtime was paid. But the only information necessary for the purposes of issuing notice is whether Delivery Associates were paid on a day-rate basis throughout the relevant time period. Otherwise, Amazon's arguments intimate that the class definition is a failsafe class, wherein liability must be established before members of the class can be defined. This is not what Plaintiff is seeking and is not required by the class definition in this matter. Plaintiff proposes that notice should be sent to all DAs who were paid a day rate. Plaintiff would agree to include a notation on the notice informing proposed class members that even if the opt-in

---

greatly. If Amazon did not have access to information regarding its DAs, then it would not have been able to determine the entity that "employed" Plaintiff..

[12] *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015); *see also Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011); *Simmons v. Enterprise Holdings, Inc.*, 2011 WL 855669, at *3 (E.D. Mo. Mar. 9, 2011) (requiring posting of notice in employee break rooms during notice period).

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS
UNDER 29 U.S.C. § 216(B) - 9
CASE NO.: 2:19-CV-01613-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  form is signed, they may not be entitled to recovery and may be dismissed if it becomes

2  apparent that they do not fit within the class definition at some point during the litigation. In

3  fact, district courts often permit notice to issue to all proposed class members and recognize

4  that those who are not similarly situated can be excluded from the action at the second

5  stage.[13]

6      3.      The Middle District of Florida's Decision in the *Gibbs* Case Is Non-Binding and
             Does Not Preclude Nationwide Certification Here.

7

8          Amazon dedicates an entire section of its opposition to a discussion of the *Gibbs* case,

9  a case decided in the Middle District of Florida, which applied Eleventh Circuit law. *Gibbs v.*

10  *MLK Express Servs., LLC*, 2019 WL 1980123, at *1 (M.D. Fla. Mar. 28, 2019), report and

11  recommendation adopted in part, rejected in part, 2019 WL 2635746 (M.D. Fla. June 27,

12  2019). In making the determination into whether a proposed class is similarly situated to a

13  named plaintiff for collective action purposes, the Eleventh Circuit follows the majority, or "ad

14  hoc," approach. *See id.* at *4.  The "ad hoc" approach was explicitly rejected by the Ninth

15  Circuit in *Campbell v. City of Los Angeles*. 903 F.3d at 1117 ("We reject the majority

16  approach—at least as it is typically articulated—because it inadequately accounts for the

17  meaning of "similarly situated" in the FLSA context and improperly sanctions the

18  decertification of collective actions the district court finds procedurally challenging.").

19  Because, the *Gibbs* decision was based on an analysis materially different than that applicable

20  here, it has little persuasive value.

21          In *Campbell*, the Ninth Circuit indicated that the majority approach into whether a

22  proposed class is similarly situated improperly focuses on the differences between the party

23  plaintiffs rather than their similarities resulting in denial of certification where the proposed

24

25  [13] *See Mowdy v. Beneto Bulk Transp.*, 2008 WL 901546, at *11 (N.D. Cal. Mar. 31, 2008) ("Rather, the court will
    allow notice to be sent to drivers employed by defendants at any time during the past three years, and opt-ins
    will be subject to exclusion at the stage of final certification."); *Kucker v. Petco Animal Supplies Stores, Inc.*, 2016
26  WL 237425, at *7 (S.D.N.Y. Jan. 19, 2016) ("Upon an initial showing that the putative class is similarly situated,
    notice is issued. At the second stage, the claims of dissimilar opt-in plaintiffs can be dismissed without
27  prejudice.").

1  class had other legal or factual similarities that were material to their FLSA claims. *Campbell*,

2  903 F.3d at 1114. In denying plaintiff's motion in *Gibbs*, the court stated: "[w]hile Plaintiffs

3  have established that DAs share similar duties and that many are paid a day rate, this case is

4  complicated by the fact that Amazon contracts with individual DSPs nationwide who in turn

5  hire DAs." *See Gibbs v. MLK Express Servs., LLC*, No. 218CV434FTM38MRM, 2019 WL

6  1980123, at *1 (M.D. Fla. Mar. 28, 2019). In doing so, the court in *Gibbs* focused on the

7  *dissimilarities* of the Amazon drivers irrespective of the material similarities between them

8  and the procedural challenges—the exact scenarios the Ninth Circuit indicated should not

9  defeat collective treatment when presented with a common issue. *See generally*, *Gibbs*, 2019

10 WL 1980123; *Campbell*, 903 F.3d at 1114 (holding "[i]f the party plaintiffs' factual or legal

11 similarities are material to the resolution of their case, dissimilarities in other respects should

12 not defeat collective treatment," and rejecting Eleventh Circuit's approach because "it

13 inadequately accounts for the meaning of 'similarly situated' in the FLSA context and

14 improperly sanctions the decertification of collective actions the district court finds

15 procedurally challenging").

16     The standard applicable to the inquiry in *this* matter is the Ninth Circuit's standard as

17 in *Campbell*. 903 F.3d at 1114. The Middle District of Florida's decision in *Gibbs* embodies

18 most, if not all, of the pitfalls that the Ninth Circuit sought to avoid when it defined the

19 standard within this circuit. Applying the proper Ninth Circuit's standard, it is clear Plaintiff has

20 met his burden and notice is due to issue.

21                                **III.  CONCLUSION**

22     Based on the foregoing, Plaintiff has presented evidence that the proposed class he

23 seeks to represent is similarly situated. At this stage, that is all that is required. Should the

24 Court decide that notice to the proposed class is appropriate, Plaintiff respectfully requests

25 that the parties be permitted to confer with regard to the form and dissemination of notice.

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    RESPECTFULLY SUBMITTED AND DATED this 25th day of May, 2020.

2                                    TERRELL MARSHALL LAW GROUP PLLC

3

4                          By:    /s/ Toby J. Marshall, WSBA #32726

5                                 Beth E. Terrell, WSBA #26759
                                  Email: bterrell@terrellmarshall.com
6                                 Toby J. Marshall, WSBA #32726
                                  Email: tmarshall@terrellmarshall.com
7                                 936 North 34th Street, Suite 300
                                  Seattle, Washington 98103-8869
8                                 Telephone: (206) 816-6603
                                  Facsimile: (206) 319-5450
9

10                                Andrew R. Frisch, *Admitted Pro Hac Vic*
                                  Email: afrisch@forthepeople.com
11                                Paul M. Botros, *Admitted Pro Hac Vice*
                                  Email: pbotros@forthepeople.com
12                                MORGAN & MORGAN, P.A.
                                  8151 Peters Road, Suite 4000
13                                Plantation, Florida 33324
                                  Telephone: (954) WORKERS
14                                Facsimile: (954) 327-3013
15

16                                *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE

I, Toby J. Marshall, hereby certify that on May 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan D. Redekopp, WSBA #36853
Email: ryan.redekopp@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: (206) 623-7580
Facsimile: (206) 623-7022

Richard Rosenblatt, *Admitted Pro Hac Vice*
Email: richard.rosenblatt@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey 08540-6241
Telephone: (609) 919-6600
Facsimile: (609) 919-6701

Christopher K. Ramsey, *Admitted Pro Hac Vice*
Email: christopher.ramsey@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, Pennsylvania 15219-6401
Telephone: (412) 560-3300
Facsimile: (412) 560-7001

*Attorneys for Defendants*

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS
UNDER 29 U.S.C. § 216(B) - 13
CASE NO.: 2:19-CV-01613-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    DATED this 25th day of May, 2020.

2                                     TERRELL MARSHALL LAW GROUP PLLC

3

4                                     By:   /s/ Toby J. Marshall, WSBA #32726

5                                           Toby J. Marshall, WSBA #32726
                                            Email: tmarshall@terrellmarshall.com
6                                           936 North 34th Street, Suite 300
                                            Seattle, Washington 98103-8869
7                                           Telephone: (206) 816-6603
                                            Facsimile: (206) 319-5450
8

9                                     *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S PREDISCOVERY MOTION
FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS
UNDER 29 U.S.C. § 216(B) - 14
CASE NO.: 2:19-CV-01613-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# — APPENDIX  A —

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**06-80505-CIV-PAINE/JOHNSON**

BARRY ADRIAN REESE, on his own behalf
and others similarly situated,

       Plaintiff,

v.

KIMBERLY CREDIT COUNSELING, INC.,
a Florida corporation, and TIMOTHY QUINN,
individually,

       Defendants.

_____/

**<u>OMNIBUS ORDER</u>**

**THIS CAUSE** is before the Court on the following motions: (1) Defendants'

Motion to Strike Plaintiff's Notification of 90-Day Expiring and for Ripeness for Ruling

(D.E. # 67); (2) Defendants' Motion to Strike Plaintiff's Claim for a Collective Action

And/Or Stay of Collective Action Proceedings Based Upon Newly Discovered

Evidence (D.E. #35); and (3) Plaintiffs' Motion for Order Permitting Court Supervised

Notice to Employees of their Opt-In Rights (D.E. # 10).  Having reviewed the pleadings

filled incident to this matter and being otherwise duly advised in the premises, it is

hereby

      **ORDERED AND ADJUDGED** as follows:

      (1) Defendants' Motion to Strike Plaintiff's Notification of 90-Day Expiring and

for Ripeness for Ruling (D.E. # 67) is **DENIED AS MOOT**, by virtue of this Court's Order granting Plaintiffs' Motion for Order Permitting Court Supervised Notice to Employees of their Opt-In Rights (D.E. # 68);

(2)  Plaintiffs' Motion for Order Permitting Court Supervised Notice to Employees of their Opt-In Rights (D.E. # 10) is **GRANTED,** in accordance with the undersigned's Order of November 21, 2006, on D.E. # 22, permitting such court supervised notice; and

(3)  Defendants' Motion to Strike Plaintiff's Claim for a Collective Action And/Or Stay of Collective Action Proceedings Based Upon Newly Discovered Evidence (D.E. #35) is **DENIED**.  The Court views the motion as an impermissible surreply to Plaintiff's Motion for an Order permitting Court Supervised Notice to Employees of their Opt-In Rights.

        **DONE  AND ORDERED** this 4th day of December, 2006, in Chambers, at Fort Pierce, Florida.

_____

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

CC:   Hon. James L. Paine
      All Counsel of Record

FILED by _DGD_ D.C.
ELECTRONIC

**Jul 13 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:06-80505-CIV-PAINE/JOHNSON

BARRY ADRAIN REESE, on his own
behalf and others similarly situated,

     Plaintiff,

v.

KIMBERLY CREDIT COUNSELING, INC.,
a Florida corporation,  and
TIMOTHY QUINN, individually,

     Defendants.

_____/

## PLAINTIFF'S MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS

     Plaintiff, BARRY ADRAIN REESE, by and through the undersigned counsel and pursuant to the Federal Rules of Civil Procedure and Local Rules for the Southern District of Florida, hereby requests the entry of an Order permitting under Court supervision notice to all current and former credit counselors/credit advisors who did not receive time and one half of their regular wages for all hours worked in excess of Forty (40) in a work week of their opt-in rights and states:

     1.    Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.

     2.    As stated in Plaintiff's Complaint, the allegations of which are incorporated herein

1

by reference, Plaintiff was an employee of Defendants, KIMBERLY CREDIT COUNSELING, INC.,

a Florida corporation, and TIMOTHY QUINN, individually (hereinafter collectively referred to as

"KIMBERLY CREDIT"), and is authorized by the FLSA to sue in his own name on behalf of

himself and other employees similarly situated.  The named Plaintiff was a credit counselor/credit

advisor employed by Defendants who has brought this action on behalf of all similarly situated

employees of Defendants who worked overtime hours within the last three (3) years and did not

receive "time and a half" wages for all of their overtime hours worked.[1]  Specifically, the employer,

KIMBERLY CREDIT, required its credit counselors/credit advisors to perform "off the clock" work,

including weekend work, postliminary work, and preliminary hours worked without crediting all

such hours worked, and as a result of these practices, Plaintiff and the other similarly situated

employees were not compensated at time and one half of their regular rates of pay for all of their

overtime hours worked.  These same compensation practices applied to all of Defendants' credit

counselors/credit advisors.

     3.     On June 16, 2006, Brian Keith, another employee who worked as a credit

counselor/credit advisor for KIMBERLY CREDIT in the past three (3) years, filed a written Consent

to Join this action.  This Opt-In Plaintiff also worked overtime hours for Defendants but did not

receive "time and a half" wages for all such overtime hours worked. Thereafter, on June 10, 2006,

Charles Thomas Bazier Jr. filed his consent to join this case as well.  Thus, since the filing of this

Complaint, two other credit counselors/advisors have opted-in to this matter.

---

[1] In light of the fact that the statute of limitations continues to run for all similarly situated employees until they actually file their notice of consent to join, and because Plaintiff has pled Defendants' violation to be willful in this case, see Complaint ¶ ¶ 15 and 17, the applicable Statute of Limitations for this action, as set forth in 29 U.S.C. §255, is three (3) years.

4.      Plaintiff avers that the existence of the above-referenced Opt-In Plaintiffs demonstrate the desire of current and/or former employees of KIMBERLY CREDIT to join the instant case. Additionally, within the past year there has been at least one *other* civil action brought against the same Defendant, KIMBERLY CREDIT COUNSELING, INC., for its failure to credit all overtime hours worked. See, David Rosenberg v. KIMBERLY CREDIT COUNSELING, INC., Case No. 05-80797-CIV-RYSKAMP/Vituanc. The undersigned counsel was also counsel of record in the earlier case against KIMBERLY CREDIT for the same FLSA violations. That matter was resolved.

5.      Since the resolution of the Rosenberg v. KIMBERLY CREDIT COUNSELING, INC. case, at least **Three (3) other former credit counselors/credit advisors** employed by Defendants have filed written Consents to Join in order to pursue KIMBERLY CREDIT for its continued failure to pay its employees for their overtime hours worked in violation of their right to overtime compensation as mandated by the FLSA.

6.      Plaintiff's and Opt-in Plaintiffs' claims herein are typical of the claims of other credit counselors/credit advisors employed by KIMBERLY CREDIT, and typical of the claims of all members of the representative class described below.  See also, Mr. Reese's and Mr. Keith's Affidavit ¶¶ 6-9, which are filed in support of this Motion.

7.      The representative class consists of all credit counselors/credit advisors employed by KIMBERLY CREDIT who have worked overtime hours and did not receive "time and a half" wages for all such overtime hours worked between May 2003 and the present.

8.      KIMBERLY CREDIT has acted and/or refused to act on grounds generally applicable to all credit counselors/credit advisors, thereby making the same relief appropriate with respect to

3

their current and former employees as a whole.

9.    The common questions of law and fact predominate over any questions affecting only the three (3) Plaintiffs (named Plaintiff plus two Opt-in Plaintiffs) who have already joined this case, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the employees herein described and the named Defendants.

10.    Although the current and former employees of KIMBERLY CREDIT are identified and certain, the individual members thereof cannot be completely identified except by access to Defendants' books and records.

WHEREFORE, Plaintiff, BARRY ADRAIN REESE, respectfully requests that the Court permit and supervise notice to all current and former credit counselors/credit advisors who were employed by KIMBERLY CREDIT between May 2003 and the present and who were not paid overtime compensation for all of their hours worked in excess of Forty (40) hours per week.

Dated: July 13, 2006          Respectfully submitted,
Boca Raton, Florida

                              **s/MAGUENE DIEUDONNE**
                              Maguene Dieudonne, Esq.
                              Florida Bar No. 0591361
                              Gregg I. Shavitz, Esq.
                              Florida Bar No. 11398
                              E-mail: mdieudonne@shavitzlaw.com
                              SHAVITZ LAW GROUP, P.A.
                              7800 Congress Avenue, Suite 108
                              Boca Raton, Florida 33487
                              Telephone: (561) 447-8888
                              Facsimile: (561) 447-8831
                              Attorneys for Plaintiff

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and U.S. Mail on July 13, 2006 on all Parties of record on the  service list below.

s/MAGUENE DIEUDONNE
Maguene Dieudonne, Esq.

## SERVICE LIST

CASE NO.:06-80505-CIV-PAINE/JOHNSON

Christopher Whitelock, Esq.
Fla. Bar No.: 0067539
Whitelock & Associates, PA
E-mail: cjwhitelock@bellsouth.net
300 SE 13th Street
Ft. Lauderdale, FL 33316
Telephone: 954-981-9988
Facsimile: 954-981-9980
Attorneys for Defendants

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:06-80505-CIV-PAINE/JOHNSON

BARRY ADRAIN REESE, on his own
behalf and others similarly situated,

     Plaintiff,

v.

KIMBERLY CREDIT COUNSELING, INC.,
a Florida corporation,  and
TIMOTHY QUINN, individually,

     Defendants.
_____/

### ORDER GRANTING PLAINTIFF'S
### MOTION TO ALLOW NOTIFICATION TO POTENTIAL CLASS MEMBERS

     ORDERED AND ADJUDGED that Plaintiff's Motion to Allow Notification to Potential

Class Members be and hereby is GRANTED. Defendants, KIMBERLY CREDIT COUNSELING,

INC., a Florida corporation, and TIMOTHY QUINN, individually, shall provide to Plaintiff's

counsel, the name, address, dates of employ, and telephone number of all similarly situated

employees (current and former credit counselors/credit advisors who worked for KIMBERLY

CREDIT between May 2003 and the present) within ten (10) days of the date of this Order.  After

Plaintiff receives such information from Defendants, Plaintiff is authorized to give notice to the

similarly situated employees.

     The notice shall be in the form of Exhibit "A" attached to Plaintiff's Memorandum, shall be

mailed via first class mail to each individual to whom a notice must be provided pursuant to this

Order, shall be made at the sole cost and expense of Plaintiff and shall allow each individual up to

6

Sixty (60) days in which to file their Notice of Consent, in the form of Exhibit "B" attached to

Plaintiff's Memorandum.

DONE AND ORDERED in Chambers in West Palm Beach, Florida this _____ day of

_____ 2006.

_____
HONORABLE JUDGE JAMES C. PAINE
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Maguene Dieudonne, Esq., 7800 Congress Avenue, Suite 108, Boca Raton, FL 33487 (Tel: 561-447-8888; Fax: 561-447-8831)
Christopher J. Whitelock, Esq., 300 SE 13th Street, Fort Lauderdale, FL 33316 (Tel: 954-463-2001; Fax:  954-0410)

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:06-80505-CIV-PAINE/JOHNSON

BARRY ADRAIN REESE, on his own
behalf and others similarly situated,

     Plaintiff,

v.

KIMBERLY CREDIT COUNSELING, INC.,
a Florida corporation,  and
TIMOTHY QUINN, individually,

     Defendants.

_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS

     Plaintiff, BARRY ADRAIN REESE, by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure and Local Rules for the Southern District of Florida, hereby submit this Memorandum of Law in support of his Motion for an Order Permitting Court Supervised Notice to Employees of their Opt-In Rights and states:

     This is an action alleging overtime violations under the Fair Labor Standards Act of 1938 (hereinafter "the Act").  The Act at §216(b) authorizes employees to bring an action under the Act on behalf of themselves and others similarly situated.  29 U.S.C. §216(b).

     Section 216(b) entitled, Damages; Right of Action; Attorney's Fees and Costs; Termination of Right of Action, provides in part:

> Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees  affected in the

1

amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of §15(a)(3) of this Act shall be liable for the legal or equitable relief as may be appropriate to effectuate the purposes of §15(a)(3), including without limitation employment, reinstatement, promotion and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the proceeding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. **No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.**

29 U.S.C. §216(b) (emphasis added).

As stated by Plaintiff's Complaint, the allegations of which are incorporated herein by reference, Plaintiff was employed as a credit counselor/credit advisor by Defendants, KIMBERLY CREDIT COUNSELING, INC., a Florida corporation, and TIMOTHY QUINN (hereinafter collectively referred to as "KIMBERLY CREDIT" or "Defendants") and alleges that Defendants' compensation practices violated the Fair Labor Standards Act. See also, Mr. Reese's and Mr. Keith's Affidavit ¶¶ 6-9. Specifically, KIMBERLY CREDIT, required its credit counselors/credit advisors to perform "off the clock" work, including weekend work, postliminary work, and preliminary hours worked without compensation, and as a result of this practice, Plaintiff and the other similarly situated employees were not compensated at time and one half of their regular rates of pay for all of their overtime hours worked. See, id. Such compensation practices have adversely affected the rights of each member of this collective action. Id. at ¶¶ 8 & 9.

Plaintiff seeks Court authorization to: (a) facilitate discovery of all persons comprising the similarly situated class of employees; and (b) allow Plaintiff to give such notice as approved by the

2

Court to all class members of their rights to opt-in to this litigation by executing an appropriate consents as required by §216(b) of the Fair Labor Standards Act. Plaintiff's and Opt-in Plaintiff's, BRIAN KEITH, Affidavits attest that Defendants' credit counselors/credit advisors: (a) were permitted to work "off the clock," without being compensated at time and one-half their regular rate of pay for all of their hours worked in excess of Forty (40) per week; and (b) as a result, did not receive proper overtime compensation for their hours worked in excess of Forty (40) hours. See Mr. Reese's and Mr. Keith's Affidavit ¶¶ 6-9. Moreover, others desire to participate in this litigation as evidenced by two other employees consenting to join this litigation after its initiation, and because this same Defendant, KIMBERLY CREDIT, has been sued by at least one other former credit counselor/credit advisor over the past year for the same exact reason–Defendants' practice of paying its credit counselors/credit advisors up to forty (40) hours per week regardless of the number of overtime hours worked and permitting its credit counselors/credit advisors to perform "off the clock" work without compensating its credit counselors/credit advisors for such work at time and one half of their regular rate of pay.

Fair Labor Standards Act class actions operate much differently than typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. §216(b) of the Fair Labor Standards Act, an employee belonging to a similarly situated class of Plaintiff must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, such an employee is not bound by the outcome of the decision. This is just the opposite of the traditional Rule 23 class action in which a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

3

In <u>Hoffman-La Roche, Inc. v. Sealing</u>, 110 S. Ct. 482 (1989), the Supreme Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential Plaintiff through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential Plaintiff. <u>Id.</u> Notably, while <u>Hoffman-La Roche, Inc.</u> is an Age Discrimination and Employment Act (ADEA) case, because the ADEA incorporates the remedial provisions of the Fair Labor Standards Act, the rule of law is the same for either statute. The <u>Hoffman-La Roche, Inc.</u> decision concerned itself with the interpretation of §216(b) of the FLSA. The Supreme Court therein was presented with the issue of whether a district court may play any role in prescribing the terms and conditions of communication from the named Plaintiff to the potential members of the class on whose behalf the collective action has been brought. <u>Id.</u> In this regard, the Supreme Court held that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b) by facilitating notice to potential Plaintiff. <u>Id.</u> This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner.

Because trial court involvement in the notice process is inevitable in cases with numerous Plaintiff where written consent is required by statute, it lies within the discretion of the district court to begin its involvement early, at the point of the initial notice, rather than at some later time. <u>Id.</u> at 486. Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. <u>Id.</u> at 487. Additionally, the benefits of the class action provisions of §216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the <u>collective action</u> so they can make informed decisions

4

about whether to participate." Id. at 486.

The question of notification in an FLSA class action arose again in Dybach v. State of Florida, Department of Corrections, 942 F.2d 1562 (11th Cir. 1991), where the Eleventh Circuit found that an adult probation officer was not exempt and therefore was entitled to overtime compensation for all hours worked over Forty (40). Id. The Eleventh Circuit also held in Dybach that the district court had authority to issue an order requiring notice to "similarly situated" employees of the defendant affording them the opportunity to "opt-in." Moreover, the Eleventh Circuit recently joined the Fifth and Ninth Circuits in recommending that courts utilize a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. 216(b). See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (stating that the two-tiered approach "appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases.").

Under this two-tiered approach, the Court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. Id. at 1218. Because the Court has minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard and typically results in conditional certification of a representative class. Id. Thereafter, a second, more rigorous factual determination is made as to whether the potential opt-in Plaintiff are similarly situated. Id.

In the instant case, there are questions of law and/or fact common to all of KIMBERLY CREDIT's credit counselors/credit advisors. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. §216(b), Plaintiff need only demonstrate that the defined class is comprised

5

of employees who are similarly situated to Plaintiff with regard to Defendants' payroll practices and record keeping requirements. 29 U.S.C. §216(b); Dybach, 942 F.2d at 15.   There is no requirement of "strict symmetry" or "absolute identity"; rather potential class members must meet only a "sufficiently similar" standard.  Glass v. IDS Financial Services, Inc., 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class).

Plaintiff has satisfied the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist through the record evidence submitted by Plaintiff in support of this Motion.  Accordingly, the record demonstrates the existence of similarly situated employees of KIMBERLY CREDIT.

In the instant case, a collective action (as they are termed under the FLSA) is sought because KIMBERLY CREDIT has acted or refused to act on grounds generally applicable to the class (the current and former credit counselors/credit advisors who were not properly compensated for all of their hours worked in excess of Forty (40) during one or more work weeks as a result of Defendant's compensation system) thereby making appropriate the same relief with respect to the class as a whole.  As evidenced by the attached Affidavits of the named Plaintiff and Opt-in Plaintiff, Defendant has failed to pay its credit counselors/credit advisors for all of their hours worked in excess of Forty (40) during one or more work weeks, which includes failing to properly credit weekend hours worked, and hours worked before and after scheduled work times.  As a result, Plaintiff and the other employees similarly situated were not compensated at the rate of "time and a half" for each of their hours worked in excess of Forty (40) in one or more work weeks within the three (3) year statute of limitations.

6

Additionally, questions of law or fact common to all employees who worked for KIMBERLY CREDIT predominate over any questions affecting only individual members. Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

In conclusion, Plaintiff seeks Court authorization to provide: (1) the proposed "Notification" letter, attached hereto as Exhibit A, to be sent to all similarly situated employees (all credit counselors/credit advisors employed within the three year statute of limitations period); and (2) the proposed "Notice of Consent to Join" form, attached hereto as Exhibit B, which similarly situated employees could complete, sign, and thereafter file with the Court.

WHEREFORE, Plaintiff, BARRY ADRAIN REESE, requests an Order permitting and supervising notice to current and former credit counselors/credit advisors of KIMBERLY CREDIT COUNSELING, INC. and TIMOTHY QUINN who are similarly situated of their "opt-in" rights.

Dated: July 13, 2006
Boca Raton, Florida

Respectfully submitted,

**s/MAGUENE DIEUDONNE**
Maguene Dieudonne, Esq.
Florida Bar No. 0591361
Gregg I. Shavitz, Esq.
Florida Bar No. 11398
E-mail: mdieudonne@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
7800 Congress Avenue, Suite 108
Boca Raton, Florida 33487
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
Attorneys for Plaintiff

7

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and U.S. Mail on July 13, 2006 on all Parties of record on the  service list below.

**s/MAGUENE DIEUDONNE**
Maguene Dieudonne, Esq.

### SERVICE LIST

CASE NO.:06-80505-CIV-PAINE/JOHNSON

Christopher Whitelock, Esq.
Fla. Bar No.: 0067539
Whitelock & Associates, PA
E-mail: cjwhitelock@bellsouth.net
300 SE 13th Street
Ft. Lauderdale, FL 33316
Telephone: 954-981-9988
Facsimile: 954-981-9980
Attorneys for Defendants

8

**"EXHIBIT A"**
**NOTIFICATION TO POTENTIAL CLASS MEMBERS**

TO:       All persons who have been employed as credit counselors/credit advisors by
          KIMBERLY CREDIT COUNSELING, INC. between May 2003 and the present

RE:       Right to Opt-In to Lawsuit to Recover Unpaid Overtime Wages

DATE:     July ____, 2006

## I.      INTRODUCTION

This letter contains important information concerning your rights under the Fair Labor Standards Act as a result of your current or former employment with KIMBERLY CREDIT COUNSELING, INC. as a credit counselor/credit advisor.

## II.     DESCRIPTION OF THE LAWSUIT

A lawsuit has been filed in the United States District Court for the Southern District of Florida by BARRY ADRAIN REESE, the Plaintiff, on his own behalf and others similarly situated, versus KIMBERLY CREDIT COUNSELING, INC.  The case number of that Case is No.: 06-80505-CIV-PAINE/JOHNSON.  The Plaintiff alleges that during his employment, he was not paid for his overtime hours worked because his employer, KIMBERLY CREDIT COUNSELING, INC., did not compensate him at the rate of time and one-half his regular rate of pay for all of his hours worked in excess of Forty (40) per week including weekend work, or time worked both before and/or after his or her scheduled hours.  To date, MR. REESE, and two (2) other former employees are suing KIMBERLY CREDIT COUNSELING, INC. to recover compensation for the hours worked by them in excess of Forty (40) hours per work week.

## III.    YOUR RIGHT TO JOINT THIS LAWSUIT

If you are currently or have been employed by KIMBERLY CREDIT COUNSELING, INC. since May 2003 as a credit counselor/credit advisor and you believe you were not paid time and one-half wages for all hours which you worked in excess of Forty (40) hours worked during any work week, you may make a claim to recover your unpaid overtime wages, liquidated (or double) damages, and the costs and attorneys' fees of this suit.

IF YOU WISH TO MAKE A CLAIM for not being paid time and one-half for all hours you worked in excess of Forty (40) during any work week between May 2003 and the present, you must sign the form which is entitled "Notice of Consent to Join," which is attached to this notice, and mail it to the United States District Court for the Southern District of Florida, attention Clerk of the Court, 701 Clematis Street, West Palm Beach, FL 33401, or you may contact Maguene Dieudonne, Esq. and/or Gregg I. Shavitz, Esq., counsel for Plaintiff, at (561) 447-8888 or mdieudonne@shavitzlaw.com, for assistance in doing so.  The Notice of Consent to Join must be received by the Clerk not later than _____, 2006.  A self-addressed, stamped envelope has been provided for your return of this form.

### IV.    LEGAL REPRESENTATION IF YOU JOIN THE SUIT

MR. REESE and the other Opt-In Plaintiffs who initiated this lawsuit are represented by The Shavitz Law Group, P.A., Gregg I. Shavitz, Esq. and Maguene Dieudonne, Esq., 7800 Congress Avenue, Suite 108, Boca Raton, Florida 33487, Telephone Number (561) 447-8888, E-mail address: mdieudonne@shavitzlaw.com. You may contact Mr. Shavitz or Ms. Dieudonne for more information or assistance if you wish to do so.

### V.    THE LEGAL EFFECT OF JOINING THIS SUIT

If you choose to join this suit, you will be bound by the judgment, whether it is favorable or unfavorable, or any settlement of this action.  While the suit is proceeding, you may be required to provide information, appear for a deposition, and/or testify in Court.  This notice and its contents have been authorized by the Federal District Court, the Hon. Judge James C. Paine.   The Court has taken no position regarding the merits of the Plaintiffs' claims or of the Defendant's defenses.

### VI.    THE LEGAL EFFECT OF *NOT* JOINING THE SUIT

If you do not sign the "Notice of Consent to Join" form and file it with the Clerk of the Court, you will not be allowed to recover any overtime wages from this case if any of the Plaintiffs prevail in this action.  This Notice is only for the purpose of determining the identity of those persons who wish to be involved in this case and has no other purpose.  There is no assurance at this time that the Court will grant any relief or, if granted, the nature or amount of the relief.

### VII.    NO RETALIATION OR DISCRIMINATION PERMITTED

Federal law prohibits KIMBERLY CREDIT COUNSELING, INC. and anyone acting on the Company's behalf from discriminating or retaliating against you for taking part in this case.  If you believe that you have been penalized, discriminated against or in any way disciplined or punished, or if you have been threatened or intimidated in any way as a result of your receiving this notification, your considering whether to complete and submit the Notice of Consent or your having submitted the "Notice of Consent to Join," you should contact either the Shavitz Law Group or the Clerk of the Court immediately.

Maguene Dieudonne, Esq.
Gregg I. Shavitz, Esq.
SHAVITZ LAW GROUP, P.A.
7800 Congress Avenue, Suite 108
Boca Raton, Florida 33487
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
E-mail: mdieudonne@shavitzlaw.com
E-mail: gshavitz@shavitlaw.com
Website: www.shavitzlaw.com

**Exhibit "B"**
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:06-80505-CIV-PAINE/JOHNSON

BARRY ADRAIN REESE, on his own
behalf and others similarly situated,

      Plaintiff,

v.

KIMBERLY CREDIT COUNSELING, INC.,
a Florida corporation,  and
TIMOTHY QUINN, individually,

      Defendants.

_____/

### <u>NOTICE OF CONSENT TO JOIN PURSUANT TO 29 U.S.C. §216(b)</u>

1.    I hereby consent, agree, and to become a Plaintiff in the lawsuit brought under the Fair Labor Standards Act, 29 U.S.C. §201, et seq., to recover unpaid overtime compensation from my current/former employer, KIMBERLY CREDIT COUNSELING, INC.

2.    I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.  I further agree to be bound by any settlement herein approved by my attorneys and approved by the Court as fair, adequate, and reasonable.

3.    I hereby designate the Shavitz Law Group, P.A. to represent me in this action.

_____   _____   _____
DATE      PRINT NAME      SIGNATURE

_____
STREET ADDRESS      CITY, STATE      ZIP CODE

_____   _____   _____
DAYTIME TEL. NO.      EVENING TEL. NO..      E-MAIL ADDRESS

TO BE EFFECTIVE, THIS NOTICE OF CONSENT MUST BE FILED WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, 701 CLEMATIS STREET, WEST PALM BEACH, FL  33401  FOR YOUR CONVENIENCE, AN ENVELOPE PROPERLY ADDRESSED TO SUCH COURT HAS BEEN PROVIDED TO YOU.

# — APPENDIX  B —

1   William T. Payne (SBN 90988)                    Ira Spiro (SBN #67641)
    Ellen M. Doyle (PA Bar #21854)                  Jennifer Connor (SBN #241480)
2   (admitted *pro hac vice*)                       **Spiro Moore LLP**
    Edward J. Feinstein (PA Bar #29718)             11377 W. Olympic Boulevard, 5th Fl.
3   (admitted *pro hac vice*)                       Los Angeles, CA 90064
     **Feinstein Doyle Payne**                      310-235-2468
4      **& Kravec, LLC**                            310-235-2456
    429 Forbes Avenue, 17th Floor                   ira@spiromoore.com
5   Pittsburgh, PA   15219                          jennifer@spiromoore.com
    412-281-8400 (T)
6   412-281-1007 (F)
    wpayne@fdpklaw.com
7   edoyle@fdpklaw.com
    efeinstein@fdpklaw.com
8
    Mark A. Potashnick (MO Bar #41315)
9   (Admitted *Pro Hac Vice*)
    **Weinhaus & Potashnick**
10  11500 Olive Boulevard, Suite 133
    St. Louis, MO  63141
11  314-997-9150(T)
    314-997-9170 (F)
12  markp@wp-attorneys.com

13  Attorneys for Plaintiff
    CHRISTOPHER OTEY

14
                        UNITED STATES DISTRICT COURT
15                     NORTHERN DISTRICT OF CALIFORNIA
                          SAN FRANCISCO DIVISION
16
    CHRISTOPHER OTEY, on behalf of himself      ) Case No. C 12-5524 JST
17  and all others similarly situated,          )
                                                ) Judge:  Hon. Jon. S. Tigar
18              Plaintiff,                       )
                                                ) **PLAINTIFFS' REPLY IN SUPPORT**
19         v.                                    ) **OF MOTION FOR CONDITIONAL**
                                                ) **COLLECTIVE ACTION CERTIFI-**
20  CROWDFLOWER, INC., LUKAS BIEWALD,           ) **CATION AND DISSEMINTION OF**
21  and CHRIS VAN PELT,                         ) **NOTICE PURSUANT TO 29 U.S.C.**
                                                ) **216(b)**
                                                )
22              Defendants.                      )    **DATE: August 2, 2013**
                                                )    **TIME: 2:00 p.m.**
23                                              )    **COURTROOM:  9**
                                                )
24  _____ )
25
26
27
28

                                     1

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3  I.   Introduction………………………………………………………..  1

4  II.  Response to Defendants' Statement of Facts……………………...  1

5  III. Procedural and Discovery History………………………………..  4

6  IV. Legal Standard for Conditional Certification……………………..  5

7  V.  Reply Arguments…………………………………………………  6

8        A. Defendants' Arguments on the Merits
           Should Be Rejected…………………………………………  6
9
           1.  Similarity of Job Requirements………………………..  7
10
           2.  Similarity of Manner of Performing the Job……………  7
11
           3.  Similarity of Pay………………………………………..  8
12
           4.  Defendants' Assertions of Individualized
13              Inquiries Regarding Wage Rates………………………..  9

14         5.  The *De Minimis* Defense………………………………..  10

15         6.  Substantiality of Plaintiffs' Evidence…………………..  11

16       B.  No Showing of Interest is Needed………………………….  13

17       C.  Form of the Notice…………………………………………  14

18       D.  Cost of Notice……………………………………………..  16

19       E.  Other Notice Issues………………………………………..  18

20  VI. Conclusion………………………………………………………  18

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFIATION AND
DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

1

**TABLE OF AUTHORITIES**

2

**CASES**                                                              **PAGE**

3

*Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530 (N.D. Cal.

4
Apr. 11, 2007))……………………………………………………… 5

*Allen v. City of Chi.*, 2013 U.S. Dist. LEXIS 5394 (N.D. Ill.

5
Jan. 14, 2013)……………………………………………………... 11

6
*Allen v. Woodford*, 2007 U.S. Dist. LEXIS 11026 (E.D.
Cal. Jan. 30, 2007)………………………………………………... 15

7

*Allerton v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS

8
132454 (D. Nev. Nov. 16, 2009)…………………………………… 16

9
*Beauperthuy v. 24 Hour Fitness*, 772 F.Supp.2d 1111
(N.D. Cal. 2011)…………………………………………………… 9

10

*Bouphakeo v. Tyson Foods*, 564 F.Supp.2d 870 (N.D.

11
Iowa 2008)………………………………………………………… 11

12
*Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676
(D. Kan. 2004)……………………………………………………… 9

13

*Browning v. Yahoo! Inc.*, 2006 U.S. Dist. LEXIS

14
100686 (N.D. Cal. Dec. 27, 2006)…………………………………… 15

15
*Burch v. Qwest Commun's. Int'l.*, 677 F.Supp.2d
1101 (D. Minn. 2009)………………………………………………… 11

16

*Butler v. DirectSat USA, LLC*, 876 F.Supp.2d 560

17
(D. Md. Apr. 10, 2012)……………………………………………… 15

18
*Carrillo v. Schneider Logistics, Inc.*, 2012 U.S. Dist.
LEXIS 26927 (C.D. Cal. Jan. 31, 2012)…………………………… 13-14, 16, 17

19

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)…………………………… 11

20

*Daniels v. Aeropostale West*, 2013 U.S. Dist. LEXIS

21
59514 (N.D. Cal. Apr. 24, 2013)…………………………………… 17

22
*Davis v. Social Serv. Coordinators, Inc.*, 2012 U.S.
Dist. LEXIS 155559 (E.D. Cal. Oct. 30, 2012)…………………… 13

23

*Davis v. Westgate Planet Hollywood Las Vegas*,

24
2009 U.S. Dist. LEXIS 5941 (D. Nev. Jan. 12, 2009)……………… 14

25
*Deane v. Fastenal Co.*, 2013 U.S. Dist. LEXIS 25631
(N.D. Cal. Feb. 25, 2013)…………………………………………… 7

26

*Delgado v. Ortho-McNeil*, 2007 U.S. Dist. LEXIS 74731

27
(C.D. Cal. Aug. 6, 2007)…………………………………………… 14

28
*Escobar v. Whiteside Constr. Corp.*, 2008 U.S. Dist.
LEXIS 68439 (N.D. Cal. Aug. 21, 2008)…………………………… 11

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770
(7th Cir. Feb. 4, 2013)……………………………………………  8

*Fenn v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS
69398 (D. Idaho May 17, 2012)……………………………………  13, 14

*Flores v. Velocity Express, Inc.*, 2013 U.S. Dist. LEXIS
77821 (N.D. Cal. Jun. 3, 2013)……………………………………  passim

*Gerlach v. Wells Fargo & Co.*, 2006 U.S. Dist. LEXIS
24823 (N.D. Cal. Mar. 28, 2006)……………………………………  6

*Gieseke v. First Horizon Home Loan Corp.*, 408
F.Supp.2d 1164 (D. Kan. Jan. 10, 2006)………………………………  9

*Gomez v. H&S Gunlund Ranches, Inc.*, 2010 U.S. Dist.
LEXIS 137736 (E.D. Cal. Dec. 16, 2010)………………………………  14

*Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996
(N.D. Cal. Nov. 5, 2010)……………………………………………  4, 10, 13, 14

*Hoffman v. Securitas Sec. Servs.*, 2008 U.S. Dist. LEXIS
123883 (D. Idaho Aug. 27, 2008) ……………………………………  14

*Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989)……………………  14

*Jones v. JGC Dallas LLC*, 2012 U.S. Dist. LEXIS
185042 (N.D. Tex. Nov. 29, 2012)……………………………………  16

*Juvera v. Salcido*, 2013 U.S. Dist. LEXIS 48867
(D. Ariz. Apr. 4, 2013)……………………………………………  16

*Kautsch v. Premier Commun's.*, 504 F.Supp.2d
685 (W.D. Mo. 2007))……………………………………………  16

*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir. 1977)………………  14

*Kress v. PriceWaterhouseCoopers*, 263 F.R.D. 623
(E.D. Cal. 2009)……………………………………………………  6

*Lagarde v. Support.com, Inc.*, 2013 U.S. Dist. LEXIS
42725 (N.D. Cal. Mar. 26, 2013)……………………………………  15

*Lewis v. Nev. Property 1, LLC*, 2013 U.S. Dist.
LEXIS 8945 (D. Nev. Jan. 22, 2013)…………………………………  13

*Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124
(N.D. Cal. 2009)……………………………………………………  5, 15

*Lindow v. U.S.*, 738 F.2d 1057 (9th Cir. 1984)……………………………  11

*Luque v. AT&T Corp.*, 2010 U.S. Dist. LEXIS
126545 (N.D. Cal. Nov. 19, 2010)……………………………………  1, 10, 13, 17

*Luethold v. Destination Am., Inc.*, 224 F.R.D. 462
(N.D. Cal. 2004)……………………………………………………  5

*Mowdy v. Beneto Bulk Transp.*, 2008 U.S. Dist. LEXIS 26233 (N.D. Cal. Mar. 31, 2008)………………………………………… 13, 16

*Mumbower v. Callicott*, 526 F.2d 1183 (8th Cir. 1975)…………………………… 10

*Musarra v. Digital Dish, Inc.*, 2008 U.S. Dist. LEXIS 110003 (S.D. Ohio Mar. 24, 2008)……………………………………….. 12

*Nicholson v. UTi Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 761 (S.D. Ill. Jan. 26, 2011)…………………………………………… 12

*Nicholson v. UTi Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 49890 (S.D. Ill. May 10, 2011)………………………………………… 12

*Nguyen v. Baxter*, 275 F.R.D. 503 (C.D. Cal. 2011)……………………………… 4

*Nobles v. State* Farm, 2011 U.S. Dist. LEXIS 131448 (W.D. Mo. Nov. 15, 2011)………………………………………………… 18

*Otey v. CrowdFlower*, 2013 U.S. Dist. LEXIS 52530 (N.D. Cal. Apr. 11, 2013)………………………………………………… 10

*Otey v. CrowdFlower, Inc.*, 2013 U.S. Dist. LEXIS 65813 (N.D. Cal. May 8, 2013)………………………………………… 10

*Ramirez v. Ghilotti Bros., Inc.*, 2013 U.S. Dist. LEXIS 59497 (N.D. Cal. Apr. 25, 2013)…………………………………….. 6, 17

*Reich v. Stewart*, 121 F.3d 400 (8th Cir. 1997)………………………………… 10, 17

*Sanchez v. Sephora USA, Inc.*, 2012 U.S. Dist. LEXIS 99924 (N.D. Cal. Jul. 18, 2012)…………………………………………… 10, 13

*Santiago v. Amdocs, Inc.*, 2011 U.S. Dist. LEXIS 146126 (N.D. Cal. Dec. 19, 2011)…………………………………………… 10, 13

*Santiago v. Amdocs, Inc.*, 2012 U.S. Dist. LEXIS 85617 (N.D. Cal. Jun. 20, 2012)………………………………………………… 16

*Schlesinger v. Ticketmaster*, 2012 WL 4739283 (Sept. 2012)……………………………………………………………………… 18

*Sheffield v. Orius Corp.*, 211 F.R.D. 411 (D. Or. 2002)…………………………… 12

*Silverman v. SmithKline Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 16, 2007)……………………………… 12

*Simmons v. Adams*, 2013 U.S. Dist. LEXIS 84429 (E.D. Cal. Jun. 14, 2013)………………………………………………… 15

*Simmons v. Enterprise Hldgs.*, 2011 U.S. Dist. LEXIS 37504, *5 (E.D. Mo. Apr. 6, 2011)……………………………………… 16

*Small v. Univ. Med. Ctr. of S. Nev.*, 2013 U.S. Dist. LEXIS 84840 (D. Nev. Jun. 14, 2013)……………………………………. 9, 10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND
DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

*Smith v. Pizza Hut, Inc.*, 2012 U.S. Dist. LEXIS
56987 (D. Colo. Apr. 21, 2012)…………………………………………….. 9

*Stanfield v. First NLC Fin. Servs., LLC*, 2006 U.S.
Dist. LEXIS 98267 (N.D. Cal. Nov. 1, 2006)……………………………….. 1-2

*Stuven v. Tex. De Brazil (Tampa) Corp.*, 2013
U.S. Dist. LEXIS 22240 (M.D. Fla. Feb. 19, 2013)…………………………… 15

*Sullivan v. Kelly Servs., Inc.*, 2011 U.S. Dist. LEXIS
2189 (N.D. Cal. Jan. 5, 2011)……………………………………………….. 17

*Wren v. RGIS Inventory Specialists*, 2009 U.S. Dist.
LEXIS 74789 (N.D. Cal. Aug. 24, 2009)……………………………………… 11

**STATUTES**

29 U.S.C. § 211(c)……………………………………………………….. 10, 17

**REGULATIONS**

29 C.F.R. § 516.2…………………………………………………………….. 10, 17

29 C.F.R. § 531.27……………………………………………………….. 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFIATION AND
DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

## I.   **INTRODUCTION**

Defendants seek to over-complicate a simple issue:  have Plaintiffs presented the Court with substantial evidence that the putative class members were together the victims of a plan, policy or practice of failing to pay less than the federal minimum wage?  The answer most definitely is "yes," and Plaintiffs' Motion for Conditional Certification should be granted.

Rather than addressing the established "lenient" conditional certification standard, Defendants devote the majority of their response to inviting the Court to disavow its own  precedents by prematurely weighing the merits, resolving competing evidence, and deciding credibility.  To be sure, Plaintiffs eagerly anticipate full consideration of the merits when the time comes.  But now is not that time, and unanimous authority from this District instructs that it is improper for the trial court to impose that burden on Plaintiffs at the early conditional certification stage – before they have had the opportunity to conduct full discovery.

In their attempt to create a premature battle of the merits, Defendants actually identify many aspects of the similar treatment between workers who perform work through all of their contributor channel partners ("CCPs").  That evidence further supports conditional certification.  This Court very recently recognized that "the question at this stage is not whose evidence regarding commonality is more believable, but simply whether plaintiffs have made an adequate threshold showing."  *Flores v. Velocity Express, Inc.*, 2013 U.S. Dist. LEXIS 77821, *21 (N.D. Cal. Jun. 3, 2013) (citing cases).  This Court should grant company-wide conditional certification because Plaintiff has presented substantial evidence establishing that potential class members were victims of Defendants' company-wide decisions, policies, and plans that violated federal minimum wage requirements."  This Court should grant company-wide conditional certification for the same reasons.

## II.   **RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**

Defendants primarily devote their long recitation of facts to an attempt to engage in a premature "battle of the merits" regarding the issue of whether the workers are employees or independent contractors.  The law is clear, however, that a court may not weigh the merits at this early conditional certification stage.  *Luque v. AT&T Corp.*, 2010 U.S. Dist. LEXIS 126545, *18 (N.D. Cal. Nov. 19, 2010) (the merits are not considered at this stage); *see also, e.g., Stanfield v.*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND
DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

*First NLC Fin. Servs., LLC*, 2006 U.S. Dist. LEXIS 98267, *11 (N.D. Cal. Nov. 1, 2006) (holding

that a "fact-intensive inquiry is not required.").

      While disputing conditional certification, Defendants offer numerous assertions of fact which

actually support conditional certification.  Specifically, while Plaintiffs disagree with many of those

assertions, Defendants assertions show that they treat workers the same in all of the following

material respects:

1. "To complete a task and to be compensated in some way by their chosen Channel, Contributors must first join a Channel community, find and select a task that they wish to complete and then render 'judgments' in response to a series of questions (tasks) which are presented in units of multiple tasks" (Doc. 131, at 2) (parentheses in original);

2. "Contributors must complete a unit before they are entitled to any compensation" (*Id.*);

3. "Channels make the tasks available to people ("Contributors") who voluntarily log onto the Channel and then voluntarily identify, select and perform the tasks which are offered, on a non-exclusive basis, through the Platform" (*Id.*, at 2-3) (parentheses in original);

4. The workers "pick and choose the tasks they wish to complete and are under absolutely no obligation to even to finish a task they have started" (*Id.*, at 5);

5. The workers "are under no obligation to choose a CrowdFlower task versus those offered by other task requesters on any of the Channels" (*Id.*);

6. "CrowdFlower exercises no control over the time, place, pace, quantity and/or manner of performance by contributors" (*Id.*);

7. "CrowdFlower provides no training per se for the tasks performed other than a few sample questions to qualify the person for the task" (*Id.*, at 6);

8. "Supervision of tasks performance by CrowdFlower is virtually non-existent" (*Id.*);

9. CrowdFlower's "quality control technology is effectively used only to determine whether a Contributor is gaming the system and to measure how much trust CrowdFlower can place in the judgment made by any particular Contributor within a particular task" (*Id.*);

10. "[E]ven a Contributor who fails so many Gold Standard questions that CrowdFlower determines not to utilize their responses to other questions within the task is generally not blocked from the Platform but only from providing additional responses on the related task on the particular Channel" (*Id.*);

11. Workers "could be blocked from a particular task on one Channel but continue to perform the task on another Channel" (*Id.*);

12. "CrowdFlower cannot reliably determine time spent performing a task" (*Id.*, at 7);

13. "CrowdFlower has no way of tracking the amount of time actually spent by a Contributor performing any given task" (*Id.*);

14. "Contributors may leave the tasks open for hours or even days before they make any judgment or complete a unit" (*Id.*);

15. "Contributors may also open and accept a task and subsequently choose not to complete it" (*Id.*);

16.  "CrowdFlower has no record of the actual or even approximate time spent by any Contributor in performing a task" (*Id.*);

17.  "CrowdFlower has no involvement whatsoever in determining the type of virtual currency utilized or the valuation of that virtual currency" (*Id.*, at 8);

18.  CrowdFlower "price[s its] tasks uniformly across all channels, so that we don't favor any [channel] against any other"  (*Id.*, at 9);

19.  "Contributors can and do register on multiple Channels to view and perform CrowdFlower tasks.  By doing so, they are able to effectively shop their services to the highest bidder and/or choose the form of compensation which they choose to accept" (*Id.*);

20.  "CrowdFlower provides no incentives to Contributors, financial or otherwise, to select a particular Channel.  Contributors make this choice completely on their own" (*Id.*, 9-10);

21.  "During the relevant time period, CrowdFlower has obtained almost a billion judgments involving myriad task types … from approximately 4,000,000 Contributors through its various Channels.  (Van Pelt Decl. II, ¶ 14).  In each case, the Contributor alone selected the task to be performed as well as the Channel" (*Id.*, at 10);

22.  "Contributors are essentially compensated on something akin to a piece rate basis" (*Id.*, at 19);

23.  The workers "choose the tasks which they want to perform based upon factors which are peculiar to themselves, including the third party websites through which they access the task" (*Id.*, at 27); and

24.  The workers "are solely responsible for choosing which or how many tasks and task requesters for whom they will perform tasks" (*Id.*).

The only differences between workers which CrowdFlower actually identifies in its statement of facts are (1) whether workers perform other tasks while performing CrowdFlower's tasks, (2) whether workers have multiple windows open at the same time, and (3) the amount and method of payment.  *Id.*, at 7-8 & 18-23.  Such few purported differences are immaterial.

Defendants attempt to argue within their statement of facts that Mr. Otey's knowledge is confined to AMT.  However, they ignore the fact that Mr. Otey testified that he has viewed many of the same video-recorded admissions regarding Defendants' operations and methods that Plaintiffs have supplied to the Court.  *See, e.g.,* Ex. 31, 73:11-24.  What Defendants seek to diminish as Mr. Otey's "beliefs" (Doc. 131, at 28), are actually his knowledge gained from Defendants' multiple public representations of fact.

Defendants first produce evidence regarding other workers and CCPs with their opposition to conditional certification.  Defendants previously refused to produce that evidence in discovery.  Ex. 32, ¶¶ 4-13.  Defendants should not be permitted to cherry-pick evidence while refusing discovery

1  into the same topics.  *Id.*  Thus, Defendants' newly-disclosed evidence should be excluded.

2     **III.     PROCEDURAL AND DISCOVERY HISTORY**

3        Defendants objected to producing discovery responses regarding any CCP other than

4  Amazon Mechanical Turk ("AMT").  The parties filed a joint discovery letter.  Doc. 105.  In support

5  of company-wide discovery, Plaintiffs submitted essentially the same, but slightly less, evidence of

6  the same company-wide policies and practices which Plaintiffs submitted in support of conditional

7  certification.  *Compare* Doc. 105 (seeking company-wide discovery) *with* Doc. 46 (conditional

8  certification motion) & Doc. 129 (supplement conditional certification brief).  Judge James

9  recognized the standard for the scope of discovery:  "an FLSA plaintiff is entitled to discovery from

10 locations where he never worked if he can provide some evidence to indicate company-wide

11 violations."  Doc. 123 (citing *Nguyen v. Baxter*, 275 F.R.D. 503, 508 (C.D. Cal. 2011)).  That

12 standard is essentially the same as the conditional certification standard.  *Compare Harris v. Vector

13 Marketing Corp.*, 753 F.Supp.2d 996, 1003 (N.D. Cal. Nov. 5, 2010) (internal quotes omitted)

14 ("conditional certification requires only that plaintiffs make substantial allegations that the putative

15 class members were subject to a single illegal policy plan or decision.").  Applying essentially the

16 same standard to essentially the same evidence produced by Plaintiffs in support of conditional

17 certification, Judge James ordered Defendants to produce company-wide disclosures, encompassing

18 all Defendants' CCPs, because…

19        Here, Plaintiff has presented evidence which suggests that all CrowdFlower's
          workers perform "simple repetitive tasks;" CrowdFlower has no requirements for its
20        workers other than the ability to follow its instructions; all workers are bound by the
          same written agreement which uniformly classifies them as independent contractors
21        and specifies application of California law; CrowdFlower provides its workers
          detailed "step-by-step" instructions on how to perform the work and requires each of
22        them to complete training on each assignment before performing paid work;
          Crowdflower's computer programs and interfaces guide the workers through each
23        step of each task so that the work must be performed in accordance with
          CrowdFlower's methods and instructions; CrowdFlower chooses the "appropriate
24        work flow" to "ensure accuracy and efficiency;" CrowdFlower controls the speed /
          pace at which the work is performed; CrowdFlower uses technology to monitor the
25        workers, catch errors in their work, train them, motivate them to improve quality,
          quality control their work, and manage the quality of the worker's results;
26        CrowdFlower tracks completion of their work; and it may warn, ban, "flag" or punish
          workers who exceed its accuracy thresholds either from all jobs or specific jobs, and
27        the workers perform CrowdFlower's primary business of compiling and labeling
          large data sets.

28

1    Doc. 123, at 2.  Consistent with Judge James' ruling, conditional certification should be granted.

2          Judge James further held that "this case turns only on the alleged employment relationship

3    between Plaintiff and CrowdFlower."  *Id.*, at *5.   Accordingly, Judge James denied Defendants'

4    discovery requests seeking information about other employment of Plaintiffs "because they are not

5    likely to lead to the discovery of relevant evidence."  *Id.*  Defendants filed no timely objections to

6    that Order.  Nonetheless, Defendants then attempted to obtain the same discovery about other

7    employment and other sources of income of Plaintiffs through third-party subpoenas, more written

8    discovery, deposition testimony and threats of sanctions.  Docs. 112, 117 & 118.  Again, the parties

9    filed joint discovery letters.  *Id.*  Judge James denied all those efforts, reasoning that "[f]or the

10   reasons stated in the Court's April 11, 2013 Order, Plaintiff's other employment or receipt of other

11   income is irrelevant to the question of whether Plaintiff was Defendants' employee or whether he

12   was an independent contractor.  *See* Order at 2:19-3:7, Dkt. No. 85."  Docs. 124-126.  Still,

13   Defendants now seek to assert substantive and credibility arguments regarding Plaintiff Otey's other

14   work and income sources.  *See, e.g.,* Doc. 131, at 11.  The Court should disregard such arguments as

15   they are both beyond the scope of review on conditional certification (explained below) and

16   immaterial under Judge James' prior holdings.  Docs. 85, 124-126.

## IV.    LEGAL STANDARD FOR CONDITIONAL CERTIFICATION

17         At best, Defendants attempt to present a highly-distorted view of the standard for conditional

18   certification of FLSA claims.  This Court recently re-affirmed the actual standard in *Flores*.  "In

19   making that determination, 'the court requires little more than substantial allegations, supported by

20   declarations or discovery, that the putative class members were together the victims of a single

21   decision, policy, or plan.'"  *Id.*, 2013 U.S. Dist. LEXIS at *14 (quoting *Lewis v. Wells Fargo & Co.*,

22   669 F.Supp.2d 1124, 1127 (N.D. Cal. 2009)).  "Because the court generally has a limited amount of

23   evidence before it, the initial determination is usually made under a fairly lenient standard and

24   typically results in conditional class certification."  *Id.*, at *14-15 (citing *Luethold v. Destination*

25   *Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530,

26   536 (N.D. Cal. Apr. 11, 2007)) (recognizing "lenient" standard).

27         Defendants attempt to replace the established "lenient" conditional certification with the

28   more-stringent Rule 23 standard.  Doc. 131, at 15-16.  However, this Court recently rejected the

same effort in *Flores*, observing that "[i]n fact, courts have repeatedly rejected attempts like Velocity's to equate FLSA class actions and Rule 23 class actions because 'Congress chose not to apply the Rule 23 standards to collective actions under the ADEA and FLSA, and instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 would effectively ignore Congress' directive." *Id.,* at *17-20 (quoting *Gerlach v. Wells Fargo & Co.*, 2006 U.S. Dist. LEXIS 24823, *7-8 (N.D. Cal. Mar. 28, 2006) (quotation omitted) and citing cases)). Not only do Defendants expressly argue for a more-stringent standard, but they improperly assume application of that more-stringent standard throughout the remainder of their brief.[1]

Recently, this District re-affirmed that "courts in this Circuit overwhelmingly 'refuse to depart from the notice stage analysis prior to the close of discovery.'" *Ramirez v. Ghilotti Bros., Inc.*, 2013 U.S. Dist. LEXIS 59497, *9 (N.D. Cal. Apr. 25, 2013) (quoting *Kress v. PWC*, 263 F.R.D. 623, 629 (E.D. Cal. 2009)). To date, Defendants have largely evaded providing company wide class discovery, have failed to comply with discovery orders, delaying depositions of any defense witnesses. *See, e.g.,* Ex. 32. The depositions have been delayed because Plaintiffs' counsel need further written discovery to conduct thorough and effective depositions. *See, e.g. Id.*, ¶ 14. Defendants long refused to produce any documents or other evidence related to other putative class members, about CrowdFlower's contributor channels, or any of the defenses raised in their Answer. Of the approximately 8,700 pages of documents produced to date in the case, more than 8,000 pages were only very-recently served by regular mail on Plaintiffs' counsel on June 27, 2013. Discovery in this suit is far from complete, and therefore the early "notice stage" standard must apply.

## V.   REPLY ARGUMENTS

### A.   Defendants' Arguments on the Merits Should be Rejected

Defendants argue that Plaintiffs have not fulfilled their burden of showing grounds for conditional certification based on their erroneous reliance on a "more rigorous standard" which

---

[1] Since the inception of this suit, Defendants have consistently attempted to replace applicable Ninth Circuit law with differing Fifth and Eleventh Circuit law.

[3] Plaintiffs believe that the hourly wage pay rates are readily determinable through technology, computer forensics or other measures to be determined with or without expert assistance.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND
DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

would entail weighing the evidence.  (Doc. 131, at 16-17).  At this stage, this Court need not weigh the evidence, determine merits, and decide credibility in order to conditionally certify the class.

**1.     Similarity of Job Requirements.**

Contrary to Defendants' assertions here, Plaintiffs have provided admissions and evidence showing that the members of the putative class  perform "simple repetitive tasks."  *See, e.g.,* FAC, ¶ 8; FAA, ¶ 8 (admitting that CrowdFlower uses technology to distribute to a large work force "simple repetitive tasks" which can be better performed by human labor than computers); Suppl. (Doc. 129), Ex. 1, 2:2-6 (admitting work is "simple" and "repetitive"); Suppl., Ex. 2, 2:14-22 (admitting that the tasks "take a few minutes for basically any human being to do"); Suppl., Ex. 3 (admitting that the work is "relatively easy for a person to complete in less than five minutes"); Suppl., Ex. 4 (admitting that the work is "best suited for binary projects driving workers to a simple yes or no answer that a computer or algorithm couldn't otherwise come in."); Suppl., Ex. 6 (admitting that the workers can "zone out" while performing the work"), etc...  As Judge James expressly found, this evidence is sufficient to find that all workers similarly perform "simple repetitive tasks."  Doc. 123, at 2. Defendants' efforts to weigh competing evidence must be rejected at this early stage.

**2.     Similarity of Manner of Performing the Job**

Defendants' arguments about differences in interruptions on the job and numbers of computer windows open are immaterial.  In *Flores*, this Court recently rejected the argument that fact-intensive inquiries pertaining to the "employee / independent contractor" issue preclude conditional certification.  *Flores*, 2013 U.S. Dist. LEXIS at *20-21.  "Similarly situated" with respect to the policies alleged to violate the FLSA is not synonymous with "identical."  *Deane v. Fastenal Co.*, 2013 U.S. Dist. LEXIS 25631, *5 (N.D. Cal. Feb. 25, 2013) ("plaintiffs need not be identically situated").  Obviously, no claim could be conditionally certified if mere differences in interruptions while working could prevent conditional certification.  Defendants fail to explain how opening more than one computer window at a time affects the "employees / independent contractor" issue.  Basically, Defendants seek to over-rely on minor differences.  By contrast, Judge James already found evidence of far more similarities, and far more substantial similarities, in Defendants' treatment of workers.  Doc. 123, at 2.  As this Court recently recognized, it will later consider "'the disparate factual and employment settings of the individual plaintiffs' if and when Defendant makes

a motion to decertify." *Flores*, 2013 U.S. Dist. LEXIS at *21.

Defendants attempt to rely on *Espenscheid v. DirectSat USA, LLC*, an inapposite out-of-circuit decision which examined *decertification* at the later second stage.  705 F.3d 770 (7th Cir. Feb. 4, 2013).  In addition to applying a vastly different standard, *Espenscheid* relied on differences in unrecorded amounts of work in finding that damages cannot be mechanically determined.  As explained below, differences in damages are immaterial to conditional certification.  Likewise, defendants attempt to rely on decisions under Fed. R. Civ. P. 23, which entail a very different and more-stringent standard.  Doc. 131, at 19-20.  This Court recently recognized that even the FLSA's *second stage* standard "is different, and *easier* to satisfy, than the requirements for a class action certified under Federal Rule of Civil Procedure 23(b)(3)."  *Flores*, 2013 U.S. Dist. LEXIS at *15-16 (emphasis added).

### 3.    Similarity of Pay

Defendants do not provide any facts showing any substantial dissimilarity of pay.  Rather, they merely claim that they permit CCPs to determine pay rates.  ***Notably, Defendants do not claim that any worker earns at least the federal minimum wage***.  Meanwhile, Plaintiffs have presented ample evidence of very similar pay rates to all workers.  They have shown that Defendants maintain a written "$2.00 per hour benchmark" for pay (Exs. 25 & 26); Defendants have admitted that the workers are paid about $2.00 to $3.00 per hour (Ex. 6, 12:10-11, 13:20-25); Defendants  have admitted that the workers earn "on average around $1 to $2 an hour" (Ex. 9, 22:23-24);, Defendants are only able to identify one example of paying workers "half minimum wage" (*Id.*, 56:7-16); and Defendants have internally rejected a suggestion to pay $7.00 per hour, explaining that "[i]ts really not worthwhile to pay a BPO 7x what we pay our normal contributors" (Ex. 27).  This evidence of similar sub-minimum pay rates is far more than sufficient for conditional certification.

Defendants also try to rely on the purported difficulty of determining the value of "virtual currency" and "virtual goods," which as Defendants correctly state, entail highly-restricted use.  Doc. 131, at 3, 8.  However, that valuation is actually extremely easy under the FLSA.  "Virtual compensation" has absolutely no value whatsoever ($0.00) because the FLSA "require[s] payments of the prescribed wages … in cash or negotiable instrument payable at par."  29 C.F.R. § 531.27(a).

Thus, just like the workers receiving cash compensation, the workers earning "virtual compensation" clearly earn less than the federal minimum wage.

Plaintiffs have also shown that all the workers are paid on a piece-rate basis (Ex. 9, 37:24-25), which Defendants confirmed in their brief (Doc. 131, at 19 (admitting that "[c]ontributors are essentially compensated on something akin to a piece rate basis…")).

Again, Defendants rely on inapposite law examining the later second stage, such as *Beauperthuy v. 24 Hour Fitness,* 772 F.Supp.2d 1111, 1121-34 (N.D. Cal. 2011). Moreover, unlike here, the plaintiffs in *Beauperthuy* were unable to point to a single plan, policy or practice encouraging off-the-clock work. *Id.*, at 1125. In contrast to *Beauperthuy,* this is primarily a misclassification case, not an off-the-clock case, and Plaintiffs have presented ample evidence of the same company-wide piece-rate pay system which uniformly provides sub-minimum wages.

Moreover, differences in pay only pertain to damages, especially here as there is no evidence that any worker has actually bee paid the federal minimum wage. But, differences in damages are wholly immaterial to conditional certification. *See, e.g., Gieseke v. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1168 (D. Kan. Jan. 10, 2006) ("'Individual differences in damages are not to be considered when ruling on conditional certification and "will not defeat [conditional] class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit.'" (edit in original) (quoting *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)); *Smith v. Pizza Hut, Inc.*, 2012 U.S. Dist. LEXIS 56987, *18 (D. Colo. Apr. 21, 2012) ("The mere possibility that some members of the proposed class may have different damages (or no damages at all) is not reason to refuse to notify all potential class members in the first instance."); *see also Juvera v. Salcido*, 2013 U.S. Dist. LEXIS 48867, *14 (D. Ariz. Apr. 4, 2013) (differences in damages do not preclude Rule 23 class certification).

### 4.     Defendants' Assertions of Individualized Inquiries Regarding Wage Rates

Again, Defendants improperly seek to skip directly to the second stage by urging the Court to consider individualized inquiries. This Court recently held that the second stage determination "involves several factors, including the disparate factual and employment settings of the individual employees; the defenses available to the employer that apply to different employees differently; and fairness and procedural considerations." *Flores*, 2013 U.S. Dist. LEXIS at *15. "Thus,

individualized inquiries into each plaintiff's claims do not occur until discovery has closed." *Small v. Univ. Med. Ctr. of S. Nev.*, 2013 U.S. Dist. LEXIS 84840, *5-6 (D. Nev. Jun. 14, 2013); *see also Otey v. CrowdFlower, Inc.*, 2013 U.S. Dist. LEXIS 65813, *5 (N.D. Cal. May 8, 2013); Doc. 90, at 3; *Flores*, 2013 U.S. Dist. LEXIS at *21 (individual inquiries must await second stage).  In particular, this District has repeatedly and expressly refused to consider contentions of individualized inquiries until the second stage.  *See, e.g., Luque*, 2010 U.S. Dist. LEXIS at *12-13; *Harris*, 716 F.Supp.2d at 841-42 (collecting cases).[3]

Similarly, Defendants contend that determining the amount of work time requires individual analysis.  Defendants make that claim only because they admittedly failed to keep records of work time in accordance with the FLSA and its regulations.  29 U.S.C. § 211(c); 29 C.F.R. § 516.2.  Again, individualized inquiries are not considered at this stage.  *Small*, at *5-6; *Luque*, at *12-13; *Harris*, at 841-42.[4]

### 5.    The *De Minimis* Defense

Defendants attempt to prematurely rely on the *de minimis* defense, contending that it will entail individual inquiries.  However, this Court already recognized in this suit that individualized defenses are not considered until the later second stage.  *Otey v. CrowdFlower*, 2013 U.S. Dist. LEXIS 52530, at *5; Doc. 90, at 3.  Moreover, judges in this District repeatedly and expressly refuse to consider arguments about individualized inquiries at the conditional certification stage, finding that such arguments go to the merits and are better addressed at the second stage, after discovery has closed.  *See Id.; Sanchez v. Sephora USA, Inc.*, 2012 U.S. Dist. LEXIS 99924, *11-12 (N.D. Cal. Jul. 18, 2012) (collecting cases from N.D. Cal.); *Santiago v. Amdocs, Inc.*, 2011 U.S. Dist. LEXIS 146126, *20-21 (N.D. Cal. Dec. 19, 2011) (same).  This District has specifically refused to consider individualized inquiries as part of the *de minimis* defense at the conditional certification stage.  *Escobar v. Whiteside Constr. Corp.*, 2008 U.S. Dist. LEXIS 68439, *12-13 (N.D. Cal. Aug. 21,

---

[4] FLSA defendants are not permitted to benefit from their own failure to keep required records, including required records of work time.  29 U.S.C. § 211(c); 29 C.F.R. § 516.2; *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997) (defendants cannot benefit from their own recordkeeping failures) (citing *Mumbower v. Callicott*, 526 F.2d 1183, 1187 (8th Cir. 1975)).  Actually, the number of hours worked can easily and reasonably be approximated from payment records and Defendants' written "$2.00 per hour benchmark" for pay (*e.g.*, total pay over the recovery period / $2.00 = reasonable approximation of hours worked), among other methods.  Exs. 25 & 26.

10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

2008) ("All plaintiffs had to do was to make the substantial allegation that putative class members were victims to a single illegal policy, plan, or decision. That they did…"); *accord Allen v. City of Chi.,* 2013 U.S. Dist. LEXIS 5394, *25-26 (N.D. Ill. Jan. 14, 2013) (refusing to consider the *de minimis* defense at the conditional certification stage); *Bouphakeo v. Tyson Foods*, 564 F.Supp.2d 870, 899 (N.D. Iowa 2008) (*de minimis* defense does not disfavor conditional certification).[5]  The *de minimis* defense is inapplicable at this time.[6]

### 6.  Substantiality of Plaintiffs' Evidence

In *Flores*, this Court recently found that evidence of some indicators of employment status was sufficient for conditional certification in a misclassification claim:

> Plaintiffs have alleged, and Defendants do not dispute, that each individual delivery driver signed an independent contractor agreement, subjecting them to a uniform company policy of treating them as exempt workers under FLSA. Plaintiffs have also alleged, and averred in sworn declarations, that the delivery drivers were all required to wear Velocity uniforms, display the company logo, keep regular routes and hours, pay Velocity for equipment, permit Velocity to deduct from their paychecks income and payroll taxes, and arrive at certain times in advance of their  shifts. In other words, Plaintiffs have alleged that each member of the proposed class was "similarly situated" with respect to the material allegations of the complaint. *Flores*, 2013 U.S. Dist. LEXIS at *16-17.

---

[5] Defendants admit that courts consider the "aggregate amount involved in the litigation." Doc. 131, at 24 (citing *Lindow v. U.S.*, 738 F.2d 1057, 1062-63 (9th Cir. 1984)).  Specifically, the federal courts interpret "aggregate amount involved in the litigation" on a class-wide basis.  *See, e.g., Bouaphakeo*, 2011 U.S. Dist. LEXIS at *30-31 ("With respect to the second factor, whether the aggregate amount of potentially compensable work is significant, i.e., several hundred employees per day at three-plus minutes per employee, presents a fact question. Finally, the alleged additional work at issue occurs every day.").  Because the aggregate time over the class is considered, *de minimis* time is in fact a class-wide issue.  *See also, e.g., see also, e.g., Burch v. Qwest Commun's. Int'l.*, 677 F.Supp.2d 1101, 1121 (D. Minn. 2009) (*de minimis* defense is a legal question properly resolved on a class-wide basis).  Also, in this case, the consideration of practicability of tracking work time can also be determined on a class-wide basis.  *Lindow*, at 1062-63.

[6] An employer bears the burden of proof for affirmative defenses under the FLSA.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).  This includes proving the *de minimis* affirmative defense.  *Wren v. RGIS Inventory Specialists*, 2009 U.S. Dist. LEXIS 74789, *82 (N.D. Cal. Aug. 24, 2009).  However, Defendants expressly admit that they "cannot reliably determine time spent performing a task" and they have "no way of tracking the amount of time actually spent by a Contributor performing any given task." Doc. 131, at 7 (caps removed).  Therefore, the *de minimis* defense should be disregarded because Defendants admit they cannot prove that the "aggregate amount of compensable time" is *de minimis*.  *Lindow*, 738 F.2d at 1062-63.  Also, Defendants admission of lack of ability to reliably determine work time is another factor common to all of its workers. Doc. 131, at 7.

Moreover, Plaintiffs have filed motions alerting the Court that several of Defendants' affirmative defenses, including the *de minimis* defense, should be stricken because Defendants fail to sufficiently plead facts showing that the *de minimis* defense is plausible.  Docs. 71 & 94.  Plaintiffs incorporate those arguments by reference.  *Id.*  Plaintiffs will file a similar motion if Defendants' response to the Second Amended Complaint similarly fails to plead sufficient facts.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

Plaintiffs have present a much greater quantum of evidence of employment status, and more-convincing evidence, than found sufficient in *Flores.* Plaintiffs have already shown that many of the same core policies, practices and treatment apply to Defendants' workers on a company-wide basis. Doc. 123, at 2. Contrary to Defendants' gross mischaracterization, Plaintiffs do not simply rely on uniform classification of their workers as "independent contractors."

The cases relied upon by Defendants are inapplicable. The plaintiffs in both *Silverman v. SmithKline Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030, *7-8 (C.D. Cal. Oct. 16, 2007) and *Sheffield v. Orius Corp.*, 211 F.R.D. 411, at *6 (D. Or. 2002) failed to present evidence applicable to other subsidiaries or business units. In stark contrast, Judge James has already determined that Plaintiffs' evidence suggests company wide-treatment which underlies the claims. Doc. 123, at 2.

Defendants errantly seek to disregard Plaintiffs' evidence as mere "hearsay." However, Defendants completely ignore the fact that Plaintiffs rely on public statements by the individual Defendants, CrowdFlower, and CrowdFlower executives which constitute admissible admissions by a party opponent (Fed. R. Evid. 801(d)(2)) and statements against interest (Fed. R. Evid. 804(d)(3)). FLSA claims are frequently certified based on such admissions. *See, e.g., Nicholson v. UTi Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 761, *12-13 (S.D. Ill. Jan. 26, 2011) (granting nation-wide conditional certification based on trainers' representations of a company-wide policy); *Nicholson v. UTi Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 49890, *26 (S.D. Ill. May 10, 2011) (granting nation-wide certification under more stringent Rule 23 standard based on trainers' admissions of a company-wide policy); *Musarra v. Digital Dish, Inc.*, 2008 U.S. Dist. LEXIS 110003, *11-12 & n.7 (S.D. Ohio Mar. 24, 2008) (granting conditional certification based on declarants' recitation of instructions by trainers and managers because those statements were admissions by a party opponent).

Plaintiffs also largely rely on Defendants' own public and internal documents which reveal company-wide policies and practices, but Defendants simply ignore those documents. Exs. 2 (Defendants' privacy policy); 12 (Defendants' terms of use); 14 (Defendants' contributor channel handbook); 15 (Defendants' job instructions); 16 (Defendants' FAQ's); 21-27 (Defendants' internal operating documents); 28 (Defendants' press release); 29 (Defendants' website content).

Defendants point to Plaintiffs' lack of declarations.  However, this Court has recognized that the scope of evidence which may support conditional certification is far broader than just declarations.  *See, e.g., Flores*, 2013 U.S. Dist. LEXIS at *14 ("declarations or discovery").

Defendants broadly claim that Plaintiffs' rely on "generalized statements taken out of context or misconstrued from industry advertising."  Doc. 131, at 27.  However, Defendants glaringly fail to explain how any of their own public representations means something other than represented by Plaintiffs.  In fact, Defendants actually attack the credibility of their own public statements.  Still, the Court should not make credibility determinations at this stage.  *See, e.g., Santiago*, 2011 U.S. Dist. LEXIS at *21-22; *Luque*, 2010 U.S. Dist. LEXIS at *16 n.7.

**B.      No Showing of Interest is Needed**

No showing of interest by others is needed.  This District has consistently rejected arguments that FLSA plaintiffs must show that others are interested in joining a collective action to obtain conditional certification.  *Harris*, 716 F.Supp.2d at 839 ("The fact that other potential class members have not affirmatively stated a desire to opt in does not preclude conditional certification."); *Mowdy v. Beneto Bulk Transp.*, 2008 U.S. Dist. LEXIS 26233, *22-23 (N.D. Cal. Mar. 31, 2008) (dismissing argument that plaintiffs must demonstrate opt-in interest prior to conditional certification, finding that "[a]s a practical matter it would make little sense to require plaintiffs to have the knowledge they attempt to obtain by gaining approval of notice from the court.").  After an isolated 2007 decision by the Central District of California cherry-picked by Defendants, this District and the other District Courts in this Circuit to consider the issue including the Central District of California itself, have consistently rejected any assertion of a requirement of a showing others' interest to obtain conditional certification.  *See, e.g., Sanchez*, 2012 U.S. Dist. LEXIS at *13-14; *Lewis v. Nev. Property 1, LLC*, 2013 U.S. Dist. LEXIS 8945, *26-27 (D. Nev. Jan. 22, 2013); *Davis v. Social Serv. Coordinators, Inc.*, 2012 U.S. Dist. LEXIS 155559, *60-62 (E.D. Cal. Oct. 30, 2012) ("The lack of other consenting opt-in plaintiffs or a demonstrated interest by others in joining the suit is irrelevant at this stage of the proceedings."); *Fenn v. Hewlett-Packard Co.,* 2012 U.S. Dist. LEXIS 69398, *10-11 (D. Idaho May 17, 2012); *Carrillo v. Schneider Logistics, Inc.*, 2012 U.S. Dist. LEXIS 26927, *46-47 (C.D. Cal. Jan. 31, 2012); *Gomez v. H&S Gunlund Ranches, Inc.,*

1   2010 U.S. Dist. LEXIS 137736, *13-15 (E.D. Cal. Dec. 16, 2010); *Hoffman v. Securitas Sec. Servs.*,

2   2008 U.S. Dist. LEXIS 123883, *13 (D. Idaho Aug. 27, 2008) ("[S]uch a threshold requirement

3   strikes this Court as contradictory to the very notion of providing **notice** to potential plaintiffs of the

4   opportunity to become part of a collective action - what the FLSA expressly provides" (emphasis in

5   original)); *Delgado v. Ortho-McNeil*, 2007 U.S. Dist. LEXIS 74731, *4-5 (C.D. Cal. Aug. 6, 2007).

6        *Fenn* and other cases within this Circuit recognize the obvious:

7           Until potential class members know about the lawsuit, it is difficult to know whether
            they would be interested in joining. Thus, the Court agrees that "requiring named

8           plaintiffs to proffer evidence that others desire to opt in before sending notice to
            potential class members puts the named plaintiff in the 'ultimate chicken and egg

9           dilemma.'" *Davis v. Westgate Planet Hollywood Las Vegas*, 2009 U.S. Dist. LEXIS
            5941, at *12 (D. Nev. Jan. 12, 2009) (citing *Kinney Shoe Corp. v. Vorhes*, 564 F.2d

10          859 (9th Cir. 1977), *abrogated on other grounds, Hoffman-La Roche v. Sperling*, 493
            U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

11
12  *Fenn*, 2012 U.S. Dist. LEXIS at *10-11; *see also, Harris*, 716 F.Supp.2d at 838 (same). Cases from

13  within this Circuit also recognize lack of any requirement to show interest outside the Eleventh

14  Circuit. *See, e.g., Carrillo*, 2012 U.S. Dist. LEXIS at *47; *Hoffman*, 2008 U.S. Dist. LEXIS at *12-

15  13. Notably, Defendants have consistently informed members of the putative conditional class that

16  CrowdFlower is not their employer and that they are not employees, thereby discouraging them from

17  participation. These workers work remotely from their homes and have no opportunity to discuss

    their employment status with others similarly situated.
18
19       Finally, Defendants' reliance on publicity garnered by this suit is completely misplaced.

20  None of that publicity informs putative class members of the FLSA's unique requirements, including

21  the need to opt-in in writing, or any rights conferred under the FLSA. That is the purpose of court-

    approved notice, not the press.
22
23       **C.**    **Form of the Notice**

24       Defendants argue for notice by mail, rather than notice by email. They seek to deter

25  Plaintiffs by drastically increasing the cost of disseminating notice, and reduce real notice to affected

26  workers whose residential addresses they may not have, but whose email and IP addresses are within

27  their possession, custody and control. Defendants' purported limitations on their ability to obtain

28  email addresses are disingenuous based on the discovery produced. For example, one of the initial

    steps required for any worker to log into AMT (or register, as a first-time AMT user) is to provide

his or her email address.  Ex. 31, 55:11-25.  The Effgen Declarations make it clear that workers performing services for CrowdFlower through AMT are required to and do register on AMT's website as providers.  (Dkt 131-11, ¶ 3; Dkt 131-13, ¶ 3).  CrowdFlower's form Contributor Channel Agreement expressly obligates Contributor Channels to "[p]rovide CrowdFlower with all information about Contributors reasonably requested by CrowdFlower, including without limitation demographic information about Contributors and the number of Contributors engaged by Channel ("Contributor Data").  (Dkt 131-3, ¶3d.)[7]  Thus, even if Defendants' lack actual possession of the information, they may obtain it upon request.[8]

Defendants fail to provide any reason that notice by mail is superior to notice by email, other than asserting a "one size fits all" argument that mailing notice is usually appropriate.  The federal Courts recognize that instead of a presumption that notice by mail is preferable, "'the better course is to determine what constitutes fair and proper notice on the facts of each case.'"  *Stuven v. Tex. De Brazil (Tampa) Corp.*, 2013 U.S. Dist. LEXIS 22240, *16-17 (M.D. Fla. Feb. 19, 2013).  This District and other federal courts further recognize that notice by email may be "particularly appropriate" when the class members are "likely to be … comfortable communicating by email and thus this form of communication is just as, if not more, likely to effectuate notice than first class mail."  *Lewis*, 669 F.Supp.2d at 1128-29; *Browning v. Yahoo! Inc.*, 2006 U.S. Dist. LEXIS 100686, *24-32 (N.D. Cal. Dec. 27, 2006) (approving email and website posting based on finding that such methods are "particularly suitable" where the class members' allegations arose from their visits to a website); *see also Butler v. DirectSat USA, LLC*, 876 F.Supp.2d 560, 575 (D. Md. Apr. 10, 2012).  Since Plaintiffs' motion for conditional certification was filed in January 2013, this District continues to authorize class notice by email.  *See, e.g., Lagarde v. Support. com, Inc.*, 2013 U.S. Dist. LEXIS 42725, *6-7 (N.D. Cal. Mar. 26, 2013); *see also, e.g., Allerton v. Sprint Nextel Corp.*,

---

[7] It should be noted that the Channel Partner Agreement exhibit, D.E. No. 131-3, identified as Bates No. CF000651-657 was part of a production of documents served by Defendants by U.S. Mail on June 27, 2013 – *one day before the filing of Defendants' Opposition* – which due to the method of service selected, the first opportunity Plaintiffs had to view that document was in Defendants' filing.

[8] *Simmons v. Adams*, 2013 U.S. Dist. LEXIS 84429, *10 (E.D. Cal. Jun. 14, 2013) (explaining that control need not be actual, but rather property is in a party's "possession, custody, or control" if it has the right to obtain it on demand); *Allen v. Woodford*, 2007 U.S. Dist. LEXIS 11026, *4 (E.D. Cal. Jan. 30, 2007) (same).

1    2009 U.S. Dist. LEXIS 132454, *45-46 (D. Nev. Nov. 16, 2009) (rejected reasons against notice by

2    email); *Jones v. JGC Dallas LLC*, 2012 U.S. Dist. LEXIS 185042, 18-19 n.9 (N.D. Tex. Nov. 29,

3    2012) (collecting cases ordering notice by email).

4         Again, potential class members are very familiar with the internet as they work on-line.

5    Defendants own exhibits show that they consider email, rather than mail, a sufficient method of

6    communication with their own workers and CCPs. *See, e.g.,* Dfd.'s Ex. K (emails with Plaintiff

7    Greth); Ex. M (email to "contributor channel partners").   Defendants' concerns regarding over-

8    inclusiveness of any class list are addressed by the proposed notice itself, which states the scope of

9    the class.  Defendants argue against posting notice on CrowdFlower's website because "Plaintiff

10   Otey himself testified that he did not visit CrowdFlower's website before going to AMT's website to

11   perform tasks." Doc. 131, at 31.  That argument is not only illogical, but ignores that Mr. Otey

12   testified that he has in fact viewed CrowdFlower's website. Ex. 31, 183:23-184:8.

13        Defendants seek to rely on the minority view that a plaintiff must show that dissemination of

14   notice by mail is insufficient to also notify class members through postings.  *See, e.g., Simmons v.*

15   *Enterprise Hldgs.,* 2011 U.S. Dist. LEXIS 37504, * 5 (E.D. Mo. Apr. 6, 2011) ("the better course is

16   to determine what constitutes fair and proper notice based on the facts of each case" (citing *Mowdy*))

17   and "'[a]t this stage of the litigation, justice is most readily served by notice reaching the largest

18   number of potential plaintiffs.'") (quoting *Kautsch v. Premier Commun's.*, 504 F.Supp.2d 685, 690

19   (W.D. Mo. 2007)).  The out-of-circuit cases relied upon by Defendants contradict recent holdings of

20   this District and other Courts within this Circuit.  *Juvera*, 2013 U.S. Dist. LEXIS at *18-19 (mailing

21   and workplace posting of notice without showing that notice by mail is insufficient); *Santiago v.*

22   *Amdocs, Inc.*, 2012 U.S. Dist. LEXIS 85617, *8 (N.D. Cal. Jun. 20, 2012) (mailing and posting of

23   notice and consent forms without showing that notice by mail is insufficient); *Carrillo*, 2012 U.S.

24   Dist. LEXIS at *49-51 (same).  Moreover, even under Defendants' authorities, Defendants' repeated

25   suggestions that email notice will be unreliable or insufficient justify posting.

26        **D.    Cost of Notice**

27        Plaintiffs will pay the cost of disseminating notice by email.  However, the cost of compiling

28   the list of names and email addresses must be borne by Defendants.

         Defendants seek an unfair windfall from their own recordkeeping failures.  The FLSA

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND
DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

requires recordkeeping, including but not limited to, workers' names or an "identifying symbol or number if such is used in place of name on any time, work, or payroll records" and "[h]ome address, including zip code." 29 U.S.C. § 211(c); 29 C.F.R. 516.2(a)(1) & (2).  Defendants admit they fail to keep those records.  Defendants should not be permitted to benefit from their own failure to keep required records.  *Reich*, 121 F.3d at 406.

Defendants mainly rely on Rule 23 cases in which there were no recordkeeping requirements, unlike FLSA claims.  This is why this District has consistently ordered production of FLSA class lists without shifting the burden or expense of producing those lists to the Plaintiffs.  *See, e.g., Flores*, 2013 U.S. Dist. LEXIS at *31; *Ramirez*, 2013 U.S. Dist. LEXIS at *32-33; *Luque*, 2010 U.S. Dist. LEXIS at *21.

*Sullivan v. Kelly Servs., Inc.*, cited by Defendant is inapposite.  2011 U.S. Dist. LEXIS 2189 (N.D. Cal. Jan. 5, 2011).  This District ordered the Defendants to pay the cost of notice dissemination, not just the cost of producing the list of recipients, because summary judgment had already been entered in the plaintiff's favor.  *Id.*, at *2-3.  In both *Sullivan* and *Daniels v. Aeropostale West*, there was no dispute about the effort or cost of identifying class members.  *Id.*; 2013 U.S. Dist. LEXIS 59514 (N.D. Cal. Apr. 24, 2013).  This District merely ordered the plaintiffs to payment of the cost of *disseminating* the notices.  *Id.*[9]

Defendants' assertion of a great expense of identifying the class members is greatly exaggerated.  Plaintiffs' counsel performed a similar task involving subpoenaing comprehensive employment records from 25 staffing agencies around the nation.  That task was accomplished for out-of-pocket expenses totaling $1,610.00 plus a nominal amount of postage for mailing subpoenas to various process servers.  Ex. 33, ¶ 2.  Subpoenas are not even needed here because Defendants' have the contractual right to obtain the information from their CCPs on request.  Large classes consisting of millions of class members, even 4,000,000 potential class members, is not unprecedented in class action litigation and size alone should not be a deterrent; in fact, such weighs

---

[9] One court within this Circuit even imposed the full cost of disseminating notice on Defendants.  *Carrillo*, 2012 U.S. Dist. LEXIS at *51-52 (imposing full cost of FLSA notice on the defendants because the plaintiffs established likelihood of success on the merits).

in favor of the need for collective action to vindicate the alleged wrong.[10]

**E.      Other Notice Issues**

In a footnote, Defendants seek later opportunity to "comment upon the proposed notice form."  Doc. 131, at 29, n.7.  This is a "stall tactic" and such efforts have been rejected by the federal courts and deemed as waiver of a response.  *See*, *Nobles v. State* Farm, 2011 U.S. Dist. LEXIS 131448, *2-3 (W.D. Mo. Nov. 15, 2011) (finding State Farm waived its arguments of notice deficiencies since it failed to raise them in its opposition briefing).  The Federal Rules do not provide for piecemeal litigation, nor can Defendants avoid their obligation to respond to a pending motion by telling the Court that it will not address the question until the Court first resolves some other issues in the litigation.

**IV.      CONCLUSION**

Plaintiffs' motion to conditionally certify should be grated for all reasons aforestated and notice should be ordered in the form previously proposed by Plaintiffs.


Dated:  July 5, 2013                    By:   s/ Mark A. Potashnick
                                                  Mark A. Potashnick (MO Bar #41315)
                                                  (admitted *pro hac vice*)
                                                  **WEINHAUS & POTASHNICK**
                                                  11500 Olive Blvd., Suite 133
                                                  St. Louis, Missouri 63141
                                                  (314) 997-9150 Ext. 2 (T)
                                                  (314) 997-9170 (F)
                                                  Email: markp@wp-attorneys.com

---

[10] In a consumer class action case against largely-Internet based company, *Schlesinger v. Ticketmaster* (Sept. 2012) 2012 WL 4739283, the Los Angeles Superior Court recently approved settlement whereby 50,741,092 notices were emailed to class members.  In fact, to improve deliverability, emails were sent at a daily volume "of not more than 4,200,000 emails per day."  *Id.*  In other words, the third-party administrator in *Schlesinger* emailed daily that which constitutes the estimated entire class size here.

| | |
|---|---|
| 1 | William T. Payne (SBN 90988) |
| 2 | Ellen M. Doyle (PA Bar #21854) |
| | (admitted *pro hac vice*) |
| 3 | **FEINSTEIN DOYLE** |
| | **PAYNE & KRAVEC LLC** |
| 4 | Allegheny Building, 17th Floor |
| | 429 Forbes Avenue |
| 5 | Pittsburgh, PA  15219 |
| 6 | (412) 281-8400 (T) |
| | (412) 281-1007 (F) |
| 7 | Email:  wpayne@fdpklaw.com |
| | edoyle@fdpklaw.com |
| 8 | |
| | Ira Spiro (SBN 67641) |
| 9 | Jennifer Connor (SBN 241480) |
| 10 | **SPIRO MOORE LLP** |
| | 11377 W. Olympic Blvd. |
| 11 | 5th Floor |
| | Los Angeles, CA 90064 |
| 12 | (310) 235-2468 (T) |
| | (310) 235-2456 (F) |
| 13 | ira@spiromoore.com |
| 14 | jennifer@spiromore.com |
| 15 | ***ATTORNEYS FOR PLAINTIFF*** |

19
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND
DISSEMINATION OF NOTIE PURSUANT TO 29 U.S.C. 216(b)

1

### CERTIFICATE OF SERVICE

2

3
    The undersigned hereby certifies that the foregoing was served via the Court's electronic case filing system on the following attorneys of record on the date reflected in the Court's electronic case filing records:

4

5
    Arthur Eidelhoch
    Galen Lichtenstein
6
    Littler Mendelson, P.C.
    650 California Street, 20th Floor
7
    San Francisco, California  94108

8

9
    Jacqueline Kalk
    Littler Mendelson, P.C.
10
    80 South 8th Street, Suite 1300
    Minneapolis, Minnesota  55402
11

12
    Kelly Reese
    Littler Mendelson, P.C.
13
    Riverview Plaza
    63 South Royal Street, Suite 901
14
    Mobile, Alabama  36602

15

16
                                    /s/ Mark Potashnick
                                    **ATTORNEY FOR PLAINTIFF**
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND
DISSEMINSATION OF NOTICE PURSUANT TO 29 U.S.C. 216(b)