UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRADY EDMONDS,<br><br>                Plaintiff,<br>   v.<br><br>AMAZON.COM, INC., et. al.<br><br>                Defendants. | CASE NO. C19-1613JLR<br><br>ORDER DENYING INTERVENOR'S MOTION TO DISMISS OR TRANSFER |

## I.   INTRODUCTION

Before the court is Intervenor Andrea Thomas's motion to dismiss, or in the alternative, transfer. (Mot. (Dkt. # 68); *see also* Reply (Dkt. # 76).) Plaintiff Brady Edmonds opposes the motion. (Resp. (Dkt. # 73).) Defendants Amazon.com, Inc., Amazon Logistics, Inc., and Amazon.com Services, Inc. (collectively "Amazon") do not oppose the motion. (Notice of Non-Opposition (Dkt. # 72).) The court has considered the motion, the parties' submissions concerning the motion, the relevant portions of the

ORDER - 1

record, and the applicable law. Being fully advised,[1] the court DENIES Defendants' motion to dismiss or, in the alternative, transfer this matter.

## II. BACKGROUND

### A. Procedural Background

Mr. Edmonds filed this action ("the *Edmonds* action") as a putative nationwide collective action under the Fair Labor Standards Act of 1938 ("FSLA"), 29 U.S.C. § 201 *et seq*., on October 9, 2019. (*See* Compl. (Dkt. # 1).) On May 28, 2020, Ms. Thomas filed a motion to intervene and for leave to file a motion to dismiss, or in the alternative, transfer. (Mot. to Intervene (Dkt. # 55).) The court granted Ms. Thomas's motion to intervene (*see* 7/22/20 Order (Dkt. #65)), and Ms. Thomas filed this motion to dismiss, or in the alternative, transfer, on July 29, 2020 (*see* Mot.). Ms. Thomas's motion is based on the first-to-file rule and the alleged similarities between her case in the Middle District of Florida, *Thomas v. JSTC, LLC et al.*, No. 6:19-cv-01528-RBD-GJK (M.D. Fla.) ("the *Thomas* action"), and the *Edmonds* action. (Mot. at 1.)[2]

---

[1] Ms. Thomas and Mr. Edwards both request oral argument. (*See* Mot. at 1; Resp. at 1.) Oral argument is not necessary where the non-moving party suffers no prejudice. *See Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984); *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (holding that no oral argument was warranted where "[b]oth parties provided the district court with complete memoranda of the law and evidence in support of their respective positions," and "[t]he only prejudice [the defendants] contend they suffered was the district court's adverse ruling on the motion."). "When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*). Here, the issues have been thoroughly briefed by the parties, and oral argument would not be of assistance to the court. *See* Local Rules W.D. Wash. LCR 7(b)(4). Accordingly, the court DENIES the parties' requests for oral argument.

[2] Andrea Gaines joined Ms. Thomas's motion to intervene and for leave to file a motion to dismiss, or in the alternative, transfer (Mot. to Intervene), but she has not joined Ms. Thomas's

**B.  Factual Background**

As this motion is based on Ms. Thomas's argument that her action was filed first and is similar enough to the *Edmonds* action to warrant dismissal or transfer (Mot. at 1), the court examines the timeline and nature of each action.

1. Plaintiff Mr. Edmonds's Action

Mr. Edmonds filed the *Edmonds* action as a putative nationwide collective action under the FLSA on October 9, 2019. (*See* Compl. (Dkt. # 1).)  He brings one claim that digital retailer Amazon violated the FLSA through Amazon's alleged failure to pay overtime wages to Mr. Edwards and similarly situated individuals. (FAC (Dkt. # 24) ¶¶ 114-122.)

a. Mr. Edmonds's FLSA Claim Against Amazon

Mr. Edmonds's amended complaint alleges that Amazon, as a part of its "delivery and logistics business," contracts with delivery service providers ("DSPs") all around the United States. (FAC. ¶ 3).  He further alleges that these DSPs hire drivers like Mr. Edmonds to deliver Amazon packages within the DSPs' specific service areas. (*Id.* ¶ 4). Mr. Edmonds alleges that as a driver in the greater Jacksonville, Florida area, he regularly worked more than 40 hours in a workweek, but "[n]either Amazon nor the DSP

//

//

---

motion to dismiss or, in the alternative transfer (Mot. at 3 (stating that Ms. Gaines "intervened to request that her litigation be carved out of the scope of any notice that the Court authorizes" if this court chooses not to dismiss or transfer this case and this court also chooses to conditionally certify a collective)).  The court presently makes no ruling on these issues.

through whom Mr. Edmonds was paid" ever provided overtime compensation for hours worked beyond 40 in a workweek. (*Id.* ¶¶ 21-26).

Mr. Edmonds does not bring his action against any DSPs,[3] but only against Amazon under a theory that Amazon qualifies as a joint employer for individuals like Mr. Edmonds under FLSA. (*See id.* ¶¶ 61-63; Resp. at 3).

      b. *Mr. Edmonds's Proposed Collective*

Mr. Edmonds seeks to establish a collective of similarly situated drivers nationwide, excepting drivers in the state of Washington. (FAC ¶ 86; Mot. for Issuance of Notice (Dkt. # 40) at 2.) He defines the putative collective as:

> All drivers or driver associates who were paid a "flat rate" and who delivered for Amazon anywhere in the United States other than the state of Washington within the three-year period preceding the filing of this Complaint (the "Class").

(FAC ¶ 86.) In Mr. Edmonds's March 26, 2020, motion for issuance of notice to putative collective members, however, he defines the putative collective as:

> All individuals employed as Amazon local delivery drivers or Delivery Associates (outside the state of Washington)—through a third-party delivery company or Delivery Service Partner ("DSP")—who were paid a day rate since October 9, 2017 and were not paid overtime premiums when they worked over forty hours in one or more workweeks.

(Mot. for Issuance of Notice at 2.) The court has yet to rule on Mr. Edmond's motion for issuance of notice. (*See generally* Dkt.)

//

---

[3] Indeed, Mr. Edmonds does not name the DSP through whom he was hired and paid. (*See generally* FAC.) As this court has already ruled, however, this does not disqualify his claim at this stage. (*See* 4/15/20 Order (Dkt. # 42).)

2. <u>Intervenor Ms. Thomas's Action</u>

Ms. Thomas filed the *Thomas* action on August 16, 2019, in the Middle District of Florida. (Schalman-Bergen Decl. (Dkt. # 56) ¶ 15, Ex. 2, ("*Thomas* Compl.").) Ms. Thomas originally brought one claim that JSTC, LLC, a DSP for Amazon, violated the FLSA by failing to pay overtime wages to Ms. Thomas and similarly situated individuals. (*Id.* ¶¶ 63-74.) She later amended her complaint to add defendants Commercial Express, Inc.; COEI, LLC; AG Plus Express, LLC; and Drop a Box, Inc., and she alleges that all defendants in the *Thomas* action are DSPs for Amazon. (Schalman-Bergen Decl. ¶ 18, Ex. 3 ¶ 1 ("*Thomas* FAC").)

    a. *Ms. Thomas's FLSA Claim Against DSPs*

Ms. Thomas's amended complaint alleges that she and similarly situated individuals were hired as Delivery Associates ("DAs") by different DSPs in the Jacksonville, Florida, area to deliver of packages on behalf of Amazon. (*Id.* ¶¶ 8-11.) She alleges that she and her fellow DAs regularly worked more than 40 hours per week. (*Id.* ¶ 39.) She also alleges that the DSPs did not pay associates for all hours worked over 40 per workweek and regularly did not pay overtime premiums. (*Id.* ¶ 41).

At no point has Amazon been a defendant in the *Thomas* action. (*See generally Thomas* Compl.; *see also Thomas* FAC.) Ms. Thomas represents that this is because she engaged in pre-litigation discussions and entered into a tolling agreement with Amazon. (Schalman-Bergen Decl. ¶¶ 16-17; Mot. at 9.) Despite Amazon not being a defendant, Ms. Thomas represents that Amazon is currently participating in an alternative dispute resolution ("ADR") process and that a mediation has been scheduled for October 15,

2020, that Amazon will attend. (Schalman-Bergen Decl. ¶¶ 19-21.) Ms. Thomas contends that if the *Thomas* action does not reach a settlement through the court-directed ADR process, Ms. Thomas will seek leave to amend the complaint and add Amazon. (Reply at 11.)

        *b. Ms. Thomas's Proposed Collective*

Ms. Thomas seeks to establish a collective of DAs that were paid by the DSPs named as defendants in the *Thomas* action:

> All current and former [DAs] who were paid by Defendants Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc. to deliver packages for Amazon in the United States during the applicable limitations period (the "FLSA Collective").

(*Thomas* FAC ¶ 13.)[4]

### III. ANALYSIS

**A. Legal Standard**

The first-to-file rule is a "generally recognized doctrine of federal comity" that allows a district court to transfer, stay, or dismiss an action if a case with substantially similar issues and parties was previously filed in another district court. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94 (9th Cir. 1982); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015). "The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments." *Wallerstein v. Dole Fresh*

---

[4] In her initial complaint, Ms. Thomas only references Defendant JSTC, LLC, in her proposed collective. (*Thomas* Compl. ¶ 3.)

*Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013). Accordingly, the first-to-file rule "should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

When deciding whether to transfer, stay, or dismiss a case under the first-to-file rule, a district court analyzes three factors: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Kohn*, 787 F.3d at 1240; *see also Bewley v. CVS Health Corp.*, No. C17-0803RSL, 2017 WL 5158443, at *2 (W.D. Wash. Nov. 7, 2017). Notwithstanding these specific factors, the first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986); *see also Kohn*, 787 F.3d at 1240 (quoting *Cradle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)) ("When applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'"). As a result, "[t]he most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade*, 946 F.2d at 628.[5]

//

//

//

---

[5] A court may decline to apply the first-to-file rule "for reasons of equity," such as "when the filing of the first suit evidences bad faith, anticipatory suit, or forum shopping." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006); *see also Alltrade*, 946 F.2d at 628. As the court is declining to exercise the first-to-file rule, no such analysis is necessary here.

ORDER - 7

### B. First-to-File Factors

#### 1. Chronology

The chronology-of-actions factor is straightforward. The court looks to the dates the complaints are filed. *See, e.g.*, *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994) ("In determining when a party filed an action for purposes of the first to file rule, courts focus on the date upon which the party filed its original, rather than its amended complaint.").

The *Thomas* action was filed on August 16, 2019. (*See Thomas* Compl.) Plaintiff filed the *Edmonds* action on October 1, 2019. (*See* Compl.) Plaintiff argues that the *Thomas* action was not first-filed because "there was no similarity in the identity of the parties" and "Thomas' case does not raise all the *substantial* issues between the 'parties'." (Resp. at 7 (emphasis in original).) This improperly conflates the chronology factor with the similarity of parties and similarity of issues factors in a first-to-file analysis. These issues are addressed below. For the purposes of this factor, the *Thomas* action was filed first.

#### 2. Similarity of Parties

The first-to-file rule "does not require exact identity of the parties." *Kohn*, 787 F.3d at 1240. Rather, the rule may apply where a court concludes that two actions present "substantial similarity of parties." *Id.*; *see also Music Grp. Servs. US, Inc. v. inMusic Brands, Inc.*, No. C13-0183MJP, 2013 WL 1499564, at *2 (W.D. Wash. Apr. 11, 2013) ("The requirement of similar parties is satisfied if the parties are substantially similar, although nonidentical.").

*a. Similarity of the Plaintiffs*

In the context of class actions, a court should compare the putative classes, rather than the named plaintiffs, to determine whether the classes encompass at least some of the same individuals. *Bewley*, 2017 WL 5158443, at *2; *see also Hilton v. Apple, Inc.*, No. C-13-2167 EMC, 2013 WL 5487317, at *7 (N.D. Cal. Oct. 1, 2013) (collecting cases).[6] Although multi-plaintiff actions under the FLSA are governed by 29 U.S.C. § 216(b) and are termed collective or representative actions rather than class actions, they address similar situations, and are analogous for first-to-file purposes. *See, e.g.*, *Wilkie v. Gentiva Health Servs., Inc.*, No. CIV. 10-1451 FCD/GGH, 2010 WL 3703060, at *3 (E.D. Cal. Sept. 16, 2010).

Here, plaintiffs seek to represent individuals in very similar situations. Mr. Edmonds refers to his proposed collective as "Amazon local delivery drivers" who are employed "through a third-party delivery company" and were not paid overtime premiums. (Mot. for Issuance of Notice at 2). Ms. Thomas refers to her proposed collective as "Delivery Associates" who were paid by the defendant DSPs "to deliver packages for Amazon in the United States." (*Thomas* FAC ¶ 18). It is clear from the two complaints that "local delivery drivers" and "Delivery Associates" encompass employees

//

---

[6] As various courts have observed, if the first-to-file rule were to require a strict identity of the named plaintiffs, the rule would rarely apply in class actions. *See, e.g.*, *Hilton*, 2013 WL 5487317, at *7; *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016). "This result would be in direct conflict to the purposes of the first-to-file rule because class actions are frequently complex affairs which tax judicial resources—the very cases in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith." *Hilton*, 2013 WL 5487317, at *7.

1 with largely the same job duties.  (*Compare* FAC ¶¶ 21-29 *with Thomas* FAC ¶¶ 28-38).
2 Indeed, Mr. Edmonds concedes that "it appears that the proposed class in *Thomas* is a
3 subset of the *Edmonds* class."  (Resp. at 13.)

4       Mr. Edmonds contends that the nationwide nature of his putative class should
5 "doom[] the application of the first to file rule" because Ms. Thomas seeks to represent "a
6 tiny fraction of the same workers."  (Resp. at 13.)  But this factor does not ask the court if
7 Mr. Edmonds's proposed collective is larger than Ms. Thomas's, but if it there is
8 "substantial similarity" between the two.  *Kohn*, 787 F.3d at 1240; *see also, e.g.*, *Red v.*
9 *Unilever United States, Inc.*, No. 09-cv-07855, 2010 WL 11515197, at *5 (C.D. Cal. Jan.
10 25, 2010) (applying the first-to-file rule even though "[second-filed plaintiffs] asserts a
11 nationwide class, whereas [first-filed plaintiffs] asserts a California class").

12       Mr. Edmonds argues that *Wilkie* and *Lloyd* counsel against the application of the
13 first-to-file rule where the second-filed action purports to represent a nation-wide class.
14 (*See* Resp. at 13-14 (citing *Wilkie*, 2010 WL 3703060, and *Lloyd v. J.P. Morgan & Chase*
15 *Co.*, No. 11 CIV. 9305 LTS, 2012 WL 3339045 (S.D.N.Y. Aug. 14, 2012)).)  But neither
16 case is applicable here.  Both involved subclasses with distinct state-law claims that were
17 not shared among all plaintiffs.  *Wilkie*, 2010 WL 3703060 at *3-4; *Lloyd*, 2012 WL
18 3339045 at *2 (finding *Wilkie* "particularly instructive" because "the California law
19 claims in the second-filed action were 'dissimilar from both the [first-filed] action's
20 FLSA claim and the North Carolina and New York state law claims.'") (quoting *Wilkie*,
21 2010 WL 3703060 at *4).  Here, both proposed collectives bring one claim under the
22 FLSA for unpaid overtime related to their delivery of Amazon packages, and neither

involve subclasses with state law claims that would distinguish the proposed collectives from each other.  (*Compare* FAC ¶¶ 114-22 *with Thomas* FAC ¶¶ 64-75).

The first-to-file rule is concerned with judicial economy and preventing inconsistent results.  *Kohn*, 787 F.3d at 1240 ("When applying the first-to-file rule, courts should be driven to maximize economy, consistency, and comity.") (citation omitted).  If conflicting results are reached in one case where the plaintiff represents a large class, and another where the plaintiff represents a small subset of that large class, they are no less inconsistent because of the sizes of the represented groups.  Similarly, if a factual or legal question is presented in both actions, judicial economy is still served by having one court answer that question.  Here, plaintiffs are similar enough that these ends would be served by transfer or dismissal, if the other factors also weigh in favor of applying the first-to-file rule.

### b. *Similarity of the Defendants*

Mr. Edmonds contends that the defendants cannot be viewed as similar because he only pursues a case against Amazon, while Ms. Thomas only pursues a case against various DSPs.  (Resp. at 9.)  Ms. Thomas responds that she has entered into a tolling agreement with Amazon and that Amazon is participating in the ADR/mediation process that is occurring as a result of the *Thomas* action.  (Mot. at 4.)  She further represents that she will to "seek leave to formally add Amazon as a defendant" should mediation fail.  (Reply at 4.)  The court declines to consider Amazon a party in the *Thomas* action based on these representations.  In evaluating the similarities of the parties, the court looks at the state of the lawsuits as filed, not to parties' representations of what their litigation

strategies will be if certain events do or do not occur. *See Walker v. Progressive Cas. Ins. Co.*, No. C03-0656BJR, 2003 WL 21056704, at *2 (W.D. Wash. May 9, 2003) (finding that for similarity of the parties, it is plaintiffs' actions as shown through their filings, "not plaintiffs' future plans, that the court finds controlling.").

The fact that Amazon is not a party in the *Thomas* action is not dispositive. *See, e.g.*, *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 632 (W.D. Tex. 2018) ("the first-to-file rule may still be applicable even where different defendants are involved in each action,") (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997)). However, when courts have found non-identical defendants to be substantially similar, the actions have generally involved multiple defendants with at least some overlapping defendants in each suit, *see, e.g.*, *Bewley* 2017 WL 5158443, at *2 (nine out of ten defendants overlapped in the suits), a subsidiary or affiliate relationship between non-dentical defendants, *see, e.g.*, *Persepolis Enter. v. United Parcel Serv., Inc.*, No. C-0702379 SC, 2007 WL 2669901, at *2 (N.D. Cal. Sept. 7, 2007 (non-identical defendants were subsidiaries of the same parent corporation), or defendants who have become successors in interests, *see, e.g.*, *Music Grp. Servs. US, Inc.*, 2013 WL 1499564, at *2 (non-identical defendants had undergone a merger). Ms. Thomas has not pointed to, nor is this court aware of, any suits where defendants were wholly different entities and the first-to-file rule was applied as Ms. Thomas proposes in this motion. (*See generally* Mot.; Reply). As such, the defendants in this suit are not substantially similar for the purposes of this analysis.

//

3. Similarity of Issues

"The first-to-file rule is satisfied by a *sufficient* similarity of issues." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) (emphasis in original). District courts in the Ninth Circuit have held that the issues presented in the actions must be "substantially similar," rather than identical, to warrant transfer. *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (quoting *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)); *see also Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-cv-00696-YGR, 2013 WL 3476801, at *4 (N.D. Cal. Jul. 10, 2013).

Mr. Edmonds and Ms. Thomas agree that they have "similar claims in that they both raise wage and hour claims for unpaid overtime while making local deliveries for Amazon." (Resp. at 2; Reply at 9.) However, a key question in Mr. Edmonds's suit is the issue of whether Amazon can be viewed as a joint employer of his putative class under the FLSA. (FAC ¶¶ 90, 114-122). Since Amazon is not a party in the *Thomas* action, the joint employer issue is not present in that suit. (*See generally Thomas* FAC).

*Hart* is instructive on this point. There, the first-filed case involved a consolidated nationwide collective action under the FLSA against franchisor Jimmy John's. *Hart*, 290 F. Supp. 3d at 629. The second-filed action was brought by an opt-in plaintiff to the first-filed matter, but only brought a FLSA claim against a New Mexico corporation that owned various Jimmy John's franchises in that state. *Id*. Despite the similarity in the claims, the court found that the "core issue" in the first-filed action was whether the franchisor entities were liable for FLSA violations as a joint employer, while the "core

issue" for the second-filed action was whether the franchisee was liable for FLSA violations as a direct employer. *Id.* at 631. The court also found there was little risk of inconsistent results with separate suits because the FLSA allows for employees to have more than one employer and for multiple employers to be "individually and jointly" liable. *Id.* (citing 29 C.F.R. § 791.2). Under this regime, if a plaintiff prevails against a joint employer such as franchisor, that plaintiff can still recover from a franchisee direct employer if liability is established on the part of the franchisee. *See Hart* 290 F. Supp. 3d. at 631. Similarly, if a plaintiff is not able to demonstrate that a party is a joint employer, that ruling says nothing about the liability of a potential direct employer. *See id.* The same holds true for the *Thomas* action and the *Edmonds* action—there is little risk of an inconsistent result because neither plaintiff currently seeks to prove a theory of liability that is legally dependent on the other.

The distinction between establishing liability for a direct employer versus a joint employer weighs against a determination that the issues are sufficiently similar to warrant application of the first-to-file rule. This is especially true when coupled with the lack of overlap between defendants in the *Thomas* and *Edmonds* action. As such, the court finds that these actions are not sufficiently similar for the court to exercise the discretion afforded to it by first-to-file rule. Neither dismissal nor transfer of the *Edmonds* action is warranted at this time.

//

//

//

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Intervenor's motion to dismiss or, in the alternative, transfer this matter (Dkt. # 68).

Dated this 30th day of September, 2020.

JAMES L. ROBART
United States District Judge